| | |
|---|---|
| Michael W. Sobol (SBN 194857)<br>msobol@lchb.com<br>Melissa Gardner (SBN 289096)<br>mgardner@lchb.com<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Telephone: 415.956.1000<br>Facsimile: 415.956.1008<br><br>Rachel Geman<br>rgeman@lchb.com<br>Nicholas Diamand<br>ndiamand@lchb.com<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>250 Hudson Street, 8th Floor<br>New York, NY 10013-1413<br>Telephone: 212.355.9500<br>Facsimile: 212.355.9592<br><br>Hank Bates (SBN 167688)<br>hbates@cbplaw.com<br>Allen Carney<br>acarney@cbplaw.com<br>David Slade,<br>dslade@cbplaw.com<br>CARNEY BATES & PULLIAM, PLLC<br>11311 Arcade Drive<br>Little Rock, AR 72212<br>Telephone: 501.312.8500<br>Facsimile: 501.312.8505<br><br>*Attorneys for Plaintiffs and the Proposed Class* | GIBSON, DUNN & CRUTCHER LLP<br>JOSHUA A. JESSEN, SBN 222831<br>JJessen@gibsondunn.com<br>JEANA BISNAR MAUTE, SBN 290573<br>JBisnarMaute@gibsondunn.com<br>ASHLEY M. ROGERS, SBN 286252<br>ARogers@gibsondunn.com<br>1881 Page Mill Road<br>Palo Alto, California 94304<br>Telephone: (650) 849-5300<br>Facsimile: (650) 849-5333<br><br>GIBSON, DUNN & CRUTCHER LLP<br>GAIL E. LEES, SBN 90363<br>GLees@gibsondunn.com<br>CHRISTOPHER CHORBA, SBN 216692<br>CChorba@gibsondunn.com<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520<br><br>*Attorneys for Defendant Facebook, Inc.* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MATTHEW CAMPBELL, MICHAEL HURLEY, and DAVID SHADPOUR, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>              Defendant. | Case No. C 13-05996 PJH<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: March 12, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 3, 3rd Floor<br>The Honorable Phyllis J. Hamilton |

Pursuant to Civil Local Rule 16-10, Plaintiffs Matthew Campbell, Michael Hurley, and David Shadpour ("Plaintiffs") and Defendant Facebook, Inc. ("Facebook") respectfully submit this Joint Case Management Conference Statement in connection with the March 12, 2015 Case Management Conference.

## I.  JURISDICTION AND SERVICE

The parties agree that this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332(d).  All parties have been served, and there are no issues regarding personal jurisdiction or venue.

Facebook believes the named Plaintiffs lack Article III standing because they have suffered no injury in fact, and Facebook reserves the right to file a future motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and/or Fed. R. Civ. P. 56.

Plaintiffs assert that they will demonstrate Article III standing by establishing Facebook's violations of the Electronic Communications Privacy Act ("ECPA") (also referred to as the "Wiretap Act") and the California Invasion of Privacy Act ("CIPA").  *See* Dec. 23, 2014 Order on Motion to Dismiss (Dkt. 43) at 16, 19; *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 711 (N.D. Cal. 2011) (holding that allegations that defendant violated the ECPA were sufficient to allege standing). Plaintiffs assert that the issue of Article III standing presents a question of fact, or mixed law and fact, which requires Plaintiffs have the opportunity to conduct full merits based discovery within the permissible scope of Rule 26 prior to any motion under Fed. R. Civ. P. 56.

## II.  FACTS

### A.  Plaintiffs' Statement

This is a privacy case involving the scanning of messages sent on Facebook's social media website. Facebook describes itself as the "world's largest social networking platform," with approximately 1.2 billion users worldwide. Facebook users are able to share content – such as photos, text, and video – with other users. Users can select the group of people with whom they wish to share this content, and may choose to share certain information publicly (i.e., with all Facebook users), or may choose to share certain information only with their "friends" (i.e., Facebook users with whom they have mutually agreed to share content). Facebook users may also choose to share certain

1  information privately, with just one other Facebook user, through the use of a "private message."
2  While not identical to email, a private message is analogous to email, in that it involves an electronic
3  message sent from one user to one or more other users. Facebook users can access a "messages"
4  inbox through the Facebook website, which is akin to an email inbox. This suit arises out of
5  Facebook's handling of these "private messages." Plaintiffs allege that Facebook scans the content of
6  each class member's private messages for use in connection with its "social plugin" functionality –
7  without consent. Specifically, certain websites have a Facebook "like" counter displayed on their web
8  pages, which enables visitors of the page to see how many Facebook users have either clicked a
9  button indicating that they "like" the page, or have shared the page on Facebook. In essence, the
10 "like" counter is a measure of the popularity of a web page.
11    Plaintiffs allege that Facebook scans the content of class members' private messages, and if
12 there is a link to a web page contained in that message, Facebook treats it as a "like" of the page, and
13 increases the page's "like" counter by one. Plaintiffs further allege that Facebook uses this data
14 regarding "likes" to compile user profiles, which it then uses to deliver targeted advertising to its
15 users. Plaintiffs allege that the messaging function is designed to allow users to communicate
16 privately with other users, and that Facebook's practice of scanning the content of these messages
17 without user consent, a practice uniform in all material respects for all class members, is unlawful.
18 Plaintiffs seek to represent a nationwide class of "all natural person Facebook users located within the
19 United States who have sent or received private messages that included URLs in their content, from
20 within two years before the filing of this action up through and including the date when Facebook
21 ceased its practice."
22    On December 23, 2014, the Court ruled that Plaintiffs' claims for violation of the ECPA and
23 CIPA section 631 may proceed to discovery.  Facebook's statement below repeats its arguments
24 raised on the Motion to Dismiss, and concludes by asserting that no extensive discovery should be
25 had.  The Court's Order on the Motion to Dismiss, however, identifies several issues of fact in
26 dispute, all of which are proper subjects of appropriate discovery.  These areas include the manner
27 and technical means by which Facebook scans the content of users' private messages, how such data
28

is then stored, used, and maintained, whether Facebook's conduct was within the ordinary course of business as contemplated by ECPA, and whether putative class members consented to that conduct.

### B.     Facebook's Statement

Facebook offers a free social networking service that allows its users to connect and share information (including text, photography, video, and other Internet content) on its platform. Facebook stores this content for users so they are able to keep an accessible repository of what they have shared and received.  There are many different ways for users to connect and share content on Facebook, including by posting content of interest on their personal profile page (a "Timeline"), which is then viewable by the specific audience that the Facebook user has selected (such as the public or Friends,[1] depending on the privacy settings the user configures), or through messages shared with other Facebook users.  Plaintiffs' Consolidated Amended Complaint focuses on a very specific practice and contends that for an unspecified period of time before October 2012, when a Facebook user sent a "message" to another user that included a link to a website (a Uniform Resource Locator, or "URL," essentially an address of a website on the World Wide Web), Facebook "scanned" the URL and then increased the anonymous, aggregate "Like" count displayed on that webpage.  Specifically, Plaintiffs allege that Facebook, which by definition already had their messages, "scanned those messages and then analyzed the URL in the link" in purported violation of federal and state law.  (Pls.' Consol. Am. Compl. ("CAC") ¶ 2; *see also id*. ¶¶ 27, 35-37.)

Plaintiffs initially brought four claims against Facebook for alleged violations of (1) the federal Wiretap Act (18 U.S.C. §§ 2510, *et seq*.), (2) the California Invasion of Privacy Act ("CIPA") / Cal. Penal Code § 631, (3) CIPA / Cal. Penal Code § 632, and (4) California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, "UCL").  On December 23, 2014, this Court granted Facebook's Motion to Dismiss in part and dismissed Plaintiff's UCL claim with prejudice because Plaintiffs could not show any "lost money or property as a result of Facebook's conduct."  (Dkt. 43 at 19.)  It also held that Plaintiffs could not show that the messages were covered by Cal. Penal Code § 632, "because such communications can easily be shared by, for instance, the recipient(s) of the

---

[1]   Users may connect as "Friends" on Facebook, mutually agreeing to share posted content (although exact audience settings may be adjusted on a content-specific basis).

3

communications." (*Id*. at 18.) The Court permitted Plaintiffs to proceed on their Wiretap Act and Section 631 claims because it was unable to resolve several of Facebook's challenges on the pleadings. (These issues are discussed below in Section III.B.)

Facebook vigorously disputes Plaintiffs' claims that the challenged conduct violated the Wiretap Act or Section 631. The aim of these statutes was to "prevent[] wiretapping for criminal or tortious purposes." *In re DoubleClick Inc. Privacy Litig*., 154 F. Supp. 2d 497, 526 (S.D.N.Y. 2001); 18 U.S.C. § 2511(2)(d). But Plaintiffs acknowledge that the conduct they challenge in this case was ***not*** undertaken for any criminal or tortious purpose, but rather for legitimate business purposes in providing Facebook's free service. (CAC ¶¶ 2-4, 38, 42, 45, 48, 98, 118, 127-28.) Plaintiffs' "wiretapping" theory is premised on the assertion that Facebook computers "scan" and "intercept" messages shared through its platform. But there is no dispute that Facebook—the provider of the electronic communication service—must process messages shared on its platform to render the basic features of the Messages product (such as language and format). Nor is there any dispute that Facebook must process messages (including message content) for a variety of other reasons, including to (i) protect users from unwanted "spam" messages and/or malicious URLs that could redirect users to dangerous websites, (ii) protect the site from hackers and/or malicious software, and (iii) prohibit criminal activity (such as the sharing of child exploitation images). Plaintiffs do not challenge *any* of this conduct, underscoring that their objection is not that Facebook processes user messages but rather the use Facebook purportedly makes of its processes. But none of this conduct constitutes the unlawful "interception" required by the criminal statutes Plaintiffs are asserting.

Moreover, even assuming for the sake of argument that these laws encompass such routine processing of messages, Facebook has multiple dispositive defenses. <u>*First*</u>, Facebook users expressly consented to the conduct challenged in the Complaint. Facebook's broad Data Use Policy—which all Plaintiffs read and agreed to—disclosed to Facebook users that "we receive data about you whenever you use or are running Facebook, such as when you . . . send or receive a message," and informed users that the information could be used, among other ways, "to measure or understand the

4

1  effectiveness of ads you and others see, including to deliver relevant ads to you." (Jt. Stip. re
2  Judicially Noticeable Documents [Dkt. 42], at 39, 41.)

3  *Second*, at a minimum, Facebook users impliedly consented to the alleged "interceptions."
4  For example, before the challenged conduct ceased in October 2012, Facebook's publicly-accessible
5  developer webpage stated that the "Like" count included "[t]he number of inbox messages containing
6  this URL as an attachment." (Dkt. 1 at p. 16 n.40.) This fact also was reported in several online
7  publications. Additionally, a key feature of the Messages product is the "URL preview"
8  functionality, which processes a valid URL, generates a thumbnail preview of the URL content, and
9  displays it for the user's review before sending the message, so the user is on notice that his message
10  is being processed. In short, the people who use Facebook were aware that the URLs in their
11  messages were being processed—and consented to that processing.

12  *Third*, this Court has recognized that, to determine the applicability of the "ordinary course of
13  business" exemption to this case, "the court must consider the details of Facebook's business, and
14  must not rely on a generic, one-size-fits all approach that would apply the exception uniformly across
15  all electronic communication service providers." (Dkt. 43 at 10 (emphasis in original).) The Court
16  also explained that it "may re-address the 'ordinary course of business' exception at the summary
17  judgment stage of the case, with a more complete evidentiary record before the court." (*Id.* at 12.)
18  Facebook understands and appreciates the Court's desire for a more developed evidentiary record
19  (which Facebook could not provide in the context of a Rule 12(b)(6) motion) before it can consider
20  another dispositive motion based on this argument and Facebook's other defenses. However, there
21  will be no reasonable dispute that the conduct challenged in this action fell within the ordinary course
22  of Facebook's business, and Facebook intends to bring a summary judgment motion on this issue
23  promptly after the relevant discovery has occurred.

24  Finally, putting the merits to the side, no class could be certified here for several reasons,
25  including the same reason class certification was denied in the case that inspired the present suit
26  (*Gmail*): the issue of consent (express and implied), which is a complete defense under both statutes,
27  is an inherently "individualized" issue that will "overwhelm any common questions." *In re Google*
28  *Inc. Gmail Litig.*, No. 13-MD-02430, 2014 U.S. Dist. LEXIS 36957, at *66-67 (N.D. Cal. Mar. 18,

5

1  2014).  Nor does an individual user need to understand the technical details of the purported
2  "interception" to consent to it:  "To find implied consent, a fact-finder need not determine email users
3  had specific knowledge of the particular devices that intercepted their emails.  Rather, the fact-finder
4  need only be convinced based on the surrounding circumstances that email users were notified of
5  interceptions."  *Id.* at *77-78.
6       In sum, Facebook respectfully submits that Plaintiffs' claims are without merit and not
7  amenable to class certification.  As explained below, the dispositive issues noted in this Court's
8  ruling on the Motion to Dismiss do not require extensive discovery or a protracted schedule.

9  **III.**    **LEGAL ISSUES**

10      **A.**    **Plaintiffs' Statement**

11      Plaintiffs anticipate that Facebook will further dispute the Court's conclusion that Facebook's
12 privacy policy and user agreement failed to provide notice of Facebook's alleged conduct sufficient
13 to establish user's consent.  Plaintiffs further anticipate that the parties will dispute whether
14 Facebook's alleged scanning constitutes an unlawful "interception" during transmission as required
15 for liability under ECPA and CIPA section 631.

16      Below, Facebook lists seven broad disputed issues, the resolution of which will require the
17 Court's determination of questions of fact or mixed law and fact.  Facebook acknowledges as much
18 by indicating that the appropriate procedure for resolution of these issues is to seek summary
19 judgment.  Plaintiffs submit that substantial discovery will be required to create an appropriate factual
20 record on which these issues can be decided.

21      **B.**    **Facebook's Statement**

22      This Court granted Facebook's Motion to Dismiss Plaintiff's Unfair Competition Law (Cal.
23 Bus. & Prof. Code § 17200) and California Invasion of Privacy Act ("CIPA") / Cal. Penal Code
24 § 632 claims, and it permitted Plaintiffs to proceed on their federal Wiretap Act (18 U.S.C. §§ 2510,
25 *et seq.*) and CIPA / Penal Code § 631 claims because the Court concluded that it was unable to
26 resolve several legal issues on the pleadings (Dkt. 43), including the following issues:

27
28

- Wiretap Act Claim:

    o "[W]hether Facebook unlawfully 'redirected' the content of plaintiffs' private messages" (*id* at 5);

    o Whether any alleged "interception" occurred while the messages were "in transit": "While Facebook may ultimately produce evidence showing that the messages were actually accessed while in storage, not during transmission, that issue is premature at this stage of the case, and would be better addressed as part of a motion for summary judgment with a more developed factual record" (*id* at 5-6);

    o Whether the "ordinary course of business" exemption bars Plaintiffs' Wiretap Act claim (*id* at 12 ("[T]he court may re-address the 'ordinary course of business' exception at the summary judgment stage of the case, with a more complete evidentiary record before the court."));

    o Whether Plaintiffs expressly consented to the alleged "interceptions" (*id*. at 14-15); and

    o Whether Plaintiffs impliedly consented to the alleged "interceptions" (*id*. at 16 ("[B]ecause the court is without any evidentiary record at this stage of the case, it cannot determine whether the process by which Facebook generates a thumbnail preview is the same process by which it analyzes the URL link to increase the web page's 'like' counter.")).

- CIPA / Penal Code § 631 Claim:

    o Whether Plaintiffs expressly or impliedly consented to the alleged "interceptions" (*id.* at 17); and

    o Whether the alleged "interception" occurred while the messages were "in transit": "the complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case" (*id.*).

Facebook reserves the right to seek summary judgment on the open issues identified in this Court's ruling on the Motion to Dismiss, and to seek summary judgment against the named Plaintiffs. Facebook has proposed a schedule for these motions below.

## IV.   MOTIONS

On February 3, 2014, the Court related the actions *Shadpour v. Facebook, Inc.*, No. 5:14-00307-PSG and *Campbell, et al. v. Facebook, Inc.*, No. 4:13-05996-PJH following a motion by Facebook and a stipulation by the parties. (Dkt. 14, 14-1, 24). On April 15, 2014, the Court consolidated the *Campbell* and *Shadpour* actions and appointed the law firms Lieff Cabraser Heimann & Bernstein, LLP, Carney Bates & Pulliam, PLLC, and Pomerantz LLP to serve as interim class counsel following an unopposed motion by Plaintiffs. (Dkt. 18; 22; 24).

1   On June 17, 2014, Facebook filed a Motion to Dismiss each of Plaintiffs' claims with
2   prejudice (Dkt. 29), which was heard on October 1, 2014.  The Court issued an Order granting in part
3   and denying in part the Motion on December 23, 2014.  (Dkt. 43).  No other motions are currently
4   pending.
5   Plaintiffs anticipate filing a Motion for Class Certification after appropriate discovery has
6   been conducted and reserves the right to oppose the affirmative motion to deny class certification that
7   Facebook references below.
8   Facebook anticipates filing a Motion for Summary Judgment, and it has proposed a schedule
9   for this motion in the chart below.  Facebook also reserves the right to file an affirmative motion to
10  deny class certification.

11  **V.     AMENDMENT OF PLEADINGS**

12  Plaintiffs do not expect to amend the currently operative Consolidated Amended Complaint in
13  response to the Court's Order on the Motion to Dismiss, but reserve their rights to seek leave to
14  amend, in light of any new information obtained, under Fed. R. Civ. P. 15(a), to amend during or
15  after trial under Fed. R. Civ. P. 15(b), and do not believe any firm deadlines should be established for
16  such possible motions.  While Rule 16 allows for the imposition of deadlines to amend pleadings in
17  the ordinary course, that suggestion is not meant to negate parties' rights to amend under Rule 15 in
18  the event of newly discovered evidence.
19  Facebook reserves all rights to oppose such proposed amendments.  Further, this case has
20  been pending for more than one year, and Plaintiffs already have filed two individual complaints plus
21  a Consolidated Amended Complaint.  Facebook therefore respectfully submits that the Court should
22  set a deadline pursuant to Rule 16(b) for any amendments (including adding new parties).  Such
23  deadlines are routinely set, and doing so here will help to define the claims and allegations and
24  encourage the parties to focus their discovery efforts on relevant issues.  Fed. R. Civ. P. 16(b)(3)(A)
25  ("Required Contents. The scheduling order must limit the time to join other parties, amend the
26  pleadings, complete discovery, and file motions); *see also Stanley v. Huntington Nat. Bank*, 492 F.
27  App'x 456, 461 (4th Cir. 2012) ("In order to ensure efficient case management, however, Rule 16(b)
28  requires the district court to issue scheduling orders, *see* Fed. R. Civ. P. 16(b)(1) & (2), which, among

other deadlines, 'must limit the time to . . . amend the pleadings, complete discovery, and file motions,' Fed. R. Civ. P. 16(b)(3)(A).").  Facebook proposes that any motion to amend the complaint and/or add parties occur by March 31, 2015.

## VI. EVIDENCE PRESERVATION

The parties have taken steps to ensure that evidence is being, and will continue to be, preserved.  The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and discussed those Guidelines with their clients.

## VII. DISCLOSURES

On February 13, 2015, the parties served their respective initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

## VIII. DISCOVERY

### A. Timing

Plaintiffs state that the parties have conferred as required by Rule 26(f) and accordingly discovery is open for all purposes.

Facebook submits that the parties should focus their discovery on class certification issues and the issues identified in this Court's ruling on the Motion to Dismiss.

### B. The Scope of Anticipated Discovery

#### 1. Plaintiffs' Discovery

Plaintiffs intend to seek discovery regarding the following subjects, without limitation: (1) the manner and technical means by which Facebook scans the content of users' private messages, and how such data is then stored, used, and maintained: (2) Facebook's representations to customers regarding Facebook's private messaging service; (3) Facebook's internal policies and practices regarding the private messaging service, and the development of those policies and practices; (4) Facebook's internal policies and practices regarding interception, collection, and use of such user data; (5) data and user profiles assembled from, in whole or in part, the private messages of Plaintiffs and the putative class members; and (6) documents and information regarding Facebook's operations in California.

### 2. **Facebook's Discovery**

The parties have exchanged written discovery requests and are in the process of meeting and conferring on the scope of those requests. Although Facebook does not believe that bifurcation of class and merits discovery is necessary, it proposes that the parties should concentrate their discovery efforts on class certification issues and the issues identified in this Court's ruling on the Motion to Dismiss. This approach would center discovery around potentially dispositive issues and avoid unnecessary burdens on issues that do not bear on class certification or the disputed elements of Plaintiffs' Wiretap Act and/or CIPA claims. *See, e.g.*, *In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*, No. MDL 11–2274–DSF (PLAx), 2012 WL 10450139, at *5 (C.D. Cal. June 7, 2012) (declining to bifurcate discovery but determining "that it made sense for the parties to initially focus their discovery efforts on class-related issues"); *Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 634 (D. Kan. 2012) (declining to prohibit merits discovery but issuing a scheduling order stating that "discovery should 'focus on issues relating to the named plaintiffs and conditional and/or class certification of a putative class in this matter'"); *see also* Fed. R. Civ. P. 30(a)(2)(A) advisory committee's note ("[C]ounsel have a professional obligation to develop a mutual cost-effective plan for discovery . . . ."); Fed. R. Civ. P. 26(f) advisory committee's note ("[I]t is desirable that the parties' proposals regarding discovery . . . discuss how discovery can be conducted most efficiently and economically.").

Focusing the discovery in this case is especially important because Plaintiffs already have propounded incredibly overbroad discovery, seeking vast troves of information completely unrelated to their claims. To provide only one example, Plaintiffs are seeking "[a]ll Documents and ESI related to investigations of Facebook by any governmental agency (in the United States or otherwise), regulatory agency, law enforcement agency, or advisory council ***relating to user privacy issues***, including investigations by United States Federal Trade Commission and the Office of the Irish Data Protection Commissioner." (RFP. No. 27 (emphasis added).) This has nothing to do with Plaintiffs' claims. Plaintiffs also are seeking documents reaching back over *eight and a half years*— "from September 26, 2006 through the present"—even though (i) the "Like" button did not appear on third-party websites until **April 2010**; (ii) Plaintiffs' putative class starts on **December 30, 2011** ("two

years before the filing of this action," CAC ¶ 59), and (iii) Plaintiffs allege that "Facebook ceased this [allegedly] illegal practice at some point after it was exposed in **October 2012**." (CAC p. 16 n.3 (emphasis added).) Plaintiffs should not be allowed to engage in an expensive, lengthy, onerous, and time-consuming fishing expedition merely because the Court let two claims advance beyond the pleadings because it needed a more complete evidentiary record on narrow issues to evaluate Facebook's dispositive arguments.

### C.      Protective Order

The parties are in the process of meeting and conferring on the scope of a [Proposed] Stipulated Protective Order.

### D.      Electronic Discovery

The parties are in the process of meeting and conferring on the scope of a [Proposed] Stipulated Protocol for Production of ESI.

### E.      Limitations or Modifications

Plaintiffs propose that in addition to the ten depositions permitted per party pursuant to Fed. R. Civ. Proc. 30(a)(2)(A)(i), that they be allocated another five depositions, for a total of fifteen (15) non-expert depositions, reserving the opportunity to seek Facebook's consent to conduct further depositions, or, alternatively, to seek such permission from the Court, upon a showing of good cause.

Facebook respectfully submits that it is premature to increase the number of depositions at this stage of the case, when both parties have only recently served initial sets of written discovery. After the parties have responded to the respective written discovery requests and conducted initial depositions, the parties will be in a better position to determine if additional depositions between those provided by in Fed. R. Civ. P. 30 are necessary, and can meet and confer on the issue at that time. Any request by either party to increase the number of depositions should comply with Rule 30(a)(2), which requires "leave of court," and should be justified by a showing of good cause. At this stage of the case, there is no reason to prospectively increase Rule 30(a)(2)'s presumptive limit of 10 depositions per side.

### IX. CLASS ACTIONS

Plaintiffs anticipate filing a motion for class certification pursuant to Fed. R Civ. P. 23(a) and (b)(2) and/or (b)(3).

### X. RELATED CASES

The *Campbell* and *Shadpour* actions were related and consolidated pursuant to Court order (Dkt. 15, 24).

On April 9, 2014, an action making substantively the same factual allegations as alleged in this action was filed in the Ontario, Canada, Superior Court of Justice, entitled, *Lavinia Latham v. Facebook, Inc. and Facebook Canada Ltd.*

The parties are not aware of any other related cases or proceedings are pending before another judge of this court, or before any other court or administrative body in the United States, other than the two cases related herein.

### XI. RELIEF

Plaintiffs, on behalf of themselves and the Class, seek the following relief: declaratory relief; all relief authorized pursuant to 18 U.S.C. § 2520 (b), including preliminary and other equitable or declaratory relief; damages, and attorneys' fees and costs; all relief authorized pursuant to California Penal Code § 637.2; attorneys' fees and costs; and such other relief as may be appropriate.

Facebook disputes that Plaintiffs are entitled to any relief at all, or that Plaintiffs may establish a class-wide basis for awarding damages or obtaining injunctive relief.  Facebook reserves all of its defenses to individualized remedies (assuming Plaintiffs are able to establish liability, which Facebook contests).  Facebook also reserves the right to seek its attorneys' fees.

### XII. SETTLEMENT AND ADR

Pursuant to this Court's Order and Civil Local Rule 16-8, the parties filed the ADR Certifications signed by Parties and Counsel and Stipulation Selecting ADR Process on February 19, 2015.  The parties have conferred and believe that it is premature to discuss settlement at this stage, but they will discuss an appropriate time for a mediation session.  The parties proposed a deadline of June 30, 2015, to conduct the initial mediation in this case.  The Court granted the parties' stipulation selecting private mediation on February 23, 2015.  (Dkt. 59).

### XIII. CONSENT TO MAGISTRATE FOR ALL PURPOSES

The parties respectfully do not consent to have a magistrate judge conduct these proceedings for all purposes.

### XIV. OTHER REFERENCES

The parties are not aware of any appropriate other reference for this case.

### XV. NARROWING OF ISSUES

Counsel for the parties are working cooperatively during the initial stages of this litigation, have kept an ongoing dialogue on all pertinent issues, and are confident they can work effectively together to narrow issues together as the litigation continues. To that end, Facebook respectfully submits that the parties should concentrate their initial discovery on class certification issues and the issues identified in this Court's ruling on the Motion to Dismiss. (*See supra* pp. 10-11.)

### XVI. EXPEDITED SCHEDULE

The parties do not believe that this is the type of case that should be handled on an expedited basis pursuant to Expedited Trial Procedure of General Order No. 64.

### XVII. SCHEDULING

The parties respectfully submit that the Court should set a schedule up to and including a hearing on Plaintiffs' motion for class certification and Facebook's motion for summary judgment, and that subsequent to the Court's decisions on those motions, a case management conference should be set to address the schedule for the balance of the litigation. At the upcoming case management conference, counsel will be prepared to address dates for a post-certification schedule, if the Court so prefers.

The parties have agreed to the following schedule:

| Event | Date |
|---|---|
| Deadline for Plaintiffs to designate the names, curriculum vitae and subject areas of expected testimony for all experts in support of motion for class certification pursuant to Fed. R. Civ. Proc. 26(a)(2)(A) | September 4, 2015 |
| Deadline for Facebook to designate the names, curriculum vitae and subject areas of expected testimony for all experts in opposition to motion for class certification pursuant to Fed. R. Civ. Proc. 26(a)(2)(A) | October 2, 2015 |

| Event | Date |
|---|---|
| Deadline for Plaintiffs to file Motion for Class Certification and all supporting declarations, evidence, and other papers | October 14, 2015 |
| Defendant's Motion for Summary Judgment (against named Plaintiffs) | October 14, 2015 |
| Deadline for Facebook to file Opposition to Motion for Class Certification and supporting declarations, evidence, and other papers | December 16, 2015 |
| Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (against named Plaintiffs) | December 16, 2015 |
| Deadline for Plaintiffs to file Reply in Support of Motion for Class Certification | January 20, 2016 |
| Defendant's Reply in Support of Motion for Summary Judgment (against named Plaintiffs) | January 20, 2016 |
| Hearing on Motion for Class Certification / Defendant's Motion for Summary Judgment (against named Plaintiffs) / Further Status Conference | February 17, 2016, at 9:00 a.m., or as the Court's calendar permits |

## XVIII. TRIAL

The parties respectfully submit that it is premature to set a trial date or estimate the length of trial at this time. Plaintiffs and Facebook demand a jury trial on all issues so triable.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES

The parties have filed their respective Certification of Interested Entities or Persons, as required by Civil Local Rule 3-15.

Plaintiffs' certification states as follows: "Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report."

Facebook's certification (Dkt. 12) states as follows: "Pursuant to Civil Local Rule 3-16, Defendant Facebook, Inc. ('Facebook') certifies that as of this date, other than the named parties, there is no such interest to report. Additionally, pursuant to Federal Rule of Civil Procedure 7.1(a), Facebook certifies that it has no parent company and that no other publicly-held corporation owns 10% or more of the stock of Facebook. Facebook is a publicly-held company organized under the laws of Delaware."

14
JOINT CASE MANAGEMENT CONFERENCE STATEMENT;
CASE NO. C 13-05996-PJH

## XX. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: March 5, 2015                    LIEFF CABRASER HEIMANN & BERNSTEIN LLP

                                        By: /s/ Michael W. Sobol
                                            Michael W. Sobol
                                            Attorneys for Plaintiffs


                                        GIBSON, DUNN & CRUTCHER, LLP

                                        By: /s/ Joshua A. Jessen
                                            Joshua A. Jessen
                                            Attorneys for Defendant Facebook, Inc.


## ATTESTATION

I, Michael W. Sobol, am the ECF user whose identification and password are being used to file this document. I hereby attest that Joshua A. Jessen has concurred in this filing.

Dated: March 5, 2015                    By: /s/ Michael W. Sobol
                                            Michael W. Sobol