UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATTHEW CAMPBELL, et al.,

    Plaintiffs,

  v.

FACEBOOK INC.,

    Defendant.

Case No. 13-cv-05996-PJH (MEJ)

**DISCOVERY ORDER**

Re: Dkt. No. 95

**INTRODUCTION**

  Pending before the Court is the parties' Joint Discovery Letter, in which they dispute whether Plaintiffs may compel Defendant Facebook Inc. to produce documents that its Irish affiliate previously submitted to an Irish regulatory agency. Dkt. No. 95. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion to Compel for the reasons set forth below.

**BACKGROUND**

  This putative privacy class action challenges Facebook's alleged "scanning" of messages sent on its social media website, which Plaintiffs contend violates the Federal Wiretap Act and California Penal Code section 631. Jt. Ltr. at 1. Plaintiffs allege that, without consent, Facebook scans the content of putative class members' messages for use in connection with its "social plugin" functionality. *Id.* Specifically, certain websites display a Facebook "like" counter, which enables visitors to see how many users have clicked a button indicating that they "like" the page or have shared the page on Facebook. *Id.* Plaintiffs allege that Facebook scans the content of putative class members' messages, and if a link to a web page is in a message, Facebook treats it as a "like" of the page, thereby increasing the page's "like" count by one. *Id.* Plaintiffs allege that Facebook uses this "like" data to compile user profiles, which it then uses to deliver targeted

United States District Court
Northern District of California

advertising to users.  *Id.*  Plaintiffs seek to represent a class of "all natural person Facebook users located within the United States who have sent or received private messages that included URLs in their content, from within two years before the filing of this action up through and including the date when Facebook ceased its practice."  Consolidated Compl. ¶ 59, Dkt. No. 25.

The parties are now at an impasse concerning Plaintiffs' Request for Production No. 30 (the "Request"), which seeks documents and electronically stored information ("ESI") related to Facebook's foreign affiliate, Facebook Ireland Limited ("Facebook Ireland"), conducted by the Office of the Irish Data Protection Commissioner ("IDPC").  Jt. Ltr. at 1; *see also id.*, Ex. A (Request for Production) & Ex. B (Response to Request for Production).  Specifically, the Request states: "All Documents and ESI related to all audits of Facebook conducted by the Office of the Irish Data Protection Commissioner."  *Id.*, Ex. A at 14.  The parties have met and conferred, and Plaintiffs have now agreed to limit their Request to the context of private messages.  *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to

certain matters.  Fed. R. Civ. P. 26(c)(1).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## DISCUSSION

In opposing Plaintiffs' Request, Facebook indicates that the Court should weigh international comity[1] concerns and the potential burden to Facebook if it is compelled to respond. Jt. Ltr. at 4-5.  First, it asserts that the IDPC has recently reiterated the importance of confidentiality in its communications with the organizations it regulates.  *See id.* & n.7. Specifically, the IDPC wrote in a recent report: "[I]n common with many regulators in the world, it is not possible to publicly disclose details of our engagement with these organisations [including Facebook Ireland], as this could negatively impact on the frankness of those conversations and therefore make effective regulation more difficult."  Annual Report of the Data Protection Commissioner of Ireland 12 (2014), https://www.dataprotection.ie/docimages/documents/Annual%20Report%202014.pdf.  Second, Facebook notes that the IDPC may not disclose confidential information received from the organizations it regulates, and consequently Facebook argues that it is likely under an equitable obligation to maintain the confidentiality of its communications with the IDPC as well.  Jt. Ltr. at 5 & n.7.  Facebook asserts that, if the Court compels production of these documents, it will need to seek permission from the IDPC before producing the requested materials, and if the IDPC denies the request, Facebook will need to bring a motion for a protective order in this Court on the ground that the production may violate Irish Law.  *Id.* at 5.  The IDPC has not at this time filed any expression of its views on the production of these documents.

---

[1] Plaintiffs contend that Facebook has waived the right to raise this objection because Facebook did not raise it in its April 1, 2015 Responses.  Jt. Ltr. at 2 n.3.  While it is generally true that a responding party waives objections if not raised within the required time, the issue of international comity strikes the Court as the type of objection that cannot be so easily waived, as consideration of international comity issues primarily concerns the foreign entity, not just the responding party. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.27 (1987) ("Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states.").  As such, the Court does not find Facebook's comity argument subject to waiver in this context.

United States District Court
Northern District of California

"Rule 26 grants the court discretion to limit discovery on several grounds, including international comity." *See In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007) (citing *Aerospatiale*, 482 U.S. at 544). Given the concerns raised by Facebook above, the Court finds it appropriate to weigh Plaintiffs' Request in view of the five factors "relevant to any comity analysis":

> (1) the importance to the . . . litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Aerospatiale*, 482 U.S. at 544 n.28 (citation omitted).[2] The Court considers these factors below.

## A. Factors 1-3: Importance of the Information Requested; Specificity; and Origin

Plaintiffs cite a portion of the IDPC audit that states "[a]s part of this audit, Facebook [Ireland] were asked to provide information about what, if any scanning (aside from anti-virus and anti-spam scanning) is performed on user's private message content," and as such Plaintiffs argue their Request "seeks highly relevant information related to regulatory investigations of Facebook's scanning of users' private messages, *the precise issue at the heart of this case*." Jt. Ltr. at 2 (emphasis in original) (citing Office of the Irish Data Protection Commissioner, Report of Re-Audit of Facebook Ireland Ltd. ("Report"), Annex, Section 2.4 "Private Message Content" (21 Sept. 2012), https://dataprotection.ie/documents/press/Facebook_Ireland_Audit_Review_Report_21_Sept_2012.pdf).

But Plaintiffs have not shown how these documents are of such particular importance to

---

[2] *See also Aerospatiale*, 482 U.S. at 544 n.27 ("'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." (quoting *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895)).

this litigation.  In reviewing the portion of the IDPC's audit cited by Plaintiffs—Section 2.4

"Private Message Content"—the Court notes that the IDPC does not discuss the "social plugin"

and "like" function but rather focuses on potential internal and law enforcement implications,

noting that Facebook Ireland scans messages to identify "violations of certain terms of use of the

service" and messages suggesting possible risks of imminent harm.  Report at 109.[3]  It also states

that "[a] full, detailed review of the operation of the private messaging system is beyond the scope

of this audit."  *Id.*  These statements raise the question of whether the documents considered in the

IDPC's review in fact pertain to this case.

Even if Facebook Ireland provided the IDPC with documents relating to the scanning

feature alleged in this case, as Facebook points out, Plaintiffs seek to represent Facebook users in

the United States and challenge "a specific functionality alleged to have been operative on the

U.S. Facebook website[.]"  Jt. Ltr. at 4.  From what the Court can deduce from the materials

provided, the information Plaintiffs seek originated in Ireland, not the United States.  Plaintiffs,

however, contend that Facebook "has made no showing that its message scanning practices in the

EU [are] any different from those in the US" and asserts that "if there *is* a difference in scanning

practices, such differences would be highly relevant, showing a concern on Facebook's part to

respect one continent's privacy regime over the other's."  *Id.* at 2 (emphasis in original).  But

Plaintiffs do not explain why that difference is so important, for instance by describing how

Facebook and Facebook Ireland's differing behaviors relate to an element or elements of their

claims.  While in some cases compilations of data such as this can be very useful to establishing a

party's claim or defense, Plaintiffs have not shown how the information they seek is of such

particular importance in these circumstances.

**B.      Factor 4: Alternative Means of Securing the Information**

Turning to the fourth factor, Plaintiffs appear to have alternative sources to secure the

information they seek.  Importantly, as Facebook notes, it has already agreed to produce the

relevant source code in this matter, which directly pertains to Plaintiffs' claims about how

---

[3] The Court uses the PDF page number for ease of reference.

Facebook may scan messages. *Id.* at 4. Additionally, Plaintiff has sought documents and ESI from Facebook related to investigations and actions by the United States Federal Trade Commission. *See* Ex. A, Request Nos. 27-28. It thus appears that Plaintiffs have alternative means of obtaining similar if not the same information they seek here. *See St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 2015 WL 2359568, at *9 (D. Or. May 18, 2015) ("[W]here the evidence sought is . . . 'largely cumulative of records already produced,' courts are more reluctant to require production." (quotation omitted)).

**C.     Factor 5: Balancing Interests**

The final factor is the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. "This is the most important factor." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992). Facebook's primary argument relating to this factor is that "disclosure may obstruct effective regulation by the IDPC." Jt. Ltr. at 4. It argues that the communications between Facebook Ireland and the IDPC are the same sort of communications the IDPC seeks to keep as confidential to maintain the candidness of conversations between it and the entities it regulates. *Id.* at 5.

As noted above, the Court has reviewed the IDPC's recent statement about the importance of confidentiality in aiding a frank discussion between it and companies such as Facebook Ireland.[4] While the IDPC's statements appear to focus on its own maintenance of such confidentiality, the Court finds some truth in Facebook's argument that foreign companies may be "less forthcoming with the IDPC in the future if they know that their communications will be judged and dissected for entirely unrelated purposes in a United States court." *Id.* The Court does not necessarily agree that Plaintiffs' purposes are "entirely" unrelated, but it does recognize that the IDPC's effective regulation may depend on the candidness of its communications, which in

---

[4] It is not clear how Facebook Ireland responded to the IDPC's request to provide information about its scanning practices. In a footnote, Facebook mentions that "the emails from the IDPC to Facebook Ireland include a footer prohibiting dissemination on the grounds of confidentiality[,]" indicating that at least some of Facebook Ireland's responses may have been in the form of email communications. *Id.* at 5 n.7. Consequently, this situation may be different from circumstances where a party is simply asked to produce its own documents.

turn may depend on confidentiality with the entities it regulates.  *See* Restatement (Third) of Foreign Relations Law § 442 (1987) (courts consider "whether producing the requested information would affect important substantive policies or interests of the foreign state.").  Of course, this argument will not suffice in every case.  As the Ninth Circuit noted, "the United States' interests in vindicating the rights of American plaintiffs . . . . [is] 'substantial[.]'" *Richmark*, 959 F.2d at 1477 (citation omitted).  But considering the evidence and arguments presented in this particular case, the Court does not find this interest significantly threatened here, particularly as Plaintiffs have alternative sources to obtain similar, if not the same, information they seek in this Request.  *See, e.g.*, *In re Rubber Chems.*, 486 F. Supp. 2d at 1082 ("[C]ourts are less inclined to ignore a foreign state's concerns where the outcome of litigation 'does not stand or fall on the present discovery order,' or where the evidence sought is cumulative of existing evidence." (citing *Richmark*, 959 F.2d at 1475)).

**D.    Summary**

While alone any of the above factors would not be sufficient to limit discovery, considering all the factors together in light of the present circumstances, the Court finds that Facebook's response to Plaintiffs' Request for Production No. 30 is not warranted at time. Accordingly, the Court denies Plaintiffs' Motion to Compel.  However, if at some future point Plaintiffs can demonstrate the importance of this proposed discovery and the inability to obtain it elsewhere, the Court may consider revisiting Plaintiffs' Request.

**CONCLUSION**

Based on the foregoing analysis, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion to Compel Facebook's response to Request for Production No. 30.

**IT IS SO ORDERED.**

Dated: July 21, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge