UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MATTHEW CAMPBELL, MICHAEL HURLEY, and DAVID SHADPOUR,<br><br>    Plaintiffs,<br><br> v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No. C 13-05996 PJH (MEJ)<br><br>**ATTESTATION IN SUPPORT OF JOINT LETTER REGARDING FACEBOOK'S RESPONSES TO PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION**<br><br>Date: TBD<br>Time: TBD<br>Location: San Francisco Courthouse<br>    Courtroom B – 15th Floor<br>    450 Golden Gate Avenue<br>    San Francisco, CA 94102 |

Pursuant to the Discovery Standing Order for Magistrate Judge Maria-Elena James, undersigned counsel hereby attest that they met and conferred in person in a good faith attempt to resolve their disputes prior to filing the below joint letter.

Dated:  September 18, 2015    Respectfully submitted,

                  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                  By: */s/ Michael W. Sobol*
                      MICHAEL W. SOBOL

*Attorneys for Plaintiffs*


GIBSON, DUNN & CRUTCHER LLP

By: */s/ Joshua A. Jessen*
     JOSHUA A. JESSEN

*Attorneys for Defendant Facebook, Inc.*

September 18, 2015

VIA ECF

The Honorable Maria-Elena James, Chief Magistrate Judge
United States District Court, Northern District of California
San Francisco Courthouse, Courtroom B - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Campbell v. Facebook, Inc*., N.D. Cal. Case No. 13-cv-05996-PJH (MEJ)

To The Hon. Maria-Elena James:

The parties jointly submit this letter brief pursuant to the Court's Discovery Standing Order.

## I.     Background

A dispute has arisen over Plaintiffs' Third Requests for Production ("RFPs"), comprising eight RFPs numbered 53-60 (the "Requests").

These Requests (i) concern efforts by Facebook or third parties to value Facebook users generally, or the information collected from them, or to determine the revenues or profits attributable to such information (**RFP 53**); (ii) concern efforts by Facebook or third parties to value the information derived from Facebook messages (**RFP 54**); (iii) seek to identify the number of web pages with "Like" social plugins, on a monthly basis (**RFP 55**); (iv) seek to identify the number of "Likes" generated on a monthly basis (**RFP 56**); (v) seek to identify the number of "Passive Likes" (defined as "Likes" generated as a result of Facebook allegedly "scanning" URLs contained in messages) generated on a monthly basis (**RFP 57**); (vi) seek documents and ESI correlating the acquisition of "Likes" by third parties with spending by such third parties on Facebook ad buys (**RFP 58**); (vii) concern efforts by Facebook or third parties to value the presence of "Like" buttons on third party websites, to value data received therefrom, or to determine revenues attributable to the presence of such "Like" buttons (**RFP 59**); and (viii) concern efforts by Facebook or third parties to increase or maximize the presence of "Like" plugins on third party websites (**RFP 60**).

In response to these Requests, Facebook agreed to produce responsive documents to RFP Nos. 55 and 57 (to the extent they could be located after a reasonable search) ; objected and offered to meet and confer on RFP Nos. 53, 54, and 59; and objected to RFP Nos. 56, 58, and 60.  Facebook subsequently informed Plaintiffs that it had conducted a reasonable search and diligent inquiry for documents responsive to RFP Nos. 55 and 57 (as well as RFP No. 54, following a meet-and-confer), but had not located any documents responsive to those Requests during the relevant time period.  As for the other Requests, Facebook stands on its objections.  Having conferred in person, the parties are now at an impasse and submit this joint letter pursuant to the Court's Discovery Standing Order.

## II.  Plaintiffs' Position

RFPs 53-60 seek discovery relevant to damages in this action.  Alternately standing on objections that the Requests are too broad, or interpreting them so narrowly as to exclude all responsive documents, Facebook refuses to produce a single document responsive to Plaintiffs' damages RFPs.  Facebook appears to be applying a unilaterally restrictive standard to its searches, which no documents in Facebook's possession can satisfy, but Plaintiffs have reason to believe that responsive documents exist, and should be produced.[1]

This suit arises under the California Invasion of Privacy Act ("CIPA"), and the Electronic Communications Privacy Act ("ECPA").  CIPA provides for actual damages, or statutory damages of $5,000.  Cal. Penal Code § 637.2.  ECPA provides for a variety of "appropriate relief," including (1) the sum of actual damages plus profits made by the violator as a result of the violation, (2) statutory damages of $10,000, or $100 per day of violation; and/or (3) other equitable relief "as may be appropriate." 18 U.S.C. § 2520(b)-(c).  Plaintiffs are pursuing damages under each allowable measure, including appropriate equitable relief.

The unlawful scanning alleged here occurs at the intersection of several activities beneficial to Facebook, including (1) promoting social plugins to third-party websites, and generating "Likes" of such sites which, among other things, constitutes advertising for Facebook, and allows it to track users' browsing activity; (2) encouraging users to engage with Facebook by enabling private messaging; and (3) processing data gleaned from such users' engagement for research or to improve targeted advertising efforts.  As long as Facebook refuses to produce documents relevant to *how* these activities generate revenue, Plaintiffs are impeded from identifying how Facebook benefited from its decision to scan private messages for URLs and increment the associated Like counts.  This discovery is critical to establishing Facebook's unjust enrichment or profits from the alleged violations of ECPA.

The Requests' overarching purpose is to discover how Facebook generates profits in order to analyze the role played by private messages, social plugins, and Likes, and, specifically, the interception of private messages, generation of passive Likes, and derivative activities, in Facebook's income stream.  Objecting that many Requests are too broad, Facebook has withheld all responsive documents.  Conversely, for highly specific Requests, Facebook claims it cannot produce responsive documents, in part, because it does not value users, messages, or Likes in the *specific way* those Requests are framed.  At this early stage of discovery, Plaintiffs apparently have not applied Facebook's specific internal terminology for valuing inputs to its business.  A good-faith search, however, would provide documents showing how Facebook categorizes such inputs, whether by user, by activity, by data source, by information type, or in some other way, so that Plaintiffs could accurately model the profits attributable to the challenged conduct.  Instead, Facebook has produced nothing and instead faulted Plaintiffs for the scope – both breadth and narrowness – of the Requests.

---

[1] Facebook also contends that this briefing is premature.  However, this discovery was served on June 29, 2015.  The deadline for both class certification and summary judgment motions is October 14, less than one month from the date of this filing.  Facebook's position that it will provide responsive documents at an unspecified future time unduly prejudices Plaintiffs in their efforts to prepare for these impending deadlines.

There is every reason to believe that responsive documents exist. To name just a few, RFP 57 seeks to identify the number of Likes generated by scanning private messages. In his June 2015 Declaration, Facebook Engineer Alex Himel stated that he ███████████ ███████████████████████████████████ In describing that work, Mr. Himel referenced ███████████████████████████████████████ Such records would be responsive. Yet, Facebook states that a diligent search turned up nothing. RFP 53 concerns Facebook's efforts to value users and/or their information. Although Facebook uses metrics such as "average revenue per user," and refers to users' "revenue-generating activity,"[2] again its counsel states that a reasonable search turned up no documents. Similarly, RFP 55 asks for documents showing the number of web pages with "Like" social plug-ins on a monthly basis. Indeed, Facebook has published a blog post containin███████████████████████ ███████████████████████████████████████ (FB000003105), yet maintains that no responsive documents exist.

Even if, as its counsel represents, Facebook never directly evaluated the independent worth of its users, Passive Likes, or private messages (*See* RFPs 53, 54, 57), the information to ascertain Facebook's profits from scanning private messages, logging URLs within, and generating Likes, can be determined with expert analysis of the related information sought by the Requests. The value that Facebook places on expanding its network of social plug-ins is relevant, in part, because the challenged activity here may have incentivized third party websites to install such social plugins[3] (RFPs 55, 60). The value that Facebook or paying third parties place on Likes is relevant because the challenged conduct increased the Likes accumulated by third parties, and evidence indicates that this outcome was ███████."[4] (RFPs 58, 59). How significant a share Passive Likes were of all Likes generated through social plugins is relevant to determine the proportion of Facebook's profits attributable to generating Passive Likes through the alleged ECPA violations (RFPs 56, 57). Thus, Plaintiffs respectfully request that the Court order Facebook to conduct a good faith search and produce relevant documents, in accordance with the objectives of these Requests.

---

[2] *See*, *Facebook Q2 2015 Results Earnings Slides* (2015), at 12, http://investor.fb.com/results.cfm.

[3] Facebook promotes its social plugins to third party websites, and shows customers "**how much revenue per product was generated as a result of clicks on the Like button,**" among other things, but responsive documents related to such activity have not been produced. *See, e.g.*, Facebook, Inc. and Adobe Sys. Inc., *Best practices for measuring and optimizing the business impact of the Facebook Like button* (2011), http://assets.omniture.com/en/downloads/datasheets/2510.white_paper_facebook_measure_like_value.pdf

[4] Increasing the Like count appears to have motivated the alleged ECPA violations. When explaining what data contributes to the Like count (including URLs found through private message scans), a Facebook employee states ███████████████████████████████████████████" FB000003335; *See also* FB000000699███████████████████████████████████"). Documents discussing this "█████," and outcomes thereof, are responsive, but have not been produced.

**III.     Facebook's Position**

This letter brief illustrates just how far Plaintiffs have strayed from the District Court's clear instruction at the March 12, 2015 case management conference that the parties should focus their discovery efforts on issues relevant to class certification and the open issues from the Court's motion-to-dismiss order.  The majority of Plaintiffs' requests are overbroad and untethered to Plaintiffs' two surviving claims and the damages they are permitted to seek pursuant to those laws.  Contrary to Plaintiffs' argument, it is not that Plaintiffs "have not applied Facebook's specific internal terminology for valuing inputs to its business" or that Facebook has interpreted Plaintiffs' requests "too broad[ly]"; rather, it is that the majority of Plaintiffs' requests seek information that simply has nothing to do with Plaintiffs' claims.[5]

Plaintiffs allege that prior to the end of 2012, Facebook "scanned" the content of Plaintiffs' messages, and if a URL was in the message and the webpage corresponding to the URL displayed a "Like" button social plugin with an anonymized, aggregate "counter," that "like counter" increased by one (which Plaintiffs refer to as a "passive like").  Plaintiffs also allege that this "passive like" data was used to compile user profiles in order to deliver targeted advertising to users.  Notably, Plaintiffs do ***not*** challenge any conduct related to a Facebook user affirmatively clicking on a "like" button (which likewise increased the counter and which Plaintiffs have termed "active likes") or to the use of the "like" button in general.

Plaintiffs' stated purpose behind RFPs 53-60, *i.e.*, "to discover how Facebook generates profits," is fundamentally flawed and overbroad.  Plaintiffs are not entitled to general documents about how Facebook "generates profits."  Rather, they are entitled to documents (if any) relevant to their specific claims and the permissible damages under those claims (*i.e.*, documents showing that Plaintiffs suffered damages or that Facebook "profited" from the alleged "interceptions").  But as Plaintiffs know from discovery to date, their core theory about how Facebook allegedly "profited" during the relevant time period—*i.e.*, by using "passive likes" to compile user profiles to deliver targeted advertising to users—has no basis in fact.  Accordingly, it is not surprising that Facebook has not located any documents showing that Facebook "profited" by the alleged conduct.

Plaintiffs' request should be denied for two overarching reasons:

1. Facebook Already Agreed To Produce Documents Related To Plaintiffs' Claims.  Only RFP Nos. 54,[6] 55,[7] and 57 seek documents that are arguably relevant to Plaintiffs' claims.

---

[5] Notably, the District Court dismissed Plaintiffs' UCL claim with prejudice, holding that Plaintiffs had not alleged any "lost money or property" as a matter of law.  (Dkt. 43 at 19).  Plaintiffs can only seek three varieties of monetary relief under their remaining claims:  (1) statutory damages, (2) "actual damages," and (3) "profits made by [Facebook] as a result of the [alleged] violation" under ECPA.  *See* Cal. Pen. Code § 632.7(a); 18 U.S.C. § 2520(b)-(c).  "Unjust enrichment" is not an available form of damages, nor are other forms of money damages available under the provision of ECPA permitting, in certain cases, "such preliminary and other equitable or declaratory relief as may be appropriate."  18 U.S.C. § 2520(b)(1).

[6] Because this Request seeks only information about the amorphous and theoretical "monetary value" of information contained in messages (a theory rejected by the District Court, *supra* n. 5), it is overbroad.

[7] In an attempt to support RFP No. 55, Plaintiffs cite a previously produced blog post dated nearly a year after the alleged practices ceased.  The post does not suggest that the information sought by RFP 55 is available for the time period relevant to Plaintiffs' claims, but Facebook will renew its search for the data.

For these RFPs, Facebook already conducted a reasonable search and diligent inquiry, but it did not locate responsive documents during the relevant time period. Plaintiffs' insistence that "responsive documents exist" is speculation and reveals a lack of understanding about the already produced documents cited in Plaintiffs' portion of this brief. If Facebook subsequently locates documents responsive to these requests from the relevant time period, it will produce them.

2. <u>The Remaining RFPs Seek Documents That Are Unrelated To Plaintiffs' Claims</u>. The balance of Plaintiffs' requests are not tethered to their claims or the damages recoverable under those claims.

- RFP No. 53 does not concern "private messages" at all, much less the "profits" made by allegedly "intercepting" such messages, and instead seeks extremely general information regarding the "monetary value" of all "Facebook users" and their data. These documents, even if they existed, have no connection to Plaintiffs' claims or alleged injuries.[8]

- RFP No. 56 seeks information about "active likes." Recognizing that such requests are overbroad and irrelevant, Plaintiffs have ***withdrawn*** similar previous discovery requests.

- RFP Nos. 58 and 59 seek generic information about the value of the "like" button social plugin and have nothing to do with the specific practice challenged in this action. Further, they are overbroad because they seek information that includes (1) "active likes," and (2) the theoretical "monetary value" of information (a theory rejected by the District Court), not any "***profits*** made by [Facebook] *as a result of the [alleged] violation*" (the alleged "scanning" of messages containing URLs). 18 U.S.C. § 2520(c) (emphasis added). Even if there were responsive documents, those documents would not have anything to do with the "damages" recoverable by the putative class in this case.[9]

- Finally, RFP No. 60 is also irrelevant to Plaintiffs' claims and any possible damages recoverable under those claims. The publicly-available white paper cited by Plaintiffs concerns "active likes" (*see supra* n. 3 ("***clicks on the like button***"))—something that Plaintiffs have repeatedly conceded is not at issue in this case.

For the above reasons, Plaintiffs have not met their "initial burden of establishing that [their] request[s] satisf[y] the relevancy requirements of Rule 26(b)(1)." *Ellis v. J.P. Morgan Chase & Co.*, No. 12-cv-03897, 2014 WL 1510884, at *3 (N.D. Cal. Apr. 1, 2014). Their requests are irrelevant and overbroad, and to the extent any of the requests are relevant, Facebook has conducted a reasonable search for responsive documents. Facebook therefore respectfully requests that the Court deny Plaintiffs' requested relief.

---

[8] The Facebook Investor Relations document Plaintiffs cite in support of their position (*supra* n. 2) reveals just how overbroad RFP 53 is—it explains that "a revenue-generating activity" consists of (1) payments and other fees and (2) advertising. Neither is relevant to the challenged conduct.

[9] Plaintiffs claim that two previously produced documents evidence a ▓▓▓▓ or ▓▓▓▓▓▓ that "[i]ncreasing the Like count appears to have motivated the alleged ECPA violations." (*Supra* n. 4.) Like the blog post discussed above, Plaintiffs mischaracterize these documents and they are irrelevant since they do not discuss generating revenue, increasing profits, or assigning a monetary value to each "Like."