Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
David T. Rudolph (State Bar No. 233457)
drudolph@lchb.com
Melissa Gardner (State Bar No. 289096)
mgardner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Hank Bates (State Bar No. 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
11311 Arcade Drive
Little Rock, AR 72212
Telephone:  501.312.8500
Facsimile:  501.312.8505

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MATTHEW CAMPBELL and MICHAEL HURLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No.  C 13-05996 PJH (MEJ)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S "OBJECTION TO AND REQUEST TO STRIKE NEW EVIDENCE AND MISSTATEMENTS OF FACT"**<br><br>Date: March 16, 2016<br>Time: 9:00 a.m.<br>Judge: Hon. Phyllis J. Hamilton<br>Place: Courtroom 3, 3rd Floor |

I.      **INTRODUCTION**

Facebook mischaracterizes Plaintiffs' reply to Facebook's opposition to class certification as presenting "new evidence," in order to file an additional eleven pages of unauthorized surreply argument in an apparent end-run around this Court's order limiting Facebook's briefing on this motion.  *See* Dkt. 146 (denying Facebook's request for an additional 15 pages, but allowing an additional 5 pages, of briefing).  Plaintiffs' reply offers no new evidence, but rather replies to arguments raised by Facebook, drawing on the existing evidentiary record to counter Facebook's arguments.  Facebook's Objection to this supposed "new evidence" includes argument by counsel and two declarants which—while ultimately nowhere refuting that Facebook collects and exploits users' private information or that it maintains the [REDACTED] identifying all those users—improperly go to the merits of these issues.  Accordingly, Plaintiffs respectfully submit that the Court should overrule Facebook's objection and strike the surreply argument and declarations, or, in the alternative, grant leave to Plaintiffs to file additional materials to address Facebook's mischaracterizations contained therein.

II.     **ARGUMENT**

    A.     **Facebook's Objection is Procedurally Improper.**

Facebook violates Civil L.R. 7-3(d)(1)'s unambiguous requirement that any Objection to Reply Evidence "may not include further argument on the motion."  Facebook's Objection, including the declarations, constitutes "argument on the motion."  Indeed, the Objection itself acknowledges that Facebook engages in argument concerning the underlying issues, and actually threatens the possibility that it may file *further* argument in the future.[1]  Here, Facebook does more than "straddle the line between objections and argument," but rather engages in unabashed argument. *Ross v. Ecolab Inc.*, No. 13-5097, 2015 WL 5681323, at *15 (N.D. Cal. Sept. 28, 2015) (Hamilton, J.) (finding that the specific evidentiary objections in that case did not constitute surreply argument).[2]  The Declaration of Dale Harrison argues at length regarding the

---

[1] *See* Dkt. 169-5 (FB Objection), at 4 n. 3 ("Facebook does not respond at this time to *all* the new facts and argument raised by Dr. Golbeck. . . . Facebook may seek leave of Court to submit additional evidence to rebut her contentions") (emphasis added).

[2] Plaintiffs' counsel acknowledge that Plaintiffs' reply brief erroneously (and unintentionally) contains a misplaced quotation mark when quoting a statement from a declaration of Dale

*Footnote continued on next page*

1  infeasibility of identifying class members, albeit based on a blatant mischaracterization of Dr.
2  Golbeck's method.  *See, e.g.*, Dkt. 170-2, at 1, ¶3 (taking issue with the "assumptions" used by
3  Dr. Golbeck).  The Declaration of Alex Himel misinterprets Dr. Golbeck's method as requiring a
4  three step query, making it unworkable.  *See* Dkt. 170-1, at 2, ¶6.  While Facebook's arguments
5  lack merit, they nonetheless constitute arguments, and therefore its Objection is improper.

6  Laced with argument, Facebook's Objection is nothing less than improper surreply.
7  *Carr v. Allied Waste Sys. of Alameda Cnty.*, No. 10-715, 2011 WL 4047495, at *7 (N.D. Cal.
8  Sept. 8, 2011) (Hamilton, J.), *aff'd on other grounds*, 516 F. App'x 677 (9th Cir. 2013) (denying
9  request to file "Additional Information to Address Misleading Facts Made by Defendant" as
10  improper attempt to submit a surreply).  As unauthorized surreply, Facebook's Objection also
11  violates the spirit of the Court's order denying its request for additional 15 pages of opposition
12  briefing.  After consideration, the Court found that Facebook "has not adequately supported its
13  request for an additional 15 pages."  Dkt. 146 (Order), at 1.  The Court did allow an additional 5
14  pages of briefing, which Facebook used in its opposition.  Particularly in the face of this order,
15  Facebook should have sought leave prior to filing new briefing.  *Roe v. Doe*, No. 9-682, 2009 WL
16  1883752, at *5 (N.D. Cal. June 30, 2009) (Hamilton, J.); Civ. L.R. 7–3(d) ("Surreplies are not
17  authorized without first obtaining leave of court"; once a reply brief is filed, no additional
18  memoranda may be filed without court approval).

19  Facebook's Objection is procedurally improper and therefore the Court should strike it.

20

21

---

22  *Footnote continued from previous page*
Harrison offered earlier in the proceedings in connection with a discovery dispute.  At page 10
23  line 20, the reply brief should have read "would 'require consulting with engineers in every group
. . . '" rather than read "'would require consulting with engineers in every group. . . '".  Plaintiffs'
24  counsel apologize for this inadvertent error.  Although Mr. Harrison's declaration literally states
that identifying every use of message content "may" require consultation with all these engineers,
25  Plaintiffs nonetheless disagree with Facebook's assertion that Mr. Harrison's testimony was
substantively misrepresented.  The clear implication of his testimony is that identifying all the
26  uses Facebook makes of Private Messages is an enormous if not impossible task.  After all, Mr.
Harrison never explains how it "may not" be the case that one would need to consult with
27  engineers in every group.  Apparently, Mr. Harrison meant to leave the impression that it "would"
be the case, when offering testimony to obstruct discovery, but now in the context of class
28  certification invokes his lawyers' use of the word "may" to back off the intended meaning.

### B. Facebook Could And Should Have Raised Its Surreply Points in Its Opposition.

Facebook's Objection contains numerous substantive assertions that respond to material raised in Plaintiffs' *opening* brief, not the rebuttal brief. For example, in Alex Himel's declaration he asserts the "impossib[ility]" of querying ▓▓▓▓ but this is purely in response to Dr. Golbeck's query identified in her opening report and is not related to her rebuttal analysis. Dkt. 170-1 (Feb. 26, 2016 Himel Decl.), at 1, ¶5. Mr. Himel also argues that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and also states (without evidence or elaboration) that "▓▓▓▓▓▓ play a critical role in a number of ways—including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id.*, at 3, ¶10. This testimony is directly related to Facebook's expert Dr. Goldberg's opposition opinions (and indeed that was the very testimony to which Dr. Golbeck was responding (*see* Dkt. 167-1, Ex. 1 (Golbeck Rebuttal Report), at 10, ¶24), and therefore could and should have been included with Facebook's opposition. Similarly, Dale Harrison's declaration repeats arguments Facebook made through its opposition regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and therefore does not reply to Dr. Golbeck's rebuttal opinions. Dkt. 170-2 (Feb. 26, 2016 Harrison Decl.), at 4, ¶7, bullet point 4. Accordingly, Facebook's arguments contained in its Objection should have been presented in its Opposition, and are not the proper subject of surreply.

### C. Dr. Golbeck's Rebuttal Report Contains No "New Evidence."

Facebook cannot assert that there is anything improper with filing Dr. Golbeck's Rebuttal Report on reply, so therefore asserts that the rebuttal report contains "new evidence." *See* Civ. L.R. 7–3(c) ("Any reply to an opposition may include affidavits or declarations . . . ."). To the contrary, Dr. Golbeck's rebuttal simply addresses arguments raised by Facebook in its opposition, relying on the record of the case. Therefore, Dr. Golbeck's rebuttal presents nothing new, and does not present any occasion for Facebook to file a surreply.

#### 1. The ▓▓▓▓▓▓▓▓▓▓▓

Contrary to Facebook's assertion, Dr. Golbeck's Rebuttal Report does not present a new methodology to identify class members. Instead, in direct reply to Facebook's challenges, the

1  Rebuttal Report provides clarification and context to the "███████████" that Dr. Golbeck
2  specifically described in her initial expert report. Dkt. 138-4, Ex. 2 (Golbeck Report), at 28, ¶103
3  ██████████████████████████████████████████████████████████████████████████████████
4  ███████████████████████████████████████████████████████."); *Id.*, at ¶104
5  ("████████████████████████████████████████."). Rather than identifying "an entirely
6  new data source," as Facebook wrongly asserts, Dr. Golbeck references the █████████████
7  that Facebook retrieved for the Representative Plaintiffs as the same type of information needed
8  to identify the absent class members. *See* Dkt. 126-1 (Oct. 6, 2015 Harrison Decl.), at 2, ¶5
9  (stating that Harrison was "able to extract" the ████████████ for the Named Plaintiffs).

10        Facebook's feigned surprise can hardly be credited—████████████ confirms that the
11  relevant Private Message data resides on Facebook's system. First, as early as June 1, 2015,
12  Facebook declarant Alex Himel explained that ████████████████████████████████████
13  ████████████ FB App.[3] 1607 (June 1, 2015 Himel Decl.), at 1613. Similarly, Facebook
14  produced what it, itself, calls ████████ for the Named Plaintiffs' intercepted Private Messages.
15  *See* FB App. 1535 (Facebook's Second Suppl. Resps. and Objs. to Pltfs.' Narrowed Second Set of
16  Interrogatories), at 1553 ██████████████████████████████████████████████████████
17  █████████████████████████████████ (emphasis added), and Ex. A thereto, at
18  1555.[4] In other words, obtaining the Private Message data that Facebook indisputably stores
19  would most logically occur via the ████████████, based upon Facebook's own
20  representations and characterizations of the data it has produced, thus far. Dr. Golbeck's Rebuttal
21  Report simply reiterates this point, mentioning ████████████ by name, just as Facebook's
22  own witnesses already had.

23        Dr. Golbeck's clarification that her methodology relies on the existence of ███
24  ████████ is the necessary by-product of Facebook's misleading implication that certain data

---

[3] Citations to "FB App." are to the Appendix of Evidence filed by Facebook in connection with its opposition to Plaintiffs' Motion for Class Certification.

[4] Dr. Golbeck lists Facebook's interrogatory responses which reference the ████████ in her initial report, as did Plaintiffs in their opening motion. *See* Dkt. 138-4, Ex. 2 (Golbeck Report), at Ex. B; Dkt. 138 (Motion for Class Certification), at 13.

1    fields do not exist in its attempt to confuse the most commonsense and elemental steps in a

2    straightforward, objective process. Dkt. 149 (FB Opp. Br.), at 14 (claiming that Dr. Golbeck's

3    proposal did not entail searching data sufficient to identify certain class members). The Rebuttal

4    Report merely pointed out what Facebook already knew (but chose to ignore) when it claimed

5    that the methodology would yield incomplete results. Namely, Dr. Golbeck clarified that ▮▮▮

6    ▮▮▮▮▮▮ contains the needed data, specifically: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 167-1,

8    Ex. 1 (Golbeck Rebuttal Report), at 2, ¶8. Nowhere does Facebook claim that any other

9    information would be required to properly identify the members of the class. Dr. Golbeck has not

10   changed her methodology—it remains the same sound, workable procedure that was articulated in

11   the initial expert report. She has simply attempted to remedy Facebook's misdirection.

12         Facebook's newly-submitted complaints that compiling the class list from Private

13   Message data would be "impossible" are untimely and incorrect. *See* Dkt. 170-1 (Feb. 26, 2016

14   Himel Decl.), at 1 ¶5. Dr. Golbeck's opening and rebuttal reports simply state that because

15   Facebook stores the relevant data associated with users' Private Messages, "[a] database query

16   could be used ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮." Dkt. 138-4, Ex. 2 (Golbeck Report), at 28, ¶¶103-104. With respect to

18   each interception at issue in this case, Facebook's source code creates an ▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮.[5] These relevant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The messages which have such

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will themselves have a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ needed to identify class members. In what has to be

24   labeled a blatant mischaracterization, Facebook states that Dr. Golbeck's method requires the

---

[5] Improperly arguing the merits in its Objection, Facebook asserts that ▮▮▮▮▮▮▮▮▮▮ specific to URL attachments in private messages cannot be uniquely identified. *See, e.g.*, Dkt. 170-2 (Feb. 26, 2015 Harrison Decl.), at 2, ¶6. Dr. Golbeck disagrees, based on her review of Facebook's source code, which shows that ▮▮▮▮▮▮ attributes include those which show the presence of a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See Dkt. 167-1, Ex. 1 (Golbeck Rebuttal Report), at 2, ¶8; Dkt. 138-4, Ex. 2 (Golbeck Report), at 27, ¶99.

1  assembly of a ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ whether they were

2  pertinent to the class or not.  But the subject of the query, as laid out with example query code in

3  Dr. Golbeck's opening report, is for the relevant ▬▬▬▬▬▬▬▬▬▬▬.  Dkt. 138-4, Ex. 2

4  (Golbeck Report), at 28, ¶104.  The resulting query would identify ▬▬▬▬▬▬▬▬

5  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

6  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

7  ▬▬▬▬ *See id.*, at 28, ¶103; Dkt. 167-1, Ex. 1 (Golbeck Rebuttal Report), at 2, ¶9.  Dr.

8  Golbeck's statement that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

9  ▬▬▬▬ (*id.*) just means that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

10 ▬▬▬▬▬▬▬▬.  Thus, the parade of impossibilities Facebook marches out relies upon a

11 deceptively false premise.

12        Accordingly, it is of no consequence that ▬▬▬▬▬▬ was not referred to by name,

13 as it was described in substance, and Facebook was of course well aware of its existence.  When

14 Facebook challenged the ability to use ▬▬▬▬▬▬, Dr. Golbeck properly replied with

15 further specifics from the previous disclosed record.

16        **2.**   ▬▬▬▬▬▬▬▬▬

17        Plaintiffs have set forth evidence showing that Facebook scans Private Messages while in

18 transit to create ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, including

19 those representing the ▬▬▬▬▬▬▬▬▬, which is redirected through discrete code for

20 later use unrelated to sending the message.  As set forth in Dr. Golbeck's opening report, one

21 such place this Private Message content is sent to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

22 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  In its

23 opposition, Facebook claimed it no longer ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

24 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ FB App.

25 1693 (Jan. 15, 2016 Fechete Decl.), at 1698, ¶14.  So, in her rebuttal report, Dr. Golbeck

26 confirmed that her search of the source code showed existing references to ▬▬▬▬▬▬.

27 As further evidence of Facebook's ▬▬▬▬▬▬▬▬▬▬▬, Dr. Golbeck amplified on the

28 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

1  ████████████████████████████.  Dkt. 167-1, Ex. 1 (Golbeck Rebuttal Report), at 11-
2  12, ¶¶31-32.  As its name implies, ████████████████████████████████████
3  ████████████████████████████████████████████████████████████████████████
4  ████████████████████████████.  *Id.*, at 12, ¶34.

5       References linking ██████████████████████ have been a part of this case since
6  long before Dr. Golbeck's Rebuttal Report.  For example, describing a change to Facebook's
7  ████████████████, one document states: █████████████████████████████████
8  ████████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████████
10 █████████  *See* FB000003810.  This document shows that ████████████████████
11 ████████████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████
13 █████.  Moreover, contrary to Mr. Himel's assertion, Dr. Golbeck did link ████████
14 █████████, when she noted that ████████████████████████████████████████
15 ████████████████████████████████████████████████████.  Dkt. 167-1, Ex. 1
16 (Golbeck Rebuttal Report), at 12, ¶32.

17      Moreover, Mr. Himel's newly-submitted testimony is even more inappropriate in light of
18 the fact that Facebook has withheld the source code ████████████████████████████
19 ████████████████ that would support the (otherwise unsupported) assertions he now makes.
20 Notably, Mr. Himel does *not* say that Facebook no longer ███████████████████████
21 ██████████████████  In October 2015, Plaintiffs requested, and Facebook refused to produce,
22 the ████████████████████████████████.  *See* Nov. 20, 2015 email from Facebook
23 counsel Joshua Jessen to Plaintiffs' counsel David Rudolph (arguing that the ████████████
24 are irrelevant and stating ████████████████████████████████████████
25 ██████████).  Plaintiffs are seeking to compel production of this data, and Facebook should
26 not, under the guise of "surreply" material, be allowed to introduce into evidence testimony
27 related to source code functionality that Facebook has refused to produce.
28

**D. Nothing In Facebook's Surreply Should Dissuade The Court From Certifying the Class.**

Facebook's two primary arguments in the Objection—concerning ascertainability of the class and Facebook's improper use of Private Message content—offer no basis to deny class certification. On ascertainability, Facebook does not dispute that ▇▇▇▇ includes all the necessary information to identify all class members. Instead, it essentially bickers that the precise code for the query has not necessarily yet been presented in final form. The bickering misses the main point, that is, that Plaintiffs' expert has identified the existence of the data and general methodologies for extracting it that can be successful, even if it takes, quite unsurprisingly, working within the systems (a luxury she has not yet been afforded) to finalize the details. On improper use, again, Facebook nowhere denies that its source code shows it is systematically ▇▇▇ Private Message content and that it has historically ▇▇▇▇ ▇▇▇▇▇▇▇. It merely bickers that so far *some of* what Plaintiffs identify in the source code as pointing to improper use is no longer operative. Moreover, the ▇▇▇ in and of itself constitutes an interception, and is particularly concerning given the immense extent of Facebook's ▇▇▇▇▇▇ of the associated data.

**III. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court overrule and deny Facebook's Objection to and Request to Strike New Evidence, and to strike the declarations of Alex Himel and Dale Harrison filed therewith. Alternatively, if the Court declines to strike Facebook's two declarations, Plaintiffs respectfully request leave to file a response thereto, including a declaration from their expert.

| | | |
|---|---|---|
| 1 | Dated:  March 9, 2016 | By:  */s/ Michael W. Sobol*<br>        Michael W. Sobol |

Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
David T. Rudolph (State Bar No. 233457)
drudolph@lchb.com
Melissa Gardner (State Bar No. 289096)
mgardner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman
rgeman@lchb.com
Nicholas Diamand
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Hank Bates (State Bar No. 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
11311 Arcade Drive
Little Rock, AR 72212
Telephone:  501.312.8500
Facsimile:  501.312.8505

*Attorneys for Plaintiffs and the Proposed Class*