# EXHIBIT D

## REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1  Michael W. Sobol (State Bar No. 194857)
   msobol@lchb.com
2  David T. Rudolph (State Bar No. 233457)
   drudolph@lchb.com
3  Melissa Gardner (State Bar No. 289096)
   mgardner@lchb.com
4  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5  San Francisco, CA  94111-3339
   Telephone:  415.956.1000
6  Facsimile:  415.956.1008

7  Hank Bates (State Bar No. 167688)
   hbates@cbplaw.com
8  Allen Carney
   acarney@cbplaw.com
9  David Slade
   dslade@cbplaw.com
10 CARNEY BATES & PULLIAM, PLLC
   2800 Cantrell Road, Suite 510
11 Little Rock, AR 72202
   Telephone:  501.312.8500
12 Facsimile:  501.312.8505

13 *Attorneys for Plaintiffs and the Class*

14                    UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16

17

18 | MATTHEW CAMPBELL and MICHAEL HURLEY, on behalf of themselves and all others similarly situated, | Case No.  C 13-05996 PJH (SK) |
   | --- | --- |
19 | | **PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CONFIGURATION TABLES** |
20 | Plaintiffs, | |
21 | v. | Date:  Telephonic Hearing to be set by Court |
22 | FACEBOOK, INC., | Time:  To be Set by Court |
   | | Judge:  Hon. Phyllis J. Hamilton |
23 | Defendant. | Place:  Courtroom 3, 3rd Floor |

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to this Court's Order dated June 30, 2016 (Dkt. 203), the undersigned Plaintiffs will and hereby do move the Court for an order granting Plaintiffs' Motion to Compel Production of Configuration Tables.  This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declarations of David T. Rudolph and Dr. Jennifer Golbeck filed herewith; the argument of counsel, if requested; and such other matters as the Court may consider.

# STATEMENT OF ISSUES TO BE DECIDED

Whether, consistent with the requirements of Federal Rule of Civil Procedure 26(b), Defendant Facebook, Inc. should be compelled to produce configuration tables that are a part of, and integral to, Facebook's processes and system architecture for scanning, acquiring, and using Private Message URL content.

## I. INTRODUCTION

Plaintiffs have requested that Facebook produce "configuration tables" for Facebook's databases that are a part of, and integral to, Facebook's processes and system architecture for scanning, acquiring, and using Private Message content, and which are therefore the subjects of Request for Production Nos. 4-14, 18-19, and 21 ("Requests"[1]).  Plaintiffs do not seek production of the user data in the databases themselves, but rather narrowly seek the *configuration* data that show how the URL content extracted from Private Messages is organized and used.  Pursuant to this Court's order (Dkt. 203), Plaintiffs respectfully request that the Court compel Facebook to produce relevant configuration tables for the entire class period.

Plaintiffs seek only those configuration tables that relate to Plaintiffs' claims as defined by the Court's class certification ruling (Dkt. 192, "Cert. Order") and Plaintiffs' Second Amended Complaint (Dkt. 196, "SAC"), filed in compliance with the Court's Order, and thus Plaintiffs' request is proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b)(1).  ***First,*** Plaintiffs seek the production of configuration tables related to Facebook's ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ databases, which contain data extracted from Private Messages.  This data was then used for two practices specifically challenged by Plaintiffs in the SAC:  (1) the use of Private Message data for targeted advertising, including recommendations of content to Facebook to users, and (2) to provide data to third parties about Private Message content.  ***Second,*** Plaintiffs seek the configuration tables for Facebook's ▓▓▓▓▓▓ database, which will reveal how Facebook's source code and databases process and use the "EntShare" and "EntGlobalShare" objects that Facebook creates when it intercepts Private Message content, as described in the SAC and the Cert. Order.  ***Third,*** Plaintiffs seek configuration tables for Facebook's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ database, which relates to Facebook's affirmative defense that its interception and use of Private Message content for purposes unrelated to message delivery somehow falls within the "ordinary course of business" exception to the Electronic Communications Privacy Act and California Invasion of Privacy Act.  As described in the accompanying declaration of Plaintiffs' technical expert, Dr.

---

[1] The Requests, and Defendant's responses, are attached as Exs. 3-4 to the Declaration of David Rudolph, filed herewith. Unless otherwise specified, all Exhibits cited herein are to the Rudolph Declaration.

Golbeck ("Golbeck Decl."), these configuration tables are necessary to understand the operation of Facebook's internal systems with respect to the challenged conduct.

Facebook has steadfastly refused to produce the requested configuration tables, contending that (1) the configuration tables identified by Plaintiffs are not relevant to Plaintiffs' claims, and (2) their production would be overbroad, unduly burdensome, and not proportional, given their size. However, the configuration tables are central to this case. The Private Message source code reveals aspects of how URL content is intercepted and redirected to certain databases; however, it does not reveal the organization and use of that content once redirected. The configuration tables are key to understanding how the intercepted content is stored and utilized post-redirection, and such understanding is critical to demonstrating liability, to rebutting Facebook's affirmative defense that the redirected uses are somehow within the "ordinary course of business" exception, and to fashioning appropriate injunctive relief regarding restrictions on the future use and retention of illegally intercepted and redirected content. This discovery thus clearly satisfies the proportionality requirements of Rule 26(b)(1). Moreover, as explained below, production of the configuration tables—distinct from the voluminous user data in the tables—is not overly burdensome or disproportionate, and thus satisfies the requirements of Rule 26(b)(2). The parties have met and conferred in-person on at least three occasions on this request and have reached an impasse.

## II.   ARGUMENT

### A.   Facebook's Configuration Tables Demonstrate How Facebook Uses Private Message Data.

The data Facebook mines from users' Private Messages resides on Facebook's databases.[2] Each database contains configuration tables[3] which show what kind of data resides on the database, how that data is organized, and how Facebook uses that data.[4] Facebook has produced that part of

---

[2] Golbeck Decl., ¶¶ 13-16.

[3] Facebook has repeatedly suggested that the term "configuration table" is not used internally by Facebook employees to describe the data sets Plaintiffs seek in this request. Even if true (though Facebook has never suggested any alternate terminology that its employees do use internally), this is immaterial; as explained below, Facebook has acknowledged that its databases contain "tables" that themselves contain "configuration data" relevant to Plaintiffs' claims. Moreover, as Dr. Golbeck explains, configuration tables are well known, widely used, and quite common. *Id.*, ¶ 12.

[4] *Id.*, ¶¶ 5-16.

- 2 -

PLAINTIFFS' MOTION TO COMPEL
CONFIGURATION TABLES
CASE NO. 13-CV-05996-PJH (SK)

1  its source code which operates to extract the data from Private Messages, but has refused to produce

2  the programming contained in configuration tables which reveals how Facebook uses the data after

3  it is redirected to databases.  The configuration tables Plaintiffs seek not only provide information

4  about the structure of the databases (*e.g.*, the names and characteristics of the data fields), but also

5  the instructions for how that data is utilized and therefore how Facebook stores and uses data

6  intercepted from Private Messages (the subject of the above-described Requests).[5]  In this latter

7  respect, configuration tables are equivalent to source code because they contain programming as to

8  how data is redirected into databases and thereafter used by Facebook.  Therefore, they should have

9  been produced with Facebook's source code production early last year.[6]

10      Based on their expert's review of Facebook's currently-produced source code, Plaintiffs

11  have been able to identify three categories of configuration tables for databases relevant to

12  Plaintiffs' claims that should be produced:

13      ***First***, the configuration tables for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[7]  As

15  explained in detail in Plaintiffs' opening and reply briefing and reports in support of their motion

16  for class certification, Facebook's logging of Private Message content is a central issue in this

17  case.[8]  Without access to this information it is not possible to fully determine the functionality of

18  these logging systems with respect to logging of URLs in Private Messages, because, as Facebook

19  concedes, configuration data demonstrates how the source code handles underlying message data.

20  And, as explained below, the testimony of Facebook's employees has put Facebook's database

21  configuration data directly at issue by referring to it in support of Facebook's arguments.

22      ***Second***, configuration tables contained in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] *Id.*, ¶¶ 13-16.

[6] The details of that source code are described in Plaintiffs' motion to compel source code for the entire class period, filed concurrently with this motion.

[7] Golbeck Decl., ¶ 18.

[8] *See, e.g.,* Dkt. 199-1, Ex. 1 (Mot. For Class Cert.), at 5 (arguing Facebook uses data logged from Private Messages to fuel recommendations, including data from the ▮▮▮▮▮▮▮ table); Dkt. 184-11 (Jan. 14, 2016 Himel Decl.), ¶ 44 (admitting ▮▮▮▮▮▮▮ table informed "Recommendations Feed"); Dkt. 184-17 (Golbeck Rebuttal Report), ¶¶ 28-37 (discussing ▮▮▮▮▮▮ and ▮▮▮▮▮▮ logging); Dkt. 184-21 (Feb. 26, 2016 Himel Decl.), ¶¶ 7-9 (same).

1  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

2  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[9]  As described in prior motions to compel and Orders,

3  Facebook stores the "EntShare" data extracted from Private Messages in the format of "Objects"

4  and "Associations."[10]  Thus, this data is necessary to understand how EntShares are used within

5  Facebook's source code.

6        ***Third***, values from the ▇▇▇▇▇ configuration table in the ▇▇▇▇▇

7  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

8  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[11]  Facebook has argued that it extracts Private Message content

9  for security purposes and thus its practices fall within the "ordinary course of business" exceptions

10 to Plaintiffs' claims under the ECPA and CIPA; in order to examine this assertion it is necessary to

11 fully understand the operation of Facebook's ▇▇▇ source code.  As Facebook employee Michael

12 Adkins testified, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

13 ▇▇▇▇.[12]

14     **B.**    <u>**Plaintiffs' Configuration Table Request is Confined to The Scope of the Issues As Defined in This Court's Orders and the Second Amended Complaint.**</u>

15

16       Plaintiffs seek only the production of those configuration tables that relate to Plaintiffs'

17 claims as described by the Court in the Class Certification Order and as articulated in the SAC, and

18 thus the discovery satisfies the proportionality requirements of Fed. R. Civ. P. 26(b)(1).  As the

19 Court noted, Plaintiffs allege that Facebook intercepts Private Message content for uses not related

20 to message delivery through the creation of EntShare objects.[13]  Plaintiffs also allege that Facebook

21 intercepts Private Message content through logging that then passes that content on to systems that

---

[9] Golbeck Decl., ¶¶ 19-23.

[10] *See, e.g.,* Dkt. 130, at 4 (granting Plaintiffs' motion to compel all "Objects" and "Associations" generated from Private Messages, noting "Plaintiffs generally define 'Objects and Associations' as 'metadata structures that Facebook generates to catalog its users' online activity.'").

[11] Golbeck Decl., ¶¶ 24-25.

[12] Ex. 10 (Adkins Dep.), at 92:14-18 ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇").

[13] Dkt. 192, (Cert. Order), at 4 ("Plaintiffs then specifically describe the three ways in which the message data is allegedly redirected and used.  The first is to 'fuel its algorithms for measuring user engagement and making recommendations.'  This alleged use is related to the 'EntShare' and the 'EntGlobalShare' described above…").

either 1) provide recommendations to users, or 2) share information about URLs in Private Message with third parties.[14]  Plaintiffs' request is confined to these areas of inquiry.

Plaintiffs seek only those configuration tables that relate to 1) the creation or use of EntShares and EntGlobalShares, 2) Facebook's use of Private Message content to provide recommendations, 3) Facebook's sharing of Private Message URL content with third parties, and 4) Facebook's affirmative defenses.  The specific configuration tables Plaintiffs have identified thus far fall within these constraints as follows:

███████████████████████████████████████: Plaintiffs seek the configuration data for the ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[15]  As described in the class certification briefing, Plaintiffs allege that Facebook logged Private Message content in a table referred to as ████████ and Facebook has identified this table as residing in Facebook's ██████ database.[16]  Plaintiffs' expert also identified the same functionality being performed by a source code function referred to as ██████████████ which Facebook subsequently admitted writes data to Facebook's ██████ database.[17]  As Plaintiffs' expert further explained, and as Facebook admitted, Private Message URL data logged into the ███████████ table was used by Facebook to inform recommendations.[18]  Dr. Golbeck also specifically noted that because Facebook's source code production was incomplete, she could not discern what table ████████████████ was depositing Private Message information into.[19]  The Court noted that the parties' ongoing factual disputes over the nature and extent of the ██████

---

[14] Dkt. 192, at 3-4 ("[P]laintiffs allege two other interceptions/uses: (1) Facebook scans users' messages, and when a URL is included, it uses that data to generate recommendations for other users, and (2) Facebook scans the messages, and when a URL is included, it shares that data with third parties so that they can generate targeted recommendations." (footnotes omitted))
[15] Golbeck Decl., ¶ 18.
[16] Dkt. 184-11 (Jan. 14, 2016 Himel Decl.), ¶ 44 ("For a period of time, prior to the Class Period, Facebook logged data regarding share objects in a table, ████████████ in its ████ database, a data warehouse.")
[17] Dkt. 184-21 (Feb. 26, 2016 Himel Decl.), at ¶ 7; Dkt. 181-18 (Fechete Decl., Ex. VV) (referring to ████████████ as a ████████████).
[18] Dkt. 184-11 (Jan. 14, 2016 Himel Decl.), ¶ 44 ("The [████████████] table was used for, among other things, Facebook's Recommendations social plugin . . .").
[19] Dkt. 184-17 (Golbeck Rebuttal Report), ¶ 34.

1   and ▆▆▆▆ logging is related to Plaintiffs' allegations that "Facebook scans users'
2   messages, and when a URL is included, it uses that data to generate recommendations for other
3   users."[20]
4       Additionally, Facebook's witnesses identified the ▆▆▆▆
5   ▆▆▆▆
6   ▆▆▆.[21]  This Court observed that Plaintiffs allege that Facebook "'redirects' the content of
7   private messages to interested third parties through its Insights' product."[22]
8       ▆▆▆▆: EntShare and EntGlobalShare objects, and their associated uses within
9   Facebook's system, are central to Plaintiffs' claims.  Configuration tables contained in the
10  ▆▆▆▆
11  ▆▆, which is required to understand EntShare and EntGlobalShare objects and how those objects,
12  which are central to the Court's class certification ruling and to Plaintiffs' allegations in the SAC,[23]
13  are used within Facebook's systems.[24]
14      ▆▆▆▆: Facebook has argued that its interception of Private Message content is
15  related to the functioning of its security systems, and thus part of the "ordinary course of
16  business."[25]  The ▆▆▆▆
17  ▆▆▆▆ make of Private Message content.[26]
18      In addition to these three categories of configuration tables, Plaintiffs respectfully request

---

[20] Dkt. 192 (Cert. Order), at 4, n.3 ("The parties are still disputing the details of this alleged practice, Facebook filing an "errata" on May 11, 2016 to clarify and withdraw some of the assertions made during briefing [i.e., related to the ▆▆▆▆ table] . . . For purposes of this motion, the court finds that plaintiffs have adequately shown that Facebook intercepts users' message data in order to generate recommendations, even as the parties continue to dispute the specifics of those alleged interceptions.")
[21] Ex. 7 (Himel Dep.), at 336:17-22 ▆▆▆▆
▆▆▆▆ ; *see also* SAC, ¶ 47.
[22] Dkt. 192, at 5; SAC, ¶ 47 (same).
[23] *See* Dkt. 192, at 4 (discussing the role of EntShares and EntGlobalShares in Plaintiffs' allegations); SAC, ¶¶ 44-55 (alleging Facebook's creation and used of EntShares and EntGlobalShares to stockpile and use intercepted Private Message content).
[24] Golbeck Decl., ¶¶ 19-23.
[25] *See, e.g.*, Dkt. 35 (Reply ISO Mot. to Dismiss), at 6.
[26] Golbeck Decl., ¶¶ 24-25.

1  that the Court order Facebook to produce any further configuration tables that relate to Plaintiffs'
2  claims as described in the Class Certification Order and the SAC, to the extent the above three
3  categories do not capture all such tables.

4        **C.**      **Facebook's Has Relied On Configuration Table Data For Its Defenses Yet Refused to Produce that Data.**
5

6        Facebook's position regarding the relevance of these configuration tables is duplicitous. On
7  the one hand, Facebook has claimed the configuration tables are irrelevant and highly confidential
8  and thus need not be produced. Yet, on the other hand, Facebook simultaneously offered testimony
9  in support of its class certification opposition to establish that key aspects of Facebook's Private
10 Message functionality are determined by the configuration tables it failed to produce.
11 Compounding this error, Facebook also, at the eleventh hour, belatedly produced a small sliver of
12 configuration data contained in the configuration tables, which it apparently believed supports its
13 defenses.

14       Facebook offered a declaration of its Engineering Director, Alex Himel, in opposition to
15 class certification which states that the ▮▮▮▮▮▮▮ table that logged Private Message content,
16 which Facebook admits it used to provide recommended links, was deleted in 2011—a statement
17 which Facebook subsequently admitted was false.[27] At his deposition, Mr. ▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[28] This testimony alone would have rendered
21 the ▮▮ configuration data indisputably relevant.

22       However, while the parties were in the midst of a dispute regarding the filing of a joint letter
23 brief seeking the production of Facebook's configuration tables, (*see* Dkt. 186), Facebook produced
24 a small sliver of this configuration data—which demonstrated that *Mr. Himel's testimony on this*
25 *key point was false* (see Dkt. 185; 187). This incident demonstrates precisely why the production of
26 the configuration tables is necessary; there is simply no further legitimate dispute that the

---

27 [27] Dkt. 184-11 (Jan. 14, 2016 Himel Decl.), ¶ 44; Dkt. 186.
28 [28] Ex. 5 (Himel Dep.), at 203:7-23.

1  configuration data is relevant and must be produced *in its entirety*. Facebook's continued refusal to
2  do so constitutes discovery misconduct.

3  Likewise, while Mr. Himel's declaration in opposition to class certification asserted, without
4  citation to any evidence, that Facebook's ▮▮▮▮ log only ▮▮▮▮ Private Message content, at
5  his deposition he was forced to admit that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮[29] (Facebook's failure to volunteer the foundation for Mr. Himel's statement in his declaration
7  reveals its deliberate efforts to conceal the central role of the configuration tables). As with the
8  ▮▮▮ configuration table, Facebook subsequently produced a small sliver of configuration data
9  related to ▮▮▮▮ logs. As with Facebook's eleventh-hour production of a sliver of configuration
10 data related to ▮▮▮▮▮▮ Facebook's production of a small sliver of configuration data related
11 to ▮▮▮▮ which Facebook apparently believes supports it contentions, only underscores the
12 necessity of production of the *complete* configuration table from which this data was drawn—
13 Facebook cannot selectively produce only the data it believes it is helpful to its case, while
14 withholding the rest of the relevant dataset from which it was drawn.

15 Similarly, Facebook has highlighted the importance of the ▮▮▮▮ configuration tables in
16 its assertion that Plaintiffs' expert has failed to show any link between ▮▮▮▮▮▮▮▮ which
17 logs Private Message content, and the ▮▮▮▮▮▮ table" which Facebook uses to provide
18 "Recommendations" of internet content to users.[30] The information that would link those two
19 functionalities likely resides in the ▮▮▮ and ▮▮▮ configuration data that Facebook refuses to
20 produce.

21 Plaintiffs anticipate Facebook will argue that it need only produce this small, cherry-picked
22 sliver of configuration data that it believes is helpful to its arguments.[31] However, as Facebook's
23 "Errata" demonstrates, neither Facebook nor its employees can be relied on to provide an accurate

---

[29] Ex. 5 (Himel Dep.), at 205:18-208:15.

[30] Dkt. 184-21, ¶¶ 7-9; Dkt. 184-13 (Jan. 15, 2016 Fechete Decl.), ¶¶ 13-14, 18, 26.

[31] Moreover, as noted in Plaintiffs' Objections to Facebook's Errata, even this data does not appear to be a document kept in the ordinary course of business, and appears to reflect Facebook's lawyer's editing to address a contested issue presently before the Court. *See* Dkt. 187, at 1 (metadata associated with document purporting to demonstrate deletion of ▮▮▮▮▮▮ table indicates document was created on May 10, 2016).

1 representation of Facebook's internal data and systems; the direct evidence of the functioning of
2 those systems—in this case, the configuration tables, along with the relevant source code for the
3 entire class period—must be produced.[32]

### D. Facebook's Justifications For Refusing To Produce the Configuration Tables Are Unavailing.

Facebook has articulated internally inconsistent, factually incorrect, and improper justifications for refusing to produce the configuration tables. First, while Facebook has repeatedly stated that it simply does not understand what Plaintiffs mean by "configuration tables," it simultaneously confidently asserts that the data it recently produced was *not* taken from a "configuration table." *See* Dkt. 191. This statement, bereft of any explanation or factual backing, is incorrect (Facebook produced configuration data taken from a table, and produced it in table form, albeit in the form of a single entry within that table),[33] and is indicative of the internally inconsistent nature of Facebook's posturing on this issue.

Second, Facebook has objected that its *databases* themselves, opposed to the *configuration tables* within them, are too large to produce. This is simply a red herring; Plaintiffs do not seek production of the databases, or the primary data in the databases, but rather the *configuration* data related to those databases. Facebook has never articulated why that configuration data would be too burdensome to produce, and in fact this objection appears to have not been made in good faith; as part of the meet and confer process, in response to Facebook's asserted concerns about burden, Plaintiffs requested that Facebook provide a list of the names of each table in the databases as well as the size of each configuration table, to assist Plaintiffs in narrowing the requests to only those that do not contain user data. Facebook refused to do so on the grounds that the names of these tables are "proprietary," but, even if true, this is completely irrelevant in light of the stringent

---

[32] As just one example of the ways in which an incomplete production of this data will not provide the Court or Plaintiffs with the full scope of Facebook's interception and use of Private Message content, while Facebook has purported to produce one entry of configuration data that shows that the ▇▇▇▇▇▇▇ table was deleted, subsequent configuration data may show that the ▇▇▇▇▇▇▇ table, or another table with an identical function, was later created. Without access to the full configuration data, Plaintiffs and the Court have only Facebook's witness testimony to rely on, which has shown to be demonstrably false on these issues.

[33] *See also* Golbeck Decl., ¶¶ 5-16.

1 protective order in this case.  Facebook's refusal to take even this minimal step towards reducing
2 any alleged burden demonstrates its burden argument is simply pretextual.  Moreover, given that
3 Plaintiffs seek *only* the configuration data—as opposed to the underlying user data—related to the
4 specific conduct at issue, this request is proportional to the needs of the case pursuant to Rule
5 26(b)(1) and, as established in Dr. Golbeck's declaration, the information contained in these tables
6 is necessary to understand the functioning of the relevant systems and, therefore pursuant to Rule
7 26(b)(2), the requested tables are neither cumulative nor duplicative of other discovery, nor can the
8 configuration data be obtained from some other source.

9     Third, while Facebook at first took the position that the configuration tables are entirely
10 irrelevant, it later conceded that at least some configuration tables should be produced so long as
11 Plaintiffs identified specific lines of source code showing a call made to the data from the source
12 code.  Facebook's suggestion turns the purpose of discovery on its head—Plaintiffs require these
13 configuration tables to understand the function of Facebook's source code.  It is Facebook, not
14 Plaintiffs, that is in a position to identify which configuration tables are relevant to the
15 functionalities at issue under the Court's class certification ruling and as articulated in the SAC.
16 Requiring Plaintiffs to identify every potentially relevant configuration table through examination
17 of the source code is equivalent to requiring that Plaintiffs identify every relevant document in
18 Facebook's possession before it produces them.[34]  This demand is not consistent with the precepts
19 of Rule 26(b)(1) and (2), which provide for discovery proportional to the needs of the case, not
20 obtainable from other sources, and not unduly burdensome—consistent with Plaintiffs' requests

21 **III.   CONCLUSION**
22     For the foregoing reasons, Plaintiffs respectfully request the Court order Facebook to
23 produce all configuration tables for all databases that contain data derived from Private Message
24 URL content including, but not limited to, the three categories of configuration tables specified
25 above, to be produced as a text file dump within two weeks of the entry of an Order on this motion.

---

[34] Moreover, what Facebook demands is likely an impossible task, as it well knows.  In prior discovery briefing, Facebook's own declarant explained that it "would be exceedingly burdensome to review the source code in its entirety to develop a list of all possible uses" of Objects created from Private Message content.  Dkt. 140-1 (Oct. 6, 2015 Harrison Decl.), ¶¶ 6-7.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: August 2, 2016 | By: <u>   */s/ Michael W. Sobol*   </u><br>        Michael W. Sobol |
| 3 | | Michael W. Sobol (State Bar No. 194857) |
| | | msobol@lchb.com |
| 4 | | David T. Rudolph (State Bar No. 233457) |
| | | drudolph@lchb.com |
| 5 | | Melissa Gardner (State Bar No. 289096) |
| | | mgardner@lchb.com |
| 6 | | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| | | 275 Battery Street, 29th Floor |
| 7 | | San Francisco, CA  94111-3339 |
| | | Telephone:  415.956.1000 |
| 8 | | Facsimile:  415.956.1008 |
| 9 | | Rachel Geman |
| | | rgeman@lchb.com |
| 10 | | Nicholas Diamand |
| | | ndiamand@lchb.com |
| 11 | | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| | | 250 Hudson Street, 8th Floor |
| 12 | | New York, NY  10013-1413 |
| | | Telephone:  212.355.9500 |
| 13 | | Facsimile:  212.355.9592 |
| 14 | | Hank Bates (State Bar No. 167688) |
| | | hbates@cbplaw.com |
| 15 | | Allen Carney |
| | | acarney@cbplaw.com |
| 16 | | David Slade |
| | | dslade@cbplaw.com |
| 17 | | CARNEY BATES & PULLIAM, PLLC |
| | | 2800 Cantrell Road, Suite 510 |
| 18 | | Little Rock, AR 72202 |
| | | Telephone:  501.312.8500 |
| 19 | | Facsimile:  501.312.8505 |
| 20 | | *Attorneys for Plaintiffs and the Class* |