# EXHIBIT F

## REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   Michael W. Sobol (State Bar No. 194857)
    msobol@lchb.com
2   David T. Rudolph (State Bar No. 233457)
    drudolph@lchb.com
3   Melissa Gardner (State Bar No. 289096)
    mgardner@lchb.com
4   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
5   San Francisco, CA  94111-3339
    Telephone:  415.956.1000
6   Facsimile:  415.956.1008

7   Hank Bates (State Bar No. 167688)
    hbates@cbplaw.com
8   Allen Carney
    acarney@cbplaw.com
9   David Slade
    dslade@cbplaw.com
10  CARNEY BATES & PULLIAM, PLLC
    2800 Cantrell Road, Suite 510
11  Little Rock, AR 72202
    Telephone:  501.312.8500
12  Facsimile:  501.312.8505

13  *Attorneys for Plaintiffs and the Class*

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16

| 17 | MATTHEW CAMPBELL and MICHAEL HURLEY, on behalf of themselves and all others similarly situated, | Case No.  C 13-05996 PJH (SK) |
|----|----|----|
| 18 | | **PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| 19 | Plaintiffs, | Date:     Telephonic Hearing to be set by Court |
| 20 | v. | Time:     To Be Set by Court |
| 21 | FACEBOOK, INC., | Judge:    Hon. Phyllis J. Hamilton |
| 22 | Defendant. | Place:    Courtroom 3, 3rd Floor |

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to this Court's Order dated June 30, 2016 (Dkt. 203), the undersigned Plaintiffs will and hereby do move the Court for an order granting Plaintiffs' Motion to Compel Further Document Searches by Defendant, Facebook, Inc.  This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of David T. Rudolph filed herewith; the argument of counsel, if requested; and such other matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

Whether, consistent with the requirements of Federal Rule of Civil Procedure 26(b), Defendant Facebook, Inc. should be compelled to produce documents identified through further document searches using Plaintiffs' proposed search terms and custodians reflected in Appendix A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     **INTRODUCTION**

Pursuant to this Court's Order (Dkt. 203), Plaintiffs respectfully request the Court to compel Facebook to search for and produce documents using search terms, methodologies, and custodians that are appropriately and proportionally calibrated, pursuant to Fed. R. Civ. P. 26(b), to the scope of Plaintiffs' claims as articulated in the Court's Class Certification Order ("Cert. Order") and the Second Amended Complaint.[1]  While the parties have, through meet-and-confer efforts, substantially narrowed their areas of disagreement post-certification, significant disputes remain.

The deficiencies addressed in this brief involve three, interrelated issues: **First,** Facebook's current document production is woefully inadequate because Facebook collected documents through keyword searches that not only omitted highly-relevant terms (which Plaintiffs later identified through discovery) but also *substituted critical keywords with generalized terminology that Facebook acknowledges is not used internally.*[2]  Thus, large swaths of relevant discovery were purposefully ignored.  **Second,** and compounding the above error by relying on its objections as to scope (the validity of which this Court consistently has rejected, and which, in any event, are now inarguably invalid in light of the Cert. Order), Facebook trained its "predictive coding" software to categorize as irrelevant documents unrelated to "increasing the Like count" (Facebook's definition of the "challenged practice")—thus excluding relevant documents from further review and production.  **Third,** Facebook remains unwilling to conduct searches from the files of relevant custodians.

Plaintiffs immediately objected to Facebook's improper use of predictive coding and

---

[1] The documents sought by this motion are responsive to Plaintiffs' Requests for Production 4-11 and 18-20, which seek technical documents related to the claims at issue.  The Requests, and Facebook's responses thereto, are attached as Exhibits 3 and 4, respectively, to the Declaration of David Rudolph ("Rudolph Decl."), filed herewith.  Unless otherwise stated, all exhibits are to the Rudolph Declaration.

[2] As discussed in greater detail below, a prime example is Facebook's exclusion of the terms "EntShare" and "EntGlobalShare" from any of its searches, instead using the terms "share object" and "global share object."  This omission is inexcusable given the fact that EntShares and EntGlobalShares lie at the heart of each of Plaintiffs' claims, and is further inexplicable given the fact that Facebook's seminal declarant and witness, Alex Himel, has acknowledged that "share object" and "global share object" ███████████████████████████████████████████.  *See* footnote 6, *infra*.

1  objected to Facebook's inadequate keywords immediately upon determining that Facebook's

2  searches clearly had not implemented the terminology most relevant to this case.  Plaintiffs

3  promptly requested that Facebook supplement its production with documents located by searches

4  using appropriate keywords.  Facebook initially refused to produce any further documents, but

5  eventually agreed to a clearly inadequate token search using a subset of the relevant terms on only

6  *three* out of the more than *forty* custodians Facebook has identified thus far.

7      After repeatedly meeting-and-conferring on these topics, Plaintiffs have significantly

8  narrowed their requests to terms—including keyword proximity searches limiting those terms—

9  that correctly reflect the scope of Plaintiffs' claims as articulated in the Second Amended

10  Complaint and the Cert. Order, and which also address Facebook's concerns regarding burden

11  and proportionality, and thus satisfy Fed. R. Civ. P. 26(b).  The parties' respective positions on

12  the appropriate search terms, as well as the appropriate temporal scope of discovery, is attached to

13  this brief as Appendix A.  While the parties have reached general agreement on many topics,

14  substantial disputes remain, particularly with respect to time period for which documents should

15  be searched.  Given Facebook's recent admissions both shortly prior to and shortly after Plaintiffs

16  amended their Complaint, Facebook's representations about what may or may not have ceased

17  cannot be taken at face value. Plaintiffs respectfully request, pursuant to this Court's Order (Dkt.

18  203), that the Court order Facebook to conduct further document searches consistent with

19  Plaintiffs' proposed search terms, for the full class period.

20  **II.    ARGUMENT**

21      **A.    Facebook's Initial Insufficient Document Production Efforts**

22      At the start of discovery, Facebook indicated it would search for documents containing

23  various terms identified by Facebook from its first round of interrogatory responses.  These terms

24  largely consisted of non-technical phrases relating to Facebook's "Like" counter, such as "like

25  button count," "share object," "share button" or "URL" in proximity to terms such as

26  "messenger" or ▮▮▮▮[3]  Unbeknownst to Plaintiffs, however, these terms did not reflect the

27  *actual* terminology employed internally by Facebook engineers with respect to the practices at

28  [3] Ex. 11 (Letter dated May 13, 2015 from Facebook's counsel to Plaintiffs' counsel).

PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
CASE NO. 13-CV-05996-PJH (SK))

1  issue, and omitted many key components of Facebook's architecture that are employed in

2  scanning, cataloging, and using Private Message content.  Moreover, *after* Facebook indicated it

3  would collect and review documents based on these search terms, it revealed that, rather than

4  manually review the documents for relevance, it would employ computer-aided "predictive

5  coding" to *further* narrow the documents related to these narrow search terms for subsequent

6  manual review.  Plaintiffs objected to Facebook's implementation of predictive coding, pointing

7  out that predictive coding is designed to be used *in lieu of*—as opposed to *in addition* to—

8  keyword searches.  Facebook's process of keyword culling is discouraged and recognized by

9  courts and predictive coding experts as a flawed methodology that is likely to filter out a

10  significant portion of responsive documents.[4]  As such, Facebook's document production efforts

11  were flawed from their inception, not only by improper search terms, but also by a coding and

12  review process that improperly narrowed those documents even further.

13      Compounding this problem, in implementing its predictive coding, Facebook unilaterally

14  imposed an improperly restrictive definition of relevance that this Court has already rejected

15  multiple times,[5] and which is inarguably untenable in light of the Cert. Order.  Just as Facebook

16  failed to include search terms related to the myriad functionalities and uses described below,

17  Facebook also omitted those functionalities and uses when it was training the software to learn

18  the characteristics of relevant documents.  In short, since Facebook's predictive coding software

19  was never trained that the appropriate concepts were relevant, it could not identify as relevant

20  documents related to these concepts.  Facebook's refusal to implement an appropriate standard

21  for relevance has thus guaranteed that relevant documents were withheld from production and

22  still need to be produced.

23

---

24  [4] *See Tinto v. Vale*, No. 14-3042, 2015 WL 4367250, at *1 (S.D.N.Y. July 15, 2015) ("[P]re-
culling [using keywords] should not occur in a perfect world."); *Progressive Cas. Ins. Co. v.*

25  *Delaney*, No. 11-678, 2014 WL 3563467, at *11-12 (D. Nev. July 18, 2014) (where parties had
stipulated to a keyword then manual review protocol, the court would not allow Progressive to

26  use predictive coding only on the positive keyword hits).

27  [5] *See, e.g.*, Dkt. 83 (June 3, 2015 Order), at 7 (rejecting Facebook's argument that challenging
"any 'interception' of messages containing URLs for any purpose" demonstrated a shift in
position from allegations in Plaintiffs' CAC); Dkt. 130 (October 14, 2015 Order), at 8 (same)

28  (citing CAC at ¶ 86); *Id.* at 13 (citing CAC at ¶¶ 30, 49-51).

### B.     Facebook's Inadequate Keywords

Facebook proposed grossly inadequate search terms early on in the case, before producing documents that revealed Facebook's internal terminology.  For example, in light of the Cert. Order, it is indisputable that two technical terms at the core of this litigation are "EntShare" and "EntGlobalShare" (the data structures Facebook creates from scanning URLs within messages to, *inter alia*, increment Like counters).[6]  Remarkably, in its search terms, Facebook used the term "share object" and "global share object," respectively, *in lieu* of "EntShare" and "EntGlobalShare."  However, Facebook's █████████████████████████████ █.  Alex Himel—an engineering director whom Facebook has used to verify interrogatory responses, provide multiple declarations, and to provide 30(b)(6) testimony related to message scanning and the Like button—stated ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████[7]

Moreover, as described in detail in the Cert. Order,[8] the scope of the message scanning is broader than incrementing "Like" counters.  As further described below (and tracking the Cert. Order), discovery also has revealed the internal architecture (and relevant technical terms) utilized by Facebook to retain, analyze, and use Private Message data.[9]  Yet, Facebook deliberately chose not to use the core technical terms relevant to these functionalities and uses, and that failure must be remedied going forward.

### C.     Plaintiffs' Proposed Searches Fall Within the Constraints Imposed By the Court's Class Certification Order

Against this backdrop, the parties have negotiated further search terms.  As can be seen in

---

[6] *See* Dkt. 192 (Cert. Order), at 4.
[7] Ex. 5 (Himel Dep.), at 154:19-155:7.
[8] Dkt. 192, at 4-6.
[9] *See also* Dkt. 196 (Second Amended Complaint, "SAC"), ¶¶ 45-55.

Appendix A, the parties are largely in agreement as to the proper terms to be used in further

keyword searches.  As described in detail in the Cert. Order and the SAC, the scope of the

message scanning is significantly broader than incrementing "Like" counters (the focus of

Facebook's previous document collection efforts), and includes (a) logging Private Message

content for future use;[10] (b) using Private Message content to push recommendations to its users[11]

and targeting users based on Likes and other data points;[12] and (c) providing demographics data

and other analytics related to users and their Private Message content.[13]

The primary areas of disagreement are (1) what terms should be included in the proximity

terms further limiting those searches, (2) the proper time period for the searches, and (3) the

proper custodians. Plaintiffs' search proposal has been carefully crafted as a reasonable

compromise to address Facebook's proportionality concerns, and it is neither appropriate nor

reasonable to limit Plaintiffs' proposed searches any further.  Plaintiffs' search terms are focused

on highly technical terms directly related to the source code devices Facebook uses to intercept

Private Message content as well as the internal systems that use that content, as described in the

Cert. Order and in the SAC, and accordingly these requests satisfy the proportionality and other

requirements of Rule 26(b)(1) and (b)(2):

**Creation of EntShares and EntGlobalShares:**  The terms "EntShare" and

"EntGlobalShare" are at the center of Plaintiffs' claims.  As the Court noted, Plaintiffs allege that

Facebook intercepts Private Message content for uses not related to message delivery through the

creation and manipulation of EntShare and EntGlobalShare objects.[14]  Facebook appears to

concede the centrality of these terms, given that it has agreed to search for these terms for the

[10] Relevant terms include: EntShare, EntGlobalShare, Link_stats / █████████████
███████████ .

[11] Relevant terms include: ████████████████████████████████████████
████████████ (which is a critical term in multiple contexts).

[12] Relevant terms include: ████████████████████████ .

[13] Relevant terms include: Insights, Insights Dashboard, █████████████████, Graph API,
███████████████████████████████████████████████████, and
████████████ .

[14] Dkt. 192, at 4 ("Plaintiffs then specifically describe the three ways in which the message data is
allegedly redirected and used. The first is to 'fuel its algorithms for measuring user engagement
and making recommendations.' This alleged use is related to the 'EntShare' and the
'EntGlobalShare' described above…").

1   entire class period (albeit with improperly restrictive proximity searches).

2        **Logging of Data Created From Private Message Content:**  Once it scanned its users'

3   Private Message content, Facebook logged that data in several places on its system for additional,

4   subsequent use.  This is directly relevant to Plaintiffs' allegations regarding how Facebook

5   utilized message content.[15]  These logging tables include or relate to ███████████████████[16]

6   the ████████ table, and the ██████████████ log.  The ████████ table has fueled, *inter*

7   *alia*, APIs that are made "publicly [available] in order to allow for the development of products

8   and features that incorporate engagement statistics—products that take into account what people

9   are interacting with now."[17]  Similarly, the ████████ table and ██████████████ log

10  stored data related to Private Message content[18] that has been used by Facebook in at least several

11  instances unrelated to message transmission, including fueling recommendations,[19] displaying

12  users' actions in an "Activity Feed,"[20] and fueling queries to a product called the ████████

13  ████[21]  Each of the above-described components of Facebook's system are, by Facebook's own

14  admission, areas where data created from Private Message content are logged for further use.

15       **Use of Private Message Content for Recommendations:**  Facebook used information

16  acquired from intercepted message content to make recommendations to its users.  Plaintiffs'

17  expert, Dr. Jennifer Golbeck, identified (1) ██████████████████ (2)

18  ██████████████████ and (3) ██████ as portions of the Facebook platform that took

19  data from Private Messages, *inter alia*, to assess the popularity of the URLs contained therein,

20  identify trends among users, and push content across the social network.[22]

21       **Analytics of Private Message Content:**  Facebook exposed Private Message content—

22  including the URLs privately shared by users—in both internal and external analytics, thus

23  _____

24  [15] *See* SAC ¶¶ 3, 28, 39, 45-55.
    [16] *See* FB000008505.

25  [17] Dkt. 149-2 (Jan. 15 Decl. of Alex Himel), at ¶ 66.
    [18] *See* FB000003093, FB000003096.

26  [19] Dkt. 184-3 (Fechete Decl.), ¶¶ 13-14, 18, 26; Dkt. 199-2 (Golbeck Report), ¶¶ 44-54.
    [20] FB000002843.

27  [21] FB000007859.

28  [22] *See* Dkt. 199-2 (Golbeck Report), ¶¶ 56-64.

1    enabling Facebook and third parties to view demographic data about the subjects and senders of

2    the Private Messages.  However, Plaintiffs received only a handful of documents referencing

3    these areas of Facebook's platform: ██████████████████████ and "Graph

4    API";[23] ████████████████████████████████████ and

5    ████████████[24]

6    ████████████████████████████: Facebook experimented with ad

7    targeting based on Private Message content, ████████████████████

8    ████████████[25]  The document also states that Facebook ████████████████

9    ████████████████████████████████  Similarly,

10   Facebook had an ████████████████████████████████████

11   ████████████████████ and discussed a ████████ and ████████

12   to increase Likes among users.[26]  Plaintiffs have received no further documents related to these

13   practices, which directly relate to Plaintiffs' allegations regarding Facebook's improper

14   interception and use of Private Message content.[27]

### 1.   Facebook's Proposed Proximity Searches Are Unduly Restrictive and Inappropriate

17       The proximity searches and time limitations Facebook insists on using are inappropriate

18   and appear specifically designed to avoid locating relevant documents going to the core of

19   Plaintiffs' claims.  This is particularly so in light of the fact that the search and proximity terms

20   that Plaintiffs proposed are highly technical terms related to the implementation of Facebook's

21   source code devices for intercepting and using URLs sent in Private Messages, and are thus

22   tailored to provide proportional discovery pursuant to Rule 26(b)(1) related to Plaintiffs' claims.

23       As Plaintiffs have explained to Facebook during the meet-and-confer process, Facebook

24   produced numerous relevant documents containing Plaintiffs' proposed terms that do not contain

---

[23] FB000008505.
[24] FB000002462.
[25] Ex. 12 (FB000008271), at FB000008273.
[26] FB000014365.
[27] SAC, ¶¶ 3, 28, 39 (alleging Facebook uses Private Message content for targeted advertising).

the term "message," and it is not appropriate to limit the searches to only documents that contain

variants on that term.   All of Facebook's proposed search terms are cabined to proximity

searches of within 50 words of (message* or messenger or ▇▇▇ or inbox*) AND within 50

words of (EntShare* or EntGlobalShare* or ▇▇▇▇ or ▇▇▇▇▇), and in some cases

adding additional terms.  There is no reasonable basis for such a restriction, and in fact this

restriction appears designed to avoid the production of otherwise relevant documents.  This is

demonstrated by the fact that many relevant documents already produced do not contain

"message," "messenger," or ▇▇▇ anywhere, much less within 50 words of any other relevant

term.[28]  Additionally, the unduly restrictive nature of such a limitation is made apparent by

several highly relevant documents, in which the only use of the term "message" is in the context

of the "begin forwarded message" formatting from the custodian's email client; but for the fact

that the email had been forwarded, such documents would not be produced under Facebook's

proposed search schema.[29]  While the parties appear to have large areas of agreement regarding

the terms to be used for proximity searches,[30] Facebook's insistence on limiting its searches to

*only* those within 50 words of (message* or messenger or ▇▇▇ or inbox*) is demonstrably

---

[28] *See, e.g.*, FB000007859 (discussing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); FB000004051 (discussing, inter alia, EntShare, EntGlobalShare, and ▇▇); FB000001052 (discussing storing likes and shares ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); FB000000659 (discussing objects, like counts, Insights, ▇▇▇▇▇▇▇▇▇▇▇▇▇, and ▇▇); FB000001206 (discussing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and Graph API); and FB000008821 (providing an overview of Facebook's targeted advertising).

[29] *See, e.g.*, FB000008505 (discussing Insights, ▇▇▇, Graph API, ▇▇▇, how ▇▇▇▇▇▇▇ logging and displaying data related to likes and shares, and database tables tracking likes and shares); FB000002655 (discussing Open Graph API and ▇▇▇▇▇▇▇▇▇▇▇▇▇).

[30] Two notable areas of disagreement are the terms ▇▇▇▇▇ and "bootcamp," which Plaintiffs propose to include but Facebook does not agree to.  As explained in Plaintiffs' concurrently-filed motion to compel configuration tables, ▇▇▇▇▇ is the database from which Facebook's "Insights" product, which shared metrics about Private Message content with third parties, drew data.  "Bootcamp" appears to be Facebook's internal training program and was the process through which Facebook introduced its systems to new employees, and therefore documents containing relevant terms and the term "bootcamp" will likely provide explanatory context for those terms.  *See, e.g.* FB000003118 (April 25, 2012 internal email stating ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ■ FB000002130 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).

1    inappropriate.  Given that the parties have agreed in many respects on the scope of terms and

2    proximity searches, Plaintiffs' proposals do not add significant burden or expense to the searches

3    Facebook has already proposed, pursuant to Fed. R Civ. P. 26(b)(1).

4              **2.      The Searches Should Be Conducted For the Entire Class Period**

5              With one exception, Facebook seeks to cabin its proposed searches to short subsets of the

6    class period on the grounds that the identified practices have ceased.  Even if true (which

7    Plaintiffs dispute), this claim provides no basis to limit searches for documents relevant to the

8    challenged practices for less than the entire class period.

9              The searches should be performed for documents and ESI dated from the previously

10   agreed-upon start of the document production period of April 2010, up through May 18, 2016, the

11   end of the class period.[31]  Facebook's assertions that certain practices may have "ceased" as of

12   certain dates provides no basis to limit the time period for searches.  *First*, as this Court is aware,

13   subsequent discovery has demonstrated that, at least in one instance, Facebook's assertions

14   regarding when certain practices ceased were incorrect, and Plaintiffs require documents

15   regarding these practices from the full class period to test the accuracy of Facebook's assertions.[32]

16   *Second*, documents related to the specific practices identified by Plaintiffs' search terms are

17   relevant not only to determine whether and when the practices may have ceased, but also to

18   provide full disclosure of Facebook's implementation of those practices and subsequent use of the

19   contents of communications intercepted by those practices.  *Third*, as discussed in detail in

20   Plaintiffs' concurrently-filed motions to compel source code and configuration tables for the full

21   class period, Facebook's assertion that it has ceased sharing Private Message content with third

22   parties is demonstrably false: recent *post-amendment* admissions by Facebook demonstrate that it

23   continues to intercept URLs in Private Messages and allows third-parties free access to those

24   URLs—all without any disclosure to users of this Practice.[33]

---

25   [31] Ex. 2 (Email correspondence between counsel for the parties).

26   [32] *See* Dkt. 185 (Facebook's Errata) and Dkt. 187 (Plaintiffs' Objections thereto), (discussing
     Facebook's false assertion that the ███████████ containing URLs intercepted from

27   Private Messages and used to provide targeted recommendations was deleted prior to the class
     period).

28   [33] *See* Ex. 6 (*Why you shouldn't share links on Facebook*, Quartz (June 8, 2016)).

1

**3.      The Searches Should Be Conducted on the Full Range of Appropriate Custodians**

2

3       Additionally, Facebook has still provided no firm commitment regarding the custodians it

4  is willing to search.  Facebook has stated it is "willing to consider" producing documents from

5  "some" of the non-individual custodial sources, such as its document repositories ███ and ███.

6  Given that Facebook has already produced numerous documents from each of these custodians

7  that contain the search terms proposed in Appendix, there should be no ambiguity regarding

8  Facebook's responsibility to search those custodians.  Facebook has resisted searching documents

9  from the non-individual custodial sources on the grounds that "those sources do not have search

10  capabilities that will allow for the types of searches we are considering for emails, and they also

11  are not amenable to efficient collection processes."[34]  However, this is not consistent with

12  Facebook's own employees' testimony about its document systems; ███████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ████████████████████████████████████[35]  Facebook has

16  already produced numerous relevant documents from internal system sources and presents no

17  reason why it cannot perform further searches on those sources given the narrow and proportional

18  scope of the requested discovery.[36]

19  **III.    CONCLUSION**

20       For the foregoing reasons, Plaintiffs respectfully request that the Court order Facebook to

21  produced documents identified through searches consistent with Plaintiffs' proposed search terms

22  and custodians reflected in Appendix A.

23

24  ────────────────────

[34] Ex. 2 (June 28, 2016 email from Facebook's counsel).

25  [35] Ex. 5 (Himel Dep.), at 255-14-256:12 ████████████████████████

████████████████████████ .

26  [36] Additionally, Plaintiffs request all documents containing the term "EntShare" from any
Facebook wiki sites or other portions of Facebook devoted to or containing reference material on

27  Facebook's operation (*e.g.*, ███), including those located on web pages with URLs beginning
with the following designations: █████████████████████████████████

28  ███████████   ████████████████████████████

1    Dated:  August 2, 2016              By:    /s/ Michael W. Sobol
                                                Michael W. Sobol
2
3                                        Michael W. Sobol (State Bar No. 194857)
                                         msobol@lchb.com
                                         David T. Rudolph (State Bar No. 233457)
4                                        drudolph@lchb.com
                                         Melissa Gardner (State Bar No. 289096)
5                                        mgardner@lchb.com
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
6                                        275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3339
7                                        Telephone:  415.956.1000
                                         Facsimile:  415.956.1008
8
9                                        Rachel Geman
                                         rgeman@lchb.com
10                                       Nicholas Diamand
                                         ndiamand@lchb.com
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
11                                       250 Hudson Street, 8th Floor
                                         New York, NY  10013-1413
12                                       Telephone:  212.355.9500
                                         Facsimile:  212.355.9592
13
14                                       Hank Bates (State Bar No. 167688)
                                         hbates@cbplaw.com
15                                       Allen Carney
                                         acarney@cbplaw.com
16                                       David Slade
                                         dslade@cbplaw.com
17                                       CARNEY BATES & PULLIAM, PLLC
                                         2800 Cantrell Road, Suite 510
18                                       Little Rock, AR 72202
                                         Telephone:  501.312.8500
19                                       Facsimile:  501.312.8505

20                                       *Attorneys for Plaintiffs and the Class*

21

22

23

24

25

26

27

28

**APPENDIX A**

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|---|---|---|---|
| Graph API | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ * or ███ * or bootcamp*" | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or ███ * or ~~bootcamp *~~))" **and ending December 31, 2012** |
| ███ or | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ * or ███ * or bootcamp*" | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or ███ * or ~~bootcamp *~~))" **and ending December 31, 2012** |
| ███ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ * or ███ * or like* or share* or bootcamp*" | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or ███ * or ((like* or share*) w/2 URL) ~~or bootcamp *~~)" |
| ███ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ * or ███ * or Insights* or ███ * or ███ * or bootcamp*" | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or ███ * or Insights* ~~or~~ ███ * or ███ *, ~~or bootcamp *~~)" **and ending December 31, 2012** |
| ███ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 |

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|---|---|---|---|
| ███ *))" | | EntGlobalShare* or ███ * or ███ * or ███ * or ███ * or shortage* of like* or share* or activity feed* or bootcamp* or Gmail* or Google*" | (EntShare* or EntGlobalShare* or ███ * or ███ * or ███ * or (shortage w/5 (like* or share*)) or activity feed* ~~or bootcamp * or Gmail* or Google*~~)" |
| ████ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ * or ███ * or ███ * or API* or ███ * or Counter* or Demographic* or analytic* or ███ * or ███ * or ███ * or Domain Insights* or ███ or ███ * or graph* or bootcamp *"' | Limited by "w/50 (message* or messenger* or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or ███ * ~~or~~ ███ * or ███ or API* ~~or~~ ███ * or Counter* or Demographic* or analytic* ~~or~~ ███ * or ███ * or ███ * or Domain Insights* or ███ * or ███ * or graph*)" **and ending December 31, 2012** |
| ██████ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ * or bootcamp * or ███ * or API* or ███ * or Counter* or Demographic* or analytic* or ███ * or SharePro* or ███ * or Domain Insights* or ███ or ███ * or graph*"' | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or ███ * ~~or~~ bootcamp * or ███ * or ███ s* ~~or~~ API* ~~or~~ ███ * or Counter* or Demographic* or analytic* ~~or~~ ███ * or ███ * or ███ * or |

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|---|---|---|---|
|  |  |  | Domain Insights* or ███ * or ███ * or graph*)" and ending December 31, 2012 |
| ███ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" and ending July 9, 2014, when the backup system was discontinued | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ * or ███ * or bootcamp * or ███ * or ███ * or ███ *)" | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or ███ * or bootcamp * or ███ * or ███ * or ███ *)" and ending July 9, 2014, when the backup system was discontinued |
| ███ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" and ending July 9, 2014, when the backup system was discontinued | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ or ███ * or bootcamp * or ███ * or ███ * or ███ * or API*" | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or tracking_info or bootcamp * or ███ * or ███ * or ███ or ███ * or API*)" and ending July 9, 2014, when the backup system was discontinued |
| ███ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███ *))" | Limited by "w/50 message* or messenger* or ███ * or inbox* or EntShare* or EntGlobalShare* or ███ * or bootcamp * or share* or ███ * or ███ * or target* or recommend* or Insights* or API*" | Limited by "w/50 (message* or messenger or ███ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███ * or bootcamp * or share* or ███ * or ███ * or target* or recommend* or Insights* or API*)" |
| EntGlobalShare | Yes, limited by "w/50 (URL | Limited by "w/50 message* or messenger* | Limited by "w/50 (message* or |

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|------|-------------------------------|----------------------------------------------------------|-----------------------------|
| | w/50 (message* or messenger* or ▮▮*))" | or ▮▮* or inbox* or API* or Insights* or ▮▮▮▮▮▮* or ▮▮▮ or Targeting* or ▮▮▮▮▮* or graph* or ▮▮▮▮* or ▮▮▮* or ▮▮▮▮▮* or ▮▮* or ▮▮▮* or ▮▮* or ▮▮▮▮▮* or URL* or ▮▮* or ▮▮▮* or bootcamp*"

Additionally, Plaintiffs request all documents containing the term "EntGlobalShare" from any Facebook wiki sites or other portions of Facebook's internal repositories devoted to or containing reference material on Facebook's operation (*e.g.*, ▮▮▮). For instance – and only for illustrative purposes – Plaintiffs would seek all documents including the term "EntGlobalShares" that were located on web pages with URLs beginning with the following designations:

▮▮▮▮▮▮▮
▮▮▮▮▮
▮▮▮▮▮▮ | messenger or ▮▮▮▮ or inbox*) AND w/50 (API* or Insights* or ▮▮* or Targeting* or ▮▮▮* or ~~graph~~ or ▮▮* or ▮▮* or ▮▮* or ▮▮▮* or ▮▮▮* or ▮▮* or ▮▮* or URL* ~~or~~ ▮▮* ~~or~~ ▮* or bootcamp *)"

We will need to have a separate discussion about searching non-individual custodians. |
| EntShare | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ▮▮*))" | Limited by "w/50 message* or messenger* or ▮▮ or inbox* or API* or Insights* or ▮▮▮▮* or ▮▮▮ or Targeting* or | Limited by "w/50 (message* or messenger or ▮▮▮▮* or inbox*) AND w/50 (API* or Insights* or ▮▮* or |

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|---|---|---|---|
| | | ██████ * or graph* or ██ or ██████████ * or ██ or ████████████ * or ██████████ * or or s██████ or ████ ██ * or URL* or bootcamp*"██████ * or ██ Additionally, Plaintiffs request all documents containing the term "EntShare" from any Facebook wiki sites or other portions of Facebook devoted to or containing reference material on Facebook's operation (*e.g.*, ████). For instance – and only for illustrative purposes – Plaintiffs would seek all documents including the term "EntShares" that were located on web pages with URLs beginning with the following designations: ████████ ██████ ██████████ | * ~~or~~ Targeting* or ████████ ~~or~~ graph* or ████ * or ██████ or ████ * or ████████ ██ * or ██████████ or * or ██ * or URL* ~~or~~ ██ * or ~~██~~ * or bootcamp *)' We will need to have a separate discussion about searching non-individual custodians. |
| Insights Dashboard | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ██ *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or ██ * or inbox* or EntShare* or EntGlobalShare* or ████ * or ████ * or bootcamp* or ██ or ██ * or or API* or ████ * or or Counter* or | Limited by "w/50 (message* or messenger or ██ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ████ * or ~~bootcamp~~ * ~~or~~ or ██ * or ~~or~~ |

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|---|---|---|---|
| | | Demographic* or analytic* or ███* or ███* or ███* or ███* or ███* or Domain Insights* or or ███* or graph* or bootcamp *'' | API* or ███* or Counter* or Demographic* or analytic* or ███* or ███* or ███* or ███* or Domain Insights* or ███* or ███* or graph* or bootcamp)" and ending December 31, 2012 |
| ███ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███*)" and ending December 31, 2012 | Limited by "w/50 message* or messenger* or ███* or inbox* or EntShare* or EntGlobalShare* or ███* or ███* or ███* or ███* or API* or Counter* or Demographic* or analytic* or ███* or ███* or ███* or ███* or Domain Insights* or or ███* or graph* or bootcamp *'' | Limited by "w/50 (message* or messenger or ███* or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ███* or ███* or ███* or ███* or API* or Counter* or Demographic* or analytic* or ███* or ███* or ███* or ███* or Domain Insights* or ███* or bootcamp *)" and ending December 31, 2012 |
| ███ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ███*))" and ending December 31, 2012 | Limited by "w/50 message* or messenger* or ███* or inbox* or EntShare* or EntGlobalShare* or ███* or ███* or bootcamp * or ███* or API* or ███* or Counter* or Demographic* or analytic* or ███* or ███* or | Limited by "w/50 (message* or messenger or ███* or inbox) AND w/50 (EntShare* or EntGlobalShare* or ███* or tracking_info* or bootcamp* or ███* or ███* or API* or ███* or Counter* or Demographic* or analytic* or |

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|---|---|---|---|
| | | ██ * or * or Domain Insights* or ██ * or ██ * or graph* or bootcamp *'' | *̶ or * or *̶ ̶o̶r̶ ̶D̶o̶m̶a̶i̶n̶ ̶I̶n̶s̶i̶g̶h̶t̶s̶*̶ ̶o̶r̶ *̶ ̶o̶r̶ *̶ ̶o̶r̶ ̶g̶r̶a̶p̶h̶*̶ ̶o̶r̶ ̶b̶o̶o̶t̶c̶a̶m̶p̶ ̶*̶)̶'' **and ending December 31, 2012** |
| ██████ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ██ *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or ██ * or inbox* or EntShare* or EntGlobalShare* or ██ * or * or * or ██ * or API* or * or Counter* or Demographic* or analytic* or ██ * or * or * or * or Domain Insights* or ██ * or ██ * or graph* or bootcamp *'' | Limited by "w/50 (message* or messenger or ██ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or * or * or * or *̶ ̶o̶r̶ API*̶ ̶o̶r̶ * or Counter* or Demographic* or analytic* or *̶ or ██ r̶* *̶ ̶o̶r̶ *̶ ̶o̶r̶ ̶D̶o̶m̶a̶i̶n̶ ̶I̶n̶s̶i̶g̶h̶t̶s̶*̶ ̶o̶r̶ *̶ ̶o̶r̶ *̶ ̶o̶r̶ ̶g̶r̶a̶p̶h̶*̶ ̶o̶r̶ ̶b̶o̶o̶t̶c̶a̶m̶p̶ ̶*̶)̶'' **and ending December 31, 2012** |
| ██████ | Yes, limited by "w/50 (URL w/50 (message* or messenger* or ██ *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or ██ * or inbox* or EntShare* or EntGlobalShare* or ██ * or * or * or ██ * or API* or * or Counter* or Demographic* or analytic* or ██ * or * or * or * or Domain Insights* or ██ * or ██ * or graph* | Limited by "w/50 (message* or messenger or ██ * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or * or * or ██ * or *̶ ̶o̶r̶ API*̶ ̶o̶r̶ * or Counter* or Demographic* or analytic* o̶r̶ *̶ or *̶ ̶o̶r̶ *̶ ̶o̶r̶ |

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|------|--------------------------------|-----------------------------------------------------------|------------------------------|
| | | or bootcamp*'' | ~~Domain Insights* or [█] * or [█] * or graph* or bootcamp *)"~~ **and ending December 31, 2012** |
| Insights | Yes, limited by "w/50 (URL w/50 (message* or messenger* or [█] *))" **and ending December 31, 2012** | Limited by "w/50 message* or messenger* or [█] * or inbox* or EntShare* or EntGlobalShare* or [█] * or [█] or bootcamp * or [█] * or [█] or API* or [█] * or Counter* or Demographic* or analytic* or [█] * or [█] * or [█] * or Domain Insights* or [█] * or [█] * or graph*'' | Change primary term to "Domain Insights" and Limited by "w/50 (message* or messenger or [█] * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or [█] * or ~~bootcamp* or~~ [█] * ~~or~~ ~~API* or~~ [█] * or Counter* or Demographic* or analytic* ~~or~~ [█] * or [█] * ~~or~~ [█] * or ~~Domain Insights* or~~ [█] * or [█] * or graph*)" **and ending December 31, 2012** |
| [█] | Yes, limited by "w/50 (URL w/50 (message* or messenger* or [█] *))" **and ending July 9, 2014, when the backup system was discontinued** | Limited by "w/50 message* or messenger* or [█] * or inbox* or EntShare* or EntGlobalShare* or [█] * or [█] * or bootcamp * or recommend* or [█] * or [█] * or [█] or [█] * or stats* or URL*" | Limited by "w/50 (message* or messenger or [█] * or inbox*) AND w/50 (EntShare* or EntGlobalShare* or [█] * or ~~bootcamp* or recommend~~* or [█] or [█] * or [█] * or URL*)" **and ending July 9, 2014, when the backup system was discontinued** |

| Term | Facebook's Proposal to Include | Plaintiffs' Counter-Proposal of Additional Limiting Terms | Facebook's Counter-Proposal |
|------|-------------------------------|-----------------------------------------------------------|------------------------------|
| ███████ | Not Included | Limited by "w/50 message* or messenger* or ████* or inbox* or EntShare* or EntGlobalShare* or ████* or bootcamp * or ████* or ████* or recommend* or ████* or ██████* or URL*" | Limited by "w/50 (message* or messenger or ████* or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ████* or ████* or bootcamp* or scribe* or ████* or recommend* or ██████ or ████* or URL*)" and ending February 1, 2012 |
| ████████ | Not Included | Limited by "w/50 message* or messenger* or ████* or inbox* or EntShare* or EntGlobalShare* or ████* or bootcamp * or ████* or ████* or recommend* or ██████* or ████* or URL*" | Limited by "w/50 (message* or messenger or ████* or inbox*) AND w/50 (EntShare* or EntGlobalShare* or ████* or bootcamp* or ████* or or recommend* or ██████* or ████* or URL*)" |

**Proposed Custodians:**

1. Matt Jones
2. Scott Renfro
3. Malorie Lucich
4. Mike Vernal
5. Mark Kinsey
6. Austin Haugen
7. Frederic Wolens
8. Caryn Marooney
9. Alex Himel
10. Ray He
11. Dan Fechete
12. Facebook Temp
13. Facebook Email
14. SalesForce
15. Facebook
16. Help Center Internal
17. Facebook Internal
18. Dev Site
19. Wiki
20. Mathew Varghese
21. Tasks