Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
David T. Rudolph (State Bar No. 233457)
drudolph@lchb.com
Melissa Gardner (State Bar No. 289096)
mgardner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman
rgeman@lchb.com
Nicholas Diamand
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Hank Bates (State Bar No. 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th Street
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW CAMPBELL, MICHAEL HURLEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No.  4:13-cv-05996-PJH <br><br> **PLAINTIFFS' NOTICE OF MOTION; MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:  April 12, 2017 <br> Time:  9:00 a.m <br> Judge:  Hon. Phyllis J. Hamilton <br> Place:  Courtroom 3, 3rd Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 12, 2017, at 9:00 a.m., in the Courtroom of the Honorable Phyllis J. Hamilton, United States District Judge for the Northern District of California, Courtroom 3, 1301 Clay Street, Oakland, California, 94612, Plaintiffs Matthew Campbell and Michael Hurley will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

A.  Granting preliminary approval of the proposed Class Action Settlement Agreement ("Settlement") entered into between the parties;[1]

B.  Certifying the Settlement Class as defined in the Settlement;

C.  Appointing Class Representatives Matthew Campbell and Michael Hurley as Settlement Class Representatives of the proposed Settlement Class, extending the class period for the injunctive-relief class previously certified by the Court;

D.  Appointing current class counsel Lieff Cabraser Heimann & Bernstein, LLP and Carney Bates & Pulliam, PLLC for the proposed Settlement Class;

E.  Staying all non-Settlement related proceedings in the above-captioned case (the "Action") pending final approval of the Settlement; and

F.  Setting a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the Settlement, including all exhibits thereto, the accompanying Joint Declaration of Class Counsel ("Joint Decl."), the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

---

[1] *See* Exhibit 1 to the Joint Declaration of Class Counsel ("Joint Declaration").

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
4:13-CV-05996-PJH

1    Dated: March 1, 2017                Respectfully submitted,

2                                        CARNEY BATES & PULLIAM, PLLC

3

4                                   By: */s/ Hank Bates*
                                        Hank Bates (State Bar No. 167688)
5                                       hbates@cbplaw.com
                                        Allen Carney
6                                       acarney@cbplaw.com
                                        David Slade
7                                       dslade@cbplaw.com
                                        519 West 7th Street
8                                       Little Rock, AR 72201
                                        Telephone:  501.312.8500
9                                       Facsimile:  501.312.8505

10                                      Michael W. Sobol
                                        msobol@lchb.com
11                                      David T. Rudolph
                                        drudolph@lchb.com
12                                      Melissa Gardner
                                        mgardner@lchb.com
13                                      LIEFF CABRASER HEIMANN
                                        & BERNSTEIN, LLP
14                                      275 Battery Street, 29th Floor
                                        San Francisco, CA  94111-3339
15                                      Telephone:  415.956.1000
                                        Facsimile:  415.956.1008
16
                                        Rachel Geman
17                                      rgeman@lchb.com
                                        Nicholas Diamand
18                                      ndiamand@lchb.com
                                        LIEFF CABRASER HEIMANN
19                                      & BERNSTEIN, LLP
                                        250 Hudson Street, 8th Floor
20                                      New York, NY  10013-1413
                                        Telephone:  212.355.9500
21                                      Facsimile:  212.355.9592

22                                      *Class Counsel*

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     OVERVIEW OF THE LITIGATION .......................................................................... 2

III.    THE PROPOSED SETTLEMENT TERMS AND SCHEDULE OF EVENTS ................ 4

        1.      Cessation of the Three URL Uses Relevant to this Class Action .............. 5

IV.     CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS
        APPROPRIATE........................................................................................................... 9

        A.      Rule 23(a) is Satisfied. ............................................................................ 9

                1.      The Settlement Class Is Too Numerous to Permit Joinder. ....................... 9

                2.      This Action Presents Common Questions of Law or Fact. ...................... 10

                3.      Class Representatives' Claims are Typical of Those of the
                        Settlement Class. ................................................................................ 10

                4.      Class Representatives and Their Counsel Will Fairly and
                        Adequately Protect the Interests of the Settlement Class Members. ........ 11

        B.      The Requirements of Rule 23(b)(2) are Satisfied. ................................. 12

        C.      Preliminary Approval of the Settlement is Appropriate. ....................... 13

                1.      The Settlement Falls Within the Range of Possible Approval ................. 13

                2.      The Settlement is the Product of Arm's-Length Negotiations After a
                        Thorough Investigation, Without a Trace of Collusion ........................... 15

                3.      The Recommendation of Experienced Counsel Favors Approval. ........... 17

V.      CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Armstrong v. Davis,*
  275 F.3d 849 (9th Cir. 2001)...................................................................................... 10

*Arnott v. U.S. Citizenship & Immigration Servs.,*
  290 F.R.D. 579 (C.D. Cal. Oct. 22, 2012) ................................................................... 9

*Bee, Denning, Inc. v. Capital Alliance Group,*
  No. 13-cv-02654-BAS, 2016 WL 3952153 (S.D. Cal. 2016)...................................... 8

*Churchill Village, L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004)...................................................................................... 13

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992).............................................................................. 13, 15

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980).................................................................................. 16

*Hanlon v. Chrysler Corp,*
  150 F.3d 1011 (9th Cir. 1998).......................................................................... 10, 11, 13

*Hart v. Colvin,*
  No. 15-cv-00623-JST, 2016 WL 6611002 (N.D. Cal. 2016)....................................... 8

*Hendricks v. Starkist Co,*
  No. 13-cv-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ...................... 14

*In re Heritage Bond Litig.,*
  No. 02-ML-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................... 16

*In re Juniper Networks Sec. Litig.,*
  264 F.R.D. 584 (N.D. Cal. 2009)................................................................................ 10

*In re Yahoo Mail Litig.,*
  308 F.R.D. 577 (N.D. Cal. 2015)......................................................................... 10, 12

*In re Yahoo Mail Litig.,*
  No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016)............... 8, 15

*Jordan v. Cnty. of Los Angeles,*
  669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)................. 9, 10

*Kim v. Space Pencil, Inc.,*
  No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. 2012) ........................................ 8

*Kline v. Dymatize Enterprises, LLC,*
  No. 15-cv-2348-AJB-RBB, 2016 WL 6026330 (S.D. Cal. 2016)............................... 8

*Knight v. Red Door Salons, Inc.,*
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................. 17

*Lilly v. Jamba Juice Co.,*
  No. 13-cv-02998-JST, 2015 U.S. WL 1248027 (N.D. Cal. Mar. 18, 2015)................ 8

*Linney v. Cellular Alaska Partnership,*
  No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997)........................... 17

*Lyon v. United States Immigration and Customs Enf't,*
  300 F.R.D. 628 (N.D. Cal. 2014)................................................................................ 8

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3   *Newman v. Stein*,
        464 F.2d 689 (2d Cir. 1972)............................................................... 15

4   *Pilkington v. Cardinal Health, Inc.*,
5       516 F.3d 1095 (9th Cir. 2008)........................................................... 13

    *Rodriguez v. West Publishing Corp.*,
6       563 F.3d 963 (9th Cir. 2009).............................................................. 14

7   *Staton v. Boeing Co.*,
        327 F.3d 938 (9th Cir. 2003).............................................................. 11

8   *Sueoka v. U.S.*,
        101 F. App'x 649 (9th Cir. 2004) ...................................................... 10

9   *Wal-Mart Stores, Inc. v. Dukes*,
10      131 S. Ct. 2541 (2011)................................................................... 8, 10

**RULES**

11

    Fed. R. Civ. P.
12      23(a)(1).............................................................................................. 9
        23(a)(3)............................................................................................ 10
13      23(a)(4)............................................................................................ 11
        23(b)(2)...................................................................................... 12, 15
14      23(e)(2)............................................................................................ 13

**TREATISES**

15

16  Alba Conte et al., *Newberg on Class Actions*
        § 3.10 (3rd ed. 1992)......................................................................... 10

17  Alba Conte et al., *Newberg on Class Actions*
        § 11.41 (4th ed. 2002) ...................................................................... 15

18  Alba Conte et al., *Newberg on Class Actions*
        § 11.25 (4th ed. 2002) ...................................................................... 13

19  *Manual for Complex Litigation (Fourth)* (2004)
        § 21.632............................................................................................ 13

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs and Class Representatives Mathew Campbell and Michael Hurley respectfully submit for the Court's preliminary approval a proposed Class Action Settlement Agreement ("Settlement") resolving the above-captioned action (the "Action"), which alleges that Defendant Facebook, Inc. ("Facebook") intercepted the content of private Facebook messages, without consent, in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA") and Cal. Penal Code §§ 630, *et seq.* ("CIPA").

Pursuant to the terms of the Settlement, Facebook has agreed to substantial changes that bring Facebook's message processing practices in compliance with Class Counsel's view of ECPA and CIPA's requirements.  Specifically, pursuant to the terms of the Settlement, Facebook has confirmed that the alleged unlawful conduct challenged in the operative Second Amended Complaint has ceased—namely, Facebook confirms that it no longer utilizes data from URLs within private messages to (1) generate recommendations to its users; (2) share user data with third parties or (3) increase "like" counter numbers on third party websites.  In addition, Facebook has confirmed, as of the date of the Settlement, that it is not using any data from EntShares created from URL attachments sent by users in Facebook Messages in any public counters in the "link_stats" and Graph APIs.  In addition, during the course of this litigation, Facebook made changes to its operative disclosures to its users, stating that it collects the "content and other information" that people provide when they "message or communicate with others,"—thereby further explaining the ways in which Facebook may use that content.  Facebook has also agreed to display additional educational language on its United States website for Help Center materials concerning its processing of URLs shared within messages.

Pursuant to the Settlement, absent Settlement Class Members would release claims for declaratory, injunctive, and non-monetary equitable relief only; claims for monetary damages are specifically excluded from the proposed Settlement Class Members' Released Claims. Attorneys' fees and costs and service awards to the Class Representatives that may be awarded by the Court will be paid by Facebook.  The Settlement addresses each of the challenged practices

that the Court certified for class treatment, achieves the goals of the litigation as articulated in the operative Second Amended Complaint, protects the interests of any Settlement Class Members that may not be remedied through injunctive relief, and falls well within the "range of reasonableness" applicable at the preliminary approval stage.

The Settlement is the product of extensive arm's-length negotiations between the parties and their experienced and informed counsel.  Settlement negotiations spanned over six months and included multiple mediation sessions before highly respected and skilled mediators Cathy Yanni and Randall Wulff.  Prior to reaching a resolution, and through three years of hard-fought litigation, Class Counsel thoroughly examined both the facts and rapidly-developing law involved in this case, reviewed and analyzed tens of thousands of documents produced by Facebook, spent hundreds of hours reviewing detailed technical documentation, deposed more than a dozen witnesses and achieved certification of a class for injunctive relief.  Class Counsel possess a firm understanding of both the strengths and weaknesses of Class Representatives' allegations and Facebook's potential defenses.  Both prior to and during the negotiations, Class Counsel faced formidable opposition from Facebook's counsel who zealously defended their client's position.  Both sides were well-represented by seasoned and informed counsel who vigorously pursued their respective clients' interests.

In sum, the Settlement achieves significant business practice changes, and benefits the Settlement Class now, without the inherent risks of continued litigation and without requiring Class Members to release any claims they may have for monetary relief.  The Settlement was only reached after months of discovery and arm's-length negotiations and enjoys the support of a neutral mediator who had an integral part in the settlement negotiations.  Consequently, the Settlement satisfies the criteria for preliminary approval.

## II.  OVERVIEW OF THE LITIGATION

On December 30, 2013, Plaintiffs Matthew Campbell and Michael Hurley filed a class action complaint in the United States District Court for the Northern District of California asserting claims under the Electronic Communications Privacy Act ("ECPA"; 18 U.S.C. §§ 2510 *et seq*.); the California Invasion of Privacy Act ("CIPA"; Cal. Penal Code §§ 630, *et seq*.); and

California's Unfair Competition Law ("UCL"; California Business and Professions Code §§ 17200, *et seq.*), alleging, *inter alia*, that Facebook "read[] its users' personal, private Facebook messages without their consent" for "purposes including but not limited to data mining and user profiling," and "generating 'Likes' for web pages" and "targeted advertising," on behalf of themselves and a proposed class of "[a]ll natural person Facebook users located within the United States who have sent or received private messages where such message included URLs in the content, from within two years before the filing of this action up through and including the date of the judgment in this case" (Dkt. 1).

On January 21, 2014, David Shadpour filed another complaint in the United States District Court for the Northern District of California alleging similar facts and asserting similar claims under ECPA, CIPA and the UCL against Facebook (*see Shadpour v. Facebook, Inc*., Case No. 5:14-cv-00307-PSG (N.D. Cal.), Dkt. 1).

On April 15, 2014, the Court granted Plaintiffs' Motion to Consolidate the Related Actions (Dkt. 24), thereby consolidating the *Campbell* and *Shadpour* actions, and on April 25, 2014, the Class Representatives filed a Consolidated Amended Complaint asserting ECPA, CIPA, and UCL claims on behalf of themselves and a proposed class of "[a]ll natural-person Facebook users located within the United States who have sent or received private messages that included URLs in their content, from within two years before the filing of this action up through and including the date when Facebook ceased its practice" (Dkt. 25).[2]

On December 23, 2014, the Court issued an order granting in part and denying in part Facebook's motion to dismiss the Consolidated Amended Complaint, dismissing the claims under CIPA § 632 and the UCL, but denying the motion to dismiss claims under ECPA and CIPA § 631 (Dkt. 43).

The parties engaged in almost two years of extensive discovery, including the production of tens of thousands of pages of documents, fact and expert depositions of 18 witnesses (spanning 19 days of testimony), informal conferences and discussions, hundreds of hours reviewing

---

[2] On October 2, 2015 David Shadpour voluntarily dismissed his claims, with prejudice, pursuant to Federal Rule of Civil Procedure 41(a) (Dkt. 123).

1   detailed technical documentation, substantial discovery motion practice and the exchange of

2   hundreds of pages of written discovery requests and responses. A mediation between the parties

3   before Cathy Yanni of JAMS on August 19, 2015 was unsuccessful.

4            On May 18, 2016, the Court issued an order granting in part and denying in part Plaintiffs'

5   Motion for Class Certification, denying certification as to the proposed damages class under

6   Federal Rule of Civil Procedure 23(b)(3), but granting certification of the injunctive-relief class

7   under Federal Rule of Civil Procedure 23(b)(2). Specifically, the Court certified for class

8   treatment three specific alleged uses by Facebook of URLs included in private messages:

9   (1) Facebook's cataloging URLs shared in private messages and counting them as a "like" on the

10  relevant third-party website, (2) Facebook's use of data regarding URLs shared in private

11  messages to generate recommendations for Facebook users, and (3) Facebook's sharing of data

12  regarding URLs in messages (and attendant demographic data about the messages' participants)

13  with third parties.  (Dkt. 192, at 3-5). In addition, the Court directed the Plaintiffs to file a Second

14  Amended Complaint "(1) revising the class definition to reflect the definition set forth in the class

15  certification motion, and (2) adding allegations regarding the sharing of data with third parties"

16  (*Id.* at 6).  On June 7, 2016, the Class Representatives filed a revised, Second Amended

17  Complaint as ordered (Dkt. 196).

18           Following the class certification ruling, the parties engaged in additional discovery and

19  then agreed to further mediate their dispute; first in a second and third session before Cathy Yanni

20  on July 21, 2016, and July 28, 2016, and then in a fourth session with Randall Wulff on

21  December 7, 2016. In a Joint Status Report filed on December 23, 2016, the parties informed the

22  Court that they had reached a settlement-in-principle to resolve the Action.  (Dkt. 222).

23  Thereafter, the parties memorialized the settlement in the Settlement Agreement executed on

24  March 1, 2017 and filed herewith as Exhibit 1 to the Joint Declaration of Michael W. Sobol and

25  Hank Bates ("Joint Declaration").

26  **III.    THE PROPOSED SETTLEMENT TERMS AND SCHEDULE OF EVENTS**

27           The Settlement achieves and memorializes significant changes to Facebook's practices

28  related to the use of URLs in private messages that address each of the three challenged practices

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
4:13-CV-05996-PJH

certified for class treatment by the Court and detailed in the operative Second Amended Complaint, bringing Facebook's practices related to the use of URLs in private messages within compliance, in Class Counsel's view, of both ECPA and CIPA.  Specifically, in consideration for the dismissal of the Action with prejudice and the releases provided in the Settlement Agreement, Facebook has agreed to the following:

## 1. Cessation of the Three URL Uses Relevant to this Class Action

In the Settlement Agreement, Facebook confirms that the following uses of data from EntShares created from URLs sent in Facebook Messages during the Class Period have ceased, as of the dates set forth below specific to each use:

- **"Like" Count Increment.**  From the beginning of the Class Period until on or about December 19, 2012, Facebook source code was engineered so that when an anonymous, aggregate count was displayed next to a "Like" button on a third-party web page, that count often included, *inter alia*, the number of times a URL related to that particular website had been shared by Facebook users in Facebook Messages and resulted in creation of an EntShare.  On or about December 19, 2012, Facebook changed its source code such that the external count no longer included the number of shares, by users, of URLs in private messages that resulted in creation of EntShares. Settlement Agreement ¶ 40(a)(i).

- **Sharing of URL Data with Third Parties.**  Facebook makes its "Insights" user interface and related API available to owners of third-party websites that choose to include Facebook tools or features, for purposes of providing anonymous, aggregate data about interaction with and traffic to their websites.  During certain periods of time during the Class Period, this information included anonymous, aggregate statistics and demographic information about users who shared links to those sites across the Facebook platform.  From the beginning of the Class Period until on or about October 11, 2012, these statistics and demographic information included information about users who shared URLs in Facebook Messages that resulted in creation of EntShares.  On or about October 11, 2012, Facebook

changed its source code such that it ceased including information about URL shares in Facebook Messages that resulted in creation of EntShares (and attendant statistics and demographic information) within Insights and its related API. Settlement Agreement ¶ 40(a)(ii).

- **Use of URL Data to Generate Recommendations.** Facebook's Recommendations Feed was a social plugin offered to developers that displayed a list of URLs representing the most recommended webpages on that developer's site. Over time, two different units of Facebook source code determined the list of URLs that would appear in the Recommendations Feed for a given webpage at a given time. One of those units of Facebook source code was the "PHP backend." Although, during the Class Period, the PHP backend was not the primary system determining the list of URLs that would appear in the Recommendations Feed, the PHP backend served as a backup system if the primary system failed. The PHP backend considered, *inter alia*, an anonymous, aggregate count of, *inter alia*, the number of times a URL had been shared in a Facebook Message and resulted in creation of an EntShare. On or about July 9, 2014, Facebook changed its code such that it ceased utilizing the PHP backend as the backup system for its Recommendations Feed. Settlement Agreement ¶ 40(a)(iii).

- **Use of EntShares created from URLs in Messages.** In addition, Facebook confirms that, as of the date of execution of the Settlement Agreement, it is not using any data from EntShares created from URL attachments sent by users in Facebook Messages for: 1) targeted advertising; 2) sharing personally identifying user information with third parties; 3) use in any public counters in the "link_stats" and Graph APIs; and 4) displaying lists of URLs representing the most recommended webpages on a particular web site. Settlement Agreement ¶ 40(b).

- **Disclosure Changes.** Facebook implemented enhanced disclosures after the filing of this Action that benefited the Class. Specific to the private message function, in January 2015, Facebook revised its Data Policy to disclose that Facebook collects

the "content and other information" that people provide when they "message or communicate with others," and to further explain the ways in which Facebook may use that content.  Settlement Agreement ¶ 40(c).  Facebook has taken the position that these changes—implemented during the course of this litigation—were significant and transparent enough to establish consent to the practices complained of in this action (or at minimum neutralize any further suggestion that Facebook users were not aware of the practices complained of in this action).

- **Additional Explanatory Language.**  Pursuant to the Settlement Agreement, Facebook will display the following additional language, without material variation, on its United States website for Help Center materials concerning messages within 30 days of the Effective Date:  "We use tools to identify and store links shared in messages, including a count of the number of times links are shared."  Facebook will make this additional language available on its United States website for a period of one year from the date it is posted, provided however that Facebook may update the disclosures to ensure accuracy with ongoing product changes.  Settlement Agreement ¶ 40(d).

In exchange for the foregoing consideration, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against Facebook by any member of the Settlement Class in this Action, with the caveat that the release provided under the Settlement Agreement extends *solely* to claims for declaratory, injunctive, and non-monetary equitable relief.  No Settlement Class Member, with the exception of the Class Representatives, will release any claim for monetary damages under CIPA or ECPA.  Settlement Agreement, ¶¶ 44-49.  In other words, the class benefits and the class release parallel the contours of the class certified by the Court.  Additionally, Facebook has agreed not to take a position on an application by Class Counsel for an award of $3,890,000 in Attorneys' Fees and Expenses (which represents a negative Lodestar multiplier), and for Service Awards in the amount of $5,000 to each of the Class Representatives.  Settlement Agreement, ¶¶ 57, 60.

Finally, pursuant to the Settlement Agreement, Facebook is obligated to serve notice of the Settlement Agreement that meets the requirements of 28 U.S.C. § 1715, on the appropriate federal and state officials no later than ten (10) days following the filing of this Settlement Agreement with the Court.  Settlement Agreement ¶ 56.  As the class claims in this Action only pertain to declaratory, injunctive, and non-monetary equitable relief and the proposed Class Settlement does not include any release of monetary claims, notice to Class Members was not required after the Court's May 18, 2016 order certifying the class pursuant to Fed. R. Civ. P. 23(b)(2) and is not required as part of the proposed Settlement.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 U.S. WL 1248027, at *9 (N.D. Cal. Mar. 18, 2015) ("[E]ven if notified of the settlement, the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members, [therefore] the Court concludes that class notice is not necessary."); *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *5 (N.D. Cal. Aug. 25, 2016) ("[B]ecause Rule 23(b)(2) provides only injunctive and declaratory relief, 'notice to the class is not required.'") (quoting in part *Lyon v. United States Immigration and Customs Enf't*, 300 F.R.D. 628, 643 (N.D. Cal. 2014)); *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 WL 6611002 at *9 (N.D. Cal. 2016); *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. 2012); *Kline v. Dymatize Enterprises, LLC*, No. 15-cv-2348-AJB-RBB, 2016 WL 6026330 at *6 (S.D. Cal. 2016); *Bee, Denning, Inc. v. Capital Alliance Group,* No. 13-cv-02654-BAS, 2016 WL 3952153 at *9 (S.D. Cal. 2016).

Consistent with the provisions of the Settlement, Plaintiffs respectfully propose the following schedule:

- Class Counsel's motions for final approval and for attorneys' fees, costs and service awards:  30 days after the Court's order of preliminary approval;
- Objection Deadline:  60 days after the Court's order of preliminary approval;
- Deadline for parties to file a response to any comments or objections by a Class Member:  74 days after the Court's order of preliminary approval;
- Final Approval Hearing:  at least 100 days after the filing of this motion for

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
4:13-CV-05996-PJH

1   preliminary approval and at least 81 days after the Court's order of preliminary

2   approval.

## IV.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

5   The parties agree that for purposes of settlement only, the class certified by the Court on

6   May 18, 2016 should be modified slightly to bring the end of the class period current to the date

7   of execution of the Settlement and to explicitly include Facebook users located in United States

8   territories.  Accordingly, for the purposes of the provisional certification, the parties propose that

9   the Settlement Class be defined as follows:

> All natural-person Facebook users located within the United States
> and its territories who have sent, or received from a Facebook user,
> private messages that included URLs in their content (and from
> which Facebook generated a URL attachment), from December 30,
> 2011 to March 1, 2017.

13  These revisions to the class definition do not materially change the analysis for class certification

14  pursuant to Rule 23(a) and Rule 23(b)(2) of a class for injunctive and declaratory relief.

15  Accordingly, as discussed below, for the same reasons the Court previously held in its May 18,

16  2016 Class Certification Order (Dkt. 192, "Class Cert. Order"), the proposed Settlement Class

17  meets the requirement of class certification set forth in Rule 23(a) and Rule 23(b)(2).

### A.   Rule 23(a) is Satisfied.

#### 1.   The Settlement Class Is Too Numerous to Permit Joinder.

20  A case may be certified as a class action only if "the class is so numerous that joinder of

21  all members is impracticable." Fed. R. Civ. P. 23(a)(1).  While there is no fixed rule, numerosity

22  is generally presumed when the potential number of class members reaches forty (40). *Jordan v.*

23  *Cnty. of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S.

24  810 (1982).  In addition, "[b]ecause plaintiffs seek injunctive and declaratory relief, the

25  numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising

26  from plaintiffs' other evidence that the number of unknown and future members of [the] proposed

27  []class ... is sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship & Immigration*

28  *Servs.*, 290 F.R.D. 579, 586 (C.D. Cal. Oct. 22, 2012) (all but last alteration in original) (quoting

1   *Sueoka v. U.S.*, 101 F. App'x 649, 653 (9th Cir. 2004)).

2          Here, numerosity is readily satisfied.  The total Facebook audience in the United States is

3   estimated to be more than 190 million.[3]  Even if only a small fraction of Facebook users

4   embedded a URL in a private message during the Class period, the numerosity requirement would

5   easily be met.  Indeed, the Court made such an inference in granting class certification for

6   purposes of litigation.  Class Cert. Order, at 13.

7                    **2.        This Action Presents Common Questions of Law or Fact.**

8          Rule 23(a)(2) requires that there be one or more questions common to the class.  *See*

9   *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); 1 Newberg § 3.10; *see also Wal-*

10  *Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2556 (2011).  Plaintiffs "need only show the

11  existence of a common question of law or fact that is significant and capable of classwide

12  resolution." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 592 (N.D. Cal. 2015) (citations omitted).

13  The Court has already held that "a single common question is sufficient" to satisfy Rule 23(a)(2),

14  and that commonality is established by "the mere fact that Facebook creates a share object every

15  time a message is sent with a URL."  Class Cert. Order at 15.

16                   **3.        Class Representatives' Claims are Typical of Those of the Settlement**

17                   **Class.**

18         Rule 23(a)(3) requires that "the claims and defenses of the representative parties are

19  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality does not

20  require total identity between representative plaintiffs and class members.  *Armstrong v. Davis*,

21  275 F.3d 849, 868 (9th Cir. 2001).  Rather, typicality is satisfied so long as the plaintiffs' claims

22  stem "from the same event, practice, or course of conduct that forms the basis of the class claims,

23  and is based upon the same legal theory."  *Jordan*, 669 F.2d at 1322; *In re Juniper Networks Sec.*

24  *Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if they are

25  reasonably co-extensive with those of absent class members") (citation omitted).

26         Here, the Class Representatives' claims stem from the same common course of conduct as

27  ────────────────

28  [3] https://www.statista.com/statistics/268136/top-15-countries-based-on-number-of-facebook-users/

1   the claims of the Class Members.  Class Representatives and the Class Members contend that

2   they did not consent to Facebook's processing of their electronic communications, which conduct

3   forms the basis for this suit.  Facebook's conduct is common to all Class Members and represents

4   a common thread of conduct resulting in injury to all Class Members.  The injunctive and

5   declaratory relief achieved by the Settlement would apply to all Class Representatives and Class

6   Members equally.  As the Court has already held, "Plaintiffs argue that they are users who have

7   sent private messages containing a URL link, and that Facebook intercepted the URL content of

8   their messages in the same manner that it did with the rest of the class's messages," and

9   accordingly, "the typicality requirement is met."  Class Cert. Order, at 16.

10   **4.      Class Representatives and Their Counsel Will Fairly and Adequately**
            **Protect the Interests of the Settlement Class Members.**

11

12        Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect

13   the interests of the class.  The two-prong test for determining adequacy is:  "(1) Do the

14   representative plaintiffs and their counsel have any conflicts of interest with other class

15   members?; and (2) will the representative plaintiffs and their counsel prosecute the action

16   vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003);

17   *Hanlon*, 150 F.3d at 1020.  Both prongs are satisfied here.

18        First, the Class Representatives' interests are aligned with, and not antagonistic to, the

19   interests of the Settlement Class Members.  Indeed, the Class Representatives and the Settlement

20   Class Members are equally interested in ensuring that Facebook's treatment of, and practices

21   regarding, the content of their private communications are conducted in compliance with ECPA

22   and CIPA.  *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each…plaintiff has the

23   same problem"). Accordingly, the Class Representatives will fairly and adequately protect the

24   interests of all Settlement Class Members.

25        Second, Class Counsel have extensive experience litigating and settling class actions,

26   including consumer cases throughout the United States.  *See* Joint Decl., ¶¶ 17-22.  Class Counsel

27   are well-qualified to represent the Settlement Class.  In addition, Class Counsel, along with the

28   Class Representatives, have vigorously litigated this action in order to protect the interests of the

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
4:13-CV-05996-PJH

1   Settlement Class and maximize the relief obtained for all Settlement Class Members, as

2   evidenced by, *inter alia*, the terms of the proposed Settlement.  *See* Joint Decl., ¶¶ 6-14, 23-27.

3       In granting class certification for purposes of litigation, the Court found "no indication

4   that either plaintiffs or their counsel has any conflict with the Class Members, nor any reason to

5   believe that they would not prosecute this action vigorously on behalf of the Class.

6   Accordingly…the adequacy requirement [is] met."  Class Cert. Order at 17.  Since the Court's

7   order granting class certification, Class Counsel have continued to vigorously litigate this action

8   and have further engaged in extensive settlement negotiations, further evidencing that

9   Rule 23(a)'s adequacy requirement remains satisfied.

10   **B.**       **The Requirements of Rule 23(b)(2) are Satisfied.**

11       In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

12   be satisfied.  Here, the proposed Settlement Class satisfies Rule 23(b)(2), which permits a class

13   action if the Court finds that "the party opposing the class has acted or refused to act on grounds

14   that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

15   is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

16       Under identical circumstances, courts in this District have held that the requirements of

17   Rule 23(b)(2) are satisfied where "all emails sent from and to [an electronic communication

18   service provider's] subscribers are subject to the same interception and scanning processes."  *In*

19   *re Yahoo Mail Litig.*, 308 F.R.D. at 598 ("*Yahoo*").  Like this Action, *Yahoo* dealt with an

20   electronic communication service provider's common policy and practice of processing electronic

21   communications in a manner that allegedly resulted in interception and the extraction of message

22   content.  *Id.*  Where, as here, the plaintiffs sought "uniform relief" addressing commonly- and

23   consistently-applied message-scanning practices, the *Yahoo* court held that the requirements of

24   Rule 23(b)(2) were satisfied.  *Id.* at 600.

25       In the instant matter, the Court has found the reasoning in *Yahoo* persuasive and adopted

26   same with regard to the facts of this case, finding that certification under Rule 23(b)(2)—for

27   injunctive and declaratory relief only—was proper.  Class Cert. Order, at 27-29 (citing *Yahoo*,

28   308 F.R.D. at 598-601).

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
4:13-CV-05996-PJH

C.       **Preliminary Approval of the Settlement is Appropriate.**

Public policy "strong[ly] … favors settlements, particularly where complex class action litigation is concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027; *see also* Fed. R. Civ. P. 23(e)(2).

The proposed Settlement here satisfies the standard for preliminary approval because: (a) it is within the range of possible approval; (b) there is no reason to doubt its fairness because it is the product of hard-fought, arm's-length negotiations between the parties and was only reached after a thorough investigation by Class Counsel of the facts and the law; and (c) Class Representatives and Class Counsel believe it is in the best interest of the Settlement Class.

1.       **The Settlement Falls Within the Range of Possible Approval**

To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness."  Alba Conte et al., *Newberg on Class Actions* § 11.25, at 11-91 (4th ed. 2002). The *Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632.  Evaluating where a proposed settlement falls within this spectrum entails focus "on substantive fairness and adequacy," and weighing "Plaintiffs' expected recovery … against the value of the settlement offer." *Hendricks v. Starkist*

1    *Co*, No. 13-cv-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015) (quotation

2    omitted).

3        Here, consistent with the Court's May 18, 2016 Order certifying an injunctive relief class,

4    Plaintiffs sought classwide declaratory, injunctive, and non-monetary equitable relief under

5    ECPA and CIPA related to three specific uses by Facebook of URLs in private messages, as

6    detailed in the operative Second Amended Complaint.  While Facebook has vigorously contested

7    its liability, the terms of the Settlement provide meaningful, targeted relief that addresses all three

8    URL uses alleged in the operative Second Amended Complaint in a manner that Class

9    Representatives contend brings Facebook's practices into compliance with Class Representatives'

10   view of both ECPA and CIPA.

11       In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued

12   litigation, trial and potential appeal is uncertain and could add years to this litigation.  Facebook

13   has vigorously denied any wrongdoing, and, absent settlement, Class Representatives anticipate

14   Facebook would defend this action aggressively at multiple, procedural steps prior to trial,

15   including a motion for summary judgment.  While Class Representatives strongly believe in the

16   merits of their case, they recognize that the law is in relative infancy in the context of ECPA's

17   application to electronic messages, and this uncertainty presents at least some element of risk at

18   multiple, critical junctures in this Action.  For instance, the parties have advanced conflicting

19   interpretations of certain elements of Class Representatives' ECPA claim, including the

20   definitions and effect of the terms "in transit" and "storage," and Class Representatives may face

21   the risk on appeal that the Ninth Circuit might agree with Facebook's interpretation of these

22   terms.

23       While Class Representatives firmly believe in the strength of their claims, and have

24   amassed substantial evidence in support of those claims through the discovery process, there is at

25   least some risk that, absent a settlement, Facebook might prevail in motion practice, at trial, or on

26   appeal, resulting in no relief to the Class.  This weighs in favor of preliminary approval. *See, e.g.,*

27   *Rodriguez v. West Publishing Corp.*, 563 F.3d 963, 966 (9th Cir. 2009) (noting that the

28   elimination of "[r]isk, expense, complexity, and likely duration of further litigation," including,

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
4:13-CV-05996-PJH

1   *inter alia*, an "anticipated motion for summary judgment, and … [i]nevitable appeals would likely

2   prolong the litigation, and any recovery by class members, for years," which facts militated in

3   favor of approval of settlement); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any

4   case there is a range of reasonableness with respect to a settlement—a range which recognizes the

5   uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily

6   inherent in taking any litigation to completion.").

7          Ultimately, Facebook has agreed to provide the injunctive relief sought on behalf of the

8   Settlement Class—namely, it has implemented and confirmed substantial changes to both its

9   business practices and to its disclosures and Help Center materials, which Class Representatives

10  contend bring Facebook's business practices into compliance with their view of ECPA and CIPA.

11  Similarly, the release obtained by Facebook only extends to Settlement Class Members' claims

12  for declaratory, injunctive, and non-monetary equitable relief.  No Settlement Class Member,

13  with the exception of the Class Representatives, will release any claim for damages. *See In re*

14  *Yahoo Mail Litig.*, No. 13-cv-04980-LHK (N.D. Cal.) (ECF No. 182) (N.D. Cal. Mar. 15, 2016)

15  (holding, under analogous circumstances, that a very similar result obtained on behalf of a class

16  of email users and certified under Rule 23(b)(2) was within the range of possible approval).

17         In sum, the Settlement provides substantial, meaningful relief to all Settlement Class

18  Members based on the strengths of their claims without delay and is within the range of possible

19  approval, particularly in light of the above risks that Settlement Class Members would face in

20  further litigation.

21                      **2.      The Settlement is the Product of Arm's-Length Negotiations After a**
                                  **Thorough Investigation, Without a Trace of Collusion**
22

23         "Before approving a class action settlement, the district court must reach a reasoned

24  judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

25  among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290.  Where a settlement is the

26  product of arm's-length negotiations conducted by capable and experienced counsel, the court

27  begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg

28  § 11.41; *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at *2 (C.D. Cal.

1   June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

2          Here, the Settlement was reached after informed, extensive arm's-length negotiations.

3   First, the Settlement was reached after a thorough investigation into and discovery of the legal

4   and factual issues in the Action.  In particular, before filing suit, Class Counsel conducted an

5   extensive investigation into the factual underpinnings of the practices challenged in the Action, as

6   well as the applicable law.  In addition to their pre-filing efforts, Class Counsel engaged in

7   extensive discovery, including the review of tens of thousands of pages of documents, fact and

8   expert depositions of 18 witnesses (spanning 19 days of testimony), a detailed review (totaling

9   hundreds of hours) of highly technical documentation relevant to the private message function,

10  substantial discovery motion practice and the exchange of hundreds of pages of written discovery

11  requests and responses.

12         Second, the Settlement was reached only after the parties participated in three in-person

13  mediation sessions before experienced mediators Randall Wulff and Cathy Yanni as well as

14  multiple telephone conferences with the mediators.  These mediation sessions were informed

15  through the exchange of confidential mediation statements, which discussed the strengths and

16  weaknesses of both Class Representatives' allegations and Facebook's potential defenses and

17  relevant documents related thereto.  Throughout the mediation sessions, counsel vigorously

18  advocated for their respective clients' positions.  Notwithstanding the contentious nature of the

19  mediation sessions, the parties were able to come to an agreement in principle with the assistance

20  of both mediators.

21         In sum, the Settlement was reached only after Class Counsel conducted an extensive

22  factual investigation and discovery into the Facebook's alleged misconduct and thoroughly

23  researched the law pertinent to Class Representatives' and Class Members' claims and

24  Facebook's defenses.  Consequently, Class Counsel had a wealth of information at their disposal

25  before entering into settlement negotiations, which allowed Class Counsel to adequately assess

26  the strengths and weaknesses of the case and to balance the benefits of settlement against the risks

27  of further litigation.  Nothing in the course of the negotiations or in the substance of the proposed

28  Settlement presents any reason to doubt the Settlement's fairness.

1

**3.**      <u>The Recommendation of Experienced Counsel Favors Approval.</u>

2

In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

3

should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, No. 08-

4

01520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska*

5

*P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997).  Here, Class

6

Counsel endorse the Settlement as fair, adequate, and reasonable.  Joint Decl., ¶¶ 23-27.

7

As demonstrated herein and in each respective firm's resume, Class Counsel have

8

extensive experience litigating and settling consumer class actions and other complex matters (see

9

Joint Decl., ¶¶ 17-22) and have conducted an extensive investigation into the factual and legal

10

issues raised in this Action (see Joint Decl., ¶¶ 6-14, 23-27).  Using their experience and

11

knowledge, Class Counsel have weighed the benefits of the Settlement against the inherent risks

12

and expense of continued litigation, and they strongly believe that the proposed Settlement is fair,

13

reasonable, and adequate.  The fact that qualified and well-informed counsel endorse the

14

Settlement as being fair, reasonable, and adequate weighs in favor of approving the Settlement.

15

**V.**      <u>CONCLUSION</u>

16

For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

17

     a.      Grant preliminary approval of the proposed Class Action Settlement Agreement ("Settlement") entered into between the parties;[4]

18

19

     b.      Certify the Settlement Class as defined in the Settlement;

20

     c.      Appoint Plaintiffs as Settlement Class Representatives of the proposed Class;

21

     d.      Appoint Lieff Cabraser Heimann & Bernstein LLP and Carney Bates & Pulliam PLLC as Class Counsel for the proposed Settlement Class;

22

     e.      Stay all non-Settlement related proceedings in the above-captioned case (the "Action") pending final approval of the Settlement; and

23

24

     f.      Set a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

25

26

27

28

---

[4] *See* Exhibit 1 to the Joint Declaration of Michael W. Sobol and Hank Bates.

- 17 -

1    Dated: March 1, 2017                    Respectfully submitted,

2                                             CARNEY BATES & PULLIAM, PLLC

3

4                                    By: */s/ Hank Bates*                        
                                          Hank Bates (State Bar No. 167688)
5                                         hbates@cbplaw.com
                                          Allen Carney
6                                         acarney@cbplaw.com
                                          David Slade
7                                         dslade@cbplaw.com
                                          519 West 7th Street
8                                         Little Rock, AR 72201
                                          Telephone:  501.312.8500
9                                         Facsimile:  501.312.8505

10                                        Michael W. Sobol (State Bar No. 194857)
                                          msobol@lchb.com
11                                        David T. Rudolph (State Bar No. 233457)
                                          drudolph@lchb.com
12                                        Melissa Gardner (State Bar No. 289096)
                                          mgardner@lchb.com
13                                        LIEFF CABRASER HEIMANN
                                          & BERNSTEIN, LLP
14                                        275 Battery Street, 29th Floor
                                          San Francisco, CA  94111-3339
15                                        Telephone:  415.956.1000
                                          Facsimile:  415.956.1008
16
                                          Rachel Geman
17                                        rgeman@lchb.com
                                          Nicholas Diamand
18                                        ndiamand@lchb.com
                                          LIEFF CABRASER HEIMANN
19                                        & BERNSTEIN, LLP
                                          250 Hudson Street, 8th Floor
20                                        New York, NY  10013-1413
                                          Telephone:  212.355.9500
21                                        Facsimile:  212.355.9592

22                                        *Class Counsel*

23

24                                       **ATTESTATION**

25            I, Michael W. Sobol, am the ECF user whose identification and password are being used

26   in this filing.  I hereby attest that Hank Bates has concurred in this filing.

27

28                                          */s/ Michael W. Sobol*                
                                          Michael W. Sobol, Esq.