1   Michael W. Sobol (State Bar No. 194857)
    msobol@lchb.com
2   David T. Rudolph (State Bar No. 233457)
    drudolph@lchb.com
3   Melissa Gardner (State Bar No. 289096)
    mgardner@lchb.com
4   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
5   San Francisco, CA  94111-3339
    Telephone:  415.956.1000
6   Facsimile:  415.956.1008

7   Rachel Geman
    rgeman@lchb.com
8   Nicholas Diamand
    ndiamand@lchb.com
9   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    250 Hudson Street, 8th Floor
10  New York, NY  10013-1413
    Telephone:  212.355.9500
11  Facsimile:  212.355.9592

12  Hank Bates (State Bar No. 167688)
    hbates@cbplaw.com
13  Allen Carney
    acarney@cbplaw.com
14  David Slade
    dslade@cbplaw.com
15  CARNEY BATES & PULLIAM, PLLC
    519 West 7th Street
16  Little Rock, AR 72201
    Telephone: 501.312.8500
17  Facsimile: 501.312.8505

18  *Attorneys for Plaintiffs and the Class*

19              **UNITED STATES DISTRICT COURT**

20            **NORTHERN DISTRICT OF CALIFORNIA**

21  MATTHEW CAMPBELL, MICHAEL          Case No.  C. 13-5996-PJH-SK
    HURLEY, on behalf of themselves and all
22  others similarly situated,          **JOINT DECLARATION OF CLASS
                                        COUNSEL IN SUPPORT OF PLAINTIFFS'**
23              Plaintiffs,             **MOTION FOR PRELIMINARY
                                        APPROVAL OF CLASS ACTION**
24  v.                                  **SETTLEMENT**

25  FACEBOOK, INC.,                     Date:    April 12, 2017
                                        Time:    9:00 a.m
26              Defendant.              Courtroom: Courtroom 3, 3rd Floor
                                        The Honorable Phyllis J. Hamilton
27

28

Michael W. Sobol and Hank Bates, under penalty of perjury, submit this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Joint Declaration"), and declare as follows:

## I.   INTRODUCTION

1.     Michael W. Sobol is a partner at Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), and Hank Bates is a partner at Carney Bates & Pulliam, PLLC ("CBP").

2.     We are counsel to Class Representatives Matthew Campbell and Michael Hurley ("Plaintiffs" or "Class Representatives") and the Settlement Class in the above-captioned case (the "Action").

3.     We submit this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and have personal knowledge of the matters set forth below based on our active participation in all aspects of the prosecution and settlement of this litigation.

4.     In sum, the Settlement requires Facebook to make meaningful business practice changes that will benefit the Settlement Class now, without the inherent risks of continued litigation and without requiring Class Members to release any claims they may have for monetary relief.  The Settlement was only reached after years of discovery and months of arm's-length negotiations and enjoys the support of a neutral mediator who had an integral part in the settlement negotiations.  Consequently, the Settlement satisfies the criteria for preliminary approval.

5.     Class Counsel believes that these technical changes are substantial and that these changes bring Facebook's email processing practices in compliance with Class Counsel's view of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, et seq. ("ECPA") and the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA").

## II.   OVERVIEW OF THE LITIGATION

6.     On December 30, 2013, Plaintiffs Matthew Campbell and Michael Hurley filed a class action complaint in the United States District Court for the Northern District of California asserting claims under the Electronic Communications Privacy Act ("ECPA"; 18 U.S.C. §§ 2510 *et seq*.); the California Invasion of Privacy Act ("CIPA"; Cal. Penal Code §§ 630, *et seq*.); and

1  California's Unfair Competition Law ("UCL"; California Business and Professions Code

2  §§ 17200, *et seq.*), alleging, *inter alia*, that Facebook "read[] its users' personal, private Facebook

3  messages without their consent" for "purposes including but not limited to data mining and user

4  profiling," and "generating 'Likes' for web pages" and "targeted advertising," on behalf of

5  themselves and a proposed class of "[a]ll natural person Facebook users located within the United

6  States who have sent or received private messages where such message included URLs in the

7  content, from within two years before the filing of this action up through and including the date of

8  the judgment in this case" (Dkt. 1).

9        7.    On January 21, 2014, plaintiff David Shadpour filed another complaint in the

10  United States District Court for the Northern District of California alleging similar facts and

11  asserting similar claims under ECPA, CIPA and the UCL against Facebook (*see Shadpour v.*

12  *Facebook, Inc.*, Case No. 5:14-cv-00307-PSG (N.D. Cal.), Dkt. 1).

13        8.    On April 15, 2014, the Court granted Plaintiffs' Motion to Consolidate the Related

14  Actions (*see* Dkt. 24), thereby consolidating the *Campbell* and *Shadpour* actions, and on April 25,

15  2014, the Class Representatives filed a Consolidated Amended Complaint asserting ECPA, CIPA,

16  and UCL claims on behalf of themselves and a proposed class of "[a]ll natural-person Facebook

17  users located within the United States who have sent or received private messages that included

18  URLs in their content, from within two years before the filing of this action up through and

19  including the date when Facebook ceased its practice" (*see* Dkt. 25).

20        9.    On December 23, 2014, the Court issued an order granting in part and denying in

21  part Facebook's motion to dismiss the Consolidated Amended Complaint, dismissing the claims

22  under CIPA § 632 and the UCL, but denying the motion to dismiss claims under ECPA and CIPA

23  § 631 (*see* Dkt. 43).

24        10.    The Parties engaged in almost two years of extensive discovery, including the

25  production of tens of thousands of pages of documents, fact and expert depositions of 18

26  witnesses (spanning 19 days of testimony), informal conferences and discussions, hundreds of

27  hours reviewing detailed technical documentation, substantial discovery motion practice and the

28

exchange of hundreds of pages of written discovery requests and responses. A mediation between the parties before Cathy Yanni of JAMS on August 19, 2015 was unsuccessful.

11.     On October 2, 2015 David Shadpour voluntarily dismissed his claims, with prejudice, pursuant to Federal Rule of Civil Procedure 41(a), (Dkt. 123).

12.     On May 18, 2016, the Court issued an order granting in part and denying in part Plaintiffs' Motion for Class Certification, denying certification as to the proposed damages class under Federal Rule of Civil Procedure 23(b)(3), but granting certification of the injunctive-relief class under Federal Rule of Civil Procedure 23(b)(2).  Specifically, the Court certified for class treatment three specific alleged uses by Facebook of URL's included in private messages: (1) Facebook's cataloging URL's shared in private messages and counting them as a "like" on the relevant third-party website, (2) Facebook's use of data regarding URLs shared in private messages to generate recommendations for Facebook users, and (3) Facebook's sharing of data regarding URLs in messages (and attendant demographic data about the messages' participants) with third parties (Dkt. 192 at 3-5).

13.     In addition, the Court directed the Class Representatives to file a Second Amended Complaint "(1) revising the class definition to reflect the definition set forth in the class certification motion, and (2) adding allegations regarding the sharing of data with third parties" (Dkt. 192 at 6).  On June 7, 2016, the Class Representatives filed a revised, Second Amended Complaint as ordered (*see* Dkt. 196).

14.     Following the class certification ruling, the parties engaged in additional discovery and then agreed to further mediate their dispute; first in a second and third session before Cathy Yanni on July 21, 2016 and July 28, 2016, and then in a fourth session with Randall Wulff on December 7, 2016.  In a Joint Status Report filed on December 23, 2016, the parties informed the Court that they had reached a settlement-in-principle in the Action.  (Dkt. 222).  Thereafter, the parties memorialized the settlement in the Settlement Agreement executed on March 1, 2017 and filed herewith as **Exhibit 1**.

1

## III.   THE SETTLEMENT TERMS

2
3
    15.    In consideration for the dismissal of the Action with prejudice and the releases

provided in this Settlement Agreement, Facebook agrees to the following:

4
5
6
7
        a.    Cessation of the Three URL Uses Relevant to this Class Action:  In the

Settlement Agreement, Facebook confirms that the following uses of data from EntShares created

from URLs sent in Facebook Messages during the Class Period have ceased, as of the dates set

forth below specific to each use:

8
9
10
11
12
13
14
15
            i.    "Like" Count Increment: From the beginning of the Class Period

until on or about December 19, 2012, Facebook source code was engineered so that when an

anonymous, aggregate count was displayed next to a "Like" button on a third-party web page,

that count often included, *inter alia*, the number of times a URL related to that particular website

had been shared by Facebook users in Facebook Messages and resulted in creation of an

EntShare.  On or about December 19, 2012, Facebook changed its source code such that the

external count no longer included the number of shares, by users, of URLs in private messages

that resulted in creation of EntShares. Settlement Agreement ¶ 40(a)(i).

16
17
18
19
20
21
22
23
24
25
26
27
            ii.    Sharing of URL Data with Third Parties: Facebook makes its

"Insights" user interface and related API available to owners of third-party websites that choose to

include Facebook tools or features, for purposes of providing anonymous, aggregate data about

interaction with and traffic to their websites.  During certain periods of time during the Class

Period, this information included anonymous, aggregate statistics and demographic information

about users who shared links to those sites across the Facebook platform.  From the beginning of

the Class Period until on or about October 11, 2012, the anonymous, aggregate statistics and

demographic information included information about users who shared URLs in Facebook

Messages that resulted in creation of EntShares.  On or about October 11, 2012, Facebook changed

its source code such that it ceased including information about URL shares in Facebook Messages

that resulted in creation of EntShares (and attendant statistics and demographic information) within

Insights and its related API. Settlement Agreement ¶ 40(a)(ii).

28

iii.   <u>Use of URL Data to Generate Recommendations</u>: Facebook's Recommendations Feed was a social plugin offered to developers that displayed a list of URLs representing the most recommended webpages on that developer's site.  Over time, two different units of Facebook source code determined the list of URLs that would appear in the Recommendations Feed for a given webpage at a given time.  One of those units of Facebook source code was the "PHP backend."  Although, during the Class Period, the PHP backend was not the primary system determining the list of URLs that would appear in the Recommendations Feed, the PHP backend served as a backup system if the primary system failed.  The PHP backend considered, *inter alia*, an anonymous, aggregate count of, *inter alia*, the number of times a URL had been shared in a Facebook Message and resulted in creation of an EntShare.  On or about July 9, 2014, Facebook changed its code such that it ceased utilizing the PHP backend as the backup system for its Recommendations Feed. Settlement Agreement ¶ 40(a)(iii).

iv.   <u>Use of EntShares created from URLs in Messages</u>:  Facebook confirms that, as of the date of execution of the Settlement Agreement, it is not using any data from EntShares created from URL attachments sent by users in Facebook Messages for: 1) targeted advertising; 2) sharing personally identifying user information with third parties; 3) use in any public counters in the "link_stats" and Graph APIs; and 4) displaying lists of URLs representing the most recommended webpages on a particular web site.  Settlement Agreement ¶ 40(b).

b.   <u>Disclosure Changes</u>:  Facebook implemented enhanced disclosures after the filing of this Action that benefited the Class.  Specific to the private message function, in January 2015, Facebook revised its Data Policy to disclose that Facebook collects the "content and other information" that people provide when they "message or communicate with others," and to further explain the ways in which Facebook may use that content.  Settlement Agreement ¶ 40(c).

c.   <u>Additional Explanatory Language</u>:  Facebook shall display the following, additional language, without material variation, on its United States website for Help Center materials concerning messages within 30 days of the Effective Date: "We use tools to identify and store links shared in messages, including a count of the number of times links are shared."  Facebook will make this additional language available on its United States website for a period of

1  one year from the date it is posted, provided however that Facebook may update the disclosures to

2  ensure accuracy with ongoing product changes. Settlement Agreement ¶ 40(d).

3      16.    For purposes of the provisional certification, the Settlement Class shall be defined

4  as follows:

5          All natural-person Facebook users located within the United States
   and its territories who have sent, or received from a Facebook user,
6          private messages that included URLs in their content (and from
   which Facebook generated a URL attachment), from December 30,
7          2011 to March 1, 2017.

8  **IV.    QUALIFICATIONS OF CLASS COUNSEL**

9      17.    As exemplified in each firm's respective firm resume, Class Counsel have

10  extensive experience litigating and settling consumer class actions and other complex matters.

11  Each firm has held significant leadership roles in prominent class actions throughout the United

12  States. Collectively, Class Counsel have assisted putative class members in recovering billions of

13  dollars.

14      **A.    Qualifications of Michael W. Sobol**

15      18.    Michael W. Sobol is a 1989 graduate of Boston University School of Law.  He

16  practiced law in Massachusetts from 1989 to 1997.  From 1995 through 1997, he was a Lecturer

17  in Law at Boston University School of Law. In 1997, he left his position as partner in the Boston

18  firm of Shafner, Gilleran & Mortensen, P.C. to move to San Francisco, where he joined LCHB.

19  Since joining LCHB in 1997, he has almost exclusively represented plaintiffs in consumer

20  protection class actions.  Mr. Sobol has been a partner with LCHB since 1999, and is in his

21  fifteenth years as chair of LCHB's consumer practice group. A copy of LCHB's firm resume,

22  which describes the firm's experience in class action and other complex litigation, can be found at

23  http://www.lchbdocs.com/pdf/finn-resume.pdf and is not attached hereto given its length.

24      19.    During his time at LCHB, Mr. Sobol has overseen a wide range of consumer

25  protection litigation and has served as plaintiffs' class counsel in numerous nationwide consumer

26  class action cases.  The following cases are representative examples of class actions in which he

27  has played a leadership role:

28      a.    Mr. Sobol served as co-lead class counsel in *Gutierrez v. Wells Fargo*

1 | *Bank, N A.*, No. C 07-05923 WHA (N.D. Cal.), a class action alleging unfair practices and false

2 | representations by Wells Fargo in connection with its imposition of overdraft charges. In 2013,

3 | the court reinstated a $203 million class judgment that had been entered in 2010 following a

4 | bench trial, and in 2014 the reinstated judgment was affirmed by the Ninth Circuit. Judge Alsup

5 | noted that LCHB "performed at a superior level as class trial counsel" and that LCHB's trial

6 | performance "ranks as one of the best this judge has seen in sixteen years on the bench."

7 | *Gutierrez v. Wells Fargo Bank, N A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *l, 7 (N.D.

8 | Cal. May 21, 2015).  In 2011, Mr. Sobol was named a finalist of the Consumer Attorneys of

9 | California's ("CAOC") Consumer Attorney of the Year award for his work in this case.

10 |      b.     Mr. Sobol served on the Plaintiffs' Executive Committee in *In re Checking

11 | Account Overdraft Litigation*, MDL 2036 (S.D. Fla.), a multidistrict proceeding involving more

12 | than two dozen banks and allegations of unfair practices and false representations in connection

13 | with the banks' imposition of overdraft charges.  Class settlements totaling over a billion dollars

14 | have been approved by the court to date.  In 2012, Mr. Sobol was named as a finalist for Trial

15 | Lawyer of the Year by Public Justice for his work in this litigation.  The same year, Mr. Sobol

16 | was again named a finalist by CAOC for the Consumer Attorney of the Year award for his work

17 | in *Yourke v. Bank of America*, a case that was a part of the MDL which resulted in a settlement of

18 | $410 million.

19 |      c.     Mr. Sobol served as Plaintiffs' Liaison Counsel and on the Plaintiffs'

20 | Executive Committee in *In re Chase Bank USA, N A. "Check Loan" Contract Litigation*, MDL

21 | No. 2032 (N.D. Cal.), a nationwide multidistrict class action alleging that Chase breached its

22 | good faith obligation to credit cardholders by modifying the terms of their long-term fixed rate

23 | loans.  In November 2012, the court granted final approval to a $100 million nationwide

24 | settlement that provides direct payments to approximately one million cardholders and important

25 | injunctive relief. In 2013, Mr.  Sobol was again named a finalist for CAOC's Consumer Attorney

26 | of the Year award for his efforts in this litigation

27 |      d.     Mr. Sobol served as co-class counsel in *Ebarle v. LifeLock, Inc.*, Case No.

28 | 15-cv-00258-HSG (N.D. Cal.), a class action alleging that LifeLock misrepresented certain

1    aspects of its identity theft protection services to its subscribers. On September 20, 2016, Judge

2    Gilliam granted final approval of a settlement providing $68 million total to settlement class

3    members, with attorneys' fees and settlement administration cost being paid by LifeLock on top

4    of this $68 million fund.

5            e.      Mr. Sobol served as Interim Co-Lead Class Counsel in *Corona v. Sony*

6    *Pictures Entertainment, Inc.*, No. 14-cv-9600 (C.D. Cal.), a case arising out of a breach of Sony's

7    computer networks causing highly-sensitive and personally identifiable information of thousands

8    of Sony employees to be stolen and made public, exposing class members to long-term risk of

9    identity theft and credit fraud. Final approval of a settlement providing for $2 million to

10    compensate employees who had taken preventative measures to protect themselves and providing

11    for an additional two years of identity theft protection services was granted on April 6, 2016.

12            f.      Mr. Sobol served as co-class counsel in *In re TracFone Unlimited Service*

13    *Plan Litigation*, Case No. 13-cv-03440-EMC (N.D. Cal.), a class action alleging that *TracFone*

14    falsely advertised its cell phone plans as providing "unlimited" data when it imposed secret data

15    caps on the plans, pursuant to which it would throttle (*i.e.* severely slow down) or suspend

16    consumers' data. On July 2, 2015, Judge Chen granted final approval to a $40 million settlement

17    which included industry-leading business practice changes.

18            g.      Mr. Sobol served as class counsel in *Brazil v. Dell Inc*., No.  C-07-01700

19    RMW (N.D. Cal.), a class action alleging false reference price advertising in connection with

20    defendant's online sale of computers.  This was the first class action of its kind to receive

21    certification, and resulted in a settlement which allowed class members to submit claims for $50

22    payments and also included important practice changes

23            h.      Mr. Sobol served as Lead Plaintiffs' Counsel in *In re Apple and AT&T*

24    *iPad Unlimited Data Plan Litigation*, No. 10-cv-02553 RMW (N.D. Cal.), a class action alleging

25    that defendants falsely advertised access to an unlimited data plan for the iPad device.  In 2014,

26    the court granted final approval of a settlement which allowed class members to submit claims for

27    $40 payments and provided other benefits to class members.

28            i.      Mr. Sobol served as co-lead counsel in *Yarrington v. Solvay*

*Pharmaceuticals, Inc.*, No. 09-CV-2261 (D. Minn.), a class action alleging that Solvay deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest was not FDA-approved for any use.  In March 2010, the court granted final approval to a $16.5 million settlement, pursuant to which consumers obtained partial refunds of up to 30% of the purchase price paid for Estratest.

          j.      Mr. Sobol was co-lead plaintiffs' counsel in *Morris v. AT&T Wireless Services, Inc.*, No. C-04-1997-MJP (W.D. Wash.), a case alleging that a nationwide class of cell phone customers was subjected to an end-of-billing cycle cancellation policy implemented by AT&T Wireless, thereby breaching customers' service agreements.  On May 19, 2006, the New Jersey Superior Court granted final approval to a class settlement that guaranteed delivery to the class of $40 million in benefits.

          k.      Mr. Sobol served as co-class counsel in *Pakeman, et al. v. American Honda Finance Corporation* (M.D. Tenn.), a case raising race discrimination claims under the Equal Credit Opportunity Act. On April 18, 2005, court granted final approval of a class settlement requiring defendant to establish a refinance program applicable to $1 billion of its existing loan portfolio under which African Americans and Hispanic Americans are eligible for a reduction on their auto loan interest rate. The settlement also imposed a limit to the amount of "mark-up" lenders can impose on interest rates, increased the transparency of consumer disclosures, and funded consumer education programs. The monetary benefit to the class was estimated to be between about $47 million to $72 million.

          l.      Mr. Sobol served as co-lead plaintiffs' counsel in Reverse Mortgage Cases, J.C.C.P. No. 4061 (San Mateo Sup. Ct.), an action brought against Transamerica alleging that it targeted senior citizens to market and sell "reverse mortgages" which were misleading as to loan terms and contained unfair charges and fees. A nationwide settlement provided relief to approximately 1600 members of the class averaging about $5,000 per class member, with some class members receiving many times that amount.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.   Qualifications of Hank Bates

20.     Hank Bates is a partner at CBP, a national law firm based in Little Rock, Arkansas. CBP is recognized as one of the country's premiere firms in the areas of consumer protection class actions, data privacy/security, securities fraud, environmental law and employment discrimination.  A copy of CBP's firm resume, which describes the firm's experience in class action and other complex litigation is available at http://www.cbplaw.com/firm-resume/.

21.     Since joining CBP in 2004, Mr. Bates has focused his practice on representing consumers, small businesses, governmental entities, farmers and shareholders in class actions and complex litigation involving consumer fraud, computer privacy, environmental law, and employment rights.  He received his B.A. from Harvard University in 1987 and his J.D. from Vanderbilt University School of Law in 1992.  Following law school, Mr. Bates was a law clerk for the Honorable Danny J. Boggs, United State Court of Appeals for the Sixth Circuit.  Mr. Bates practiced public-interest environmental law in San Francisco, California from 1993 to 1997, first with the law firm of Shute, Mihaly & Weinberger and then with Earthjustice, before returning to his home state of Arkansas.  Below is a sampling of class actions and complex litigation throughout the nation in which Mr. Bates and CBP are currently playing a leadership role

a.     CBP served as Co-Lead Counsel in *Ebarle, et al. v. LifeLock, Inc.*, 3: 15-cv-00258 (N.D. Cal.), a class action alleging that LifeLock misrepresented certain aspects of its identity theft protection services to its subscribers.  On September 20, 2016, Judge Gilliam granted final approval of a settlement providing $68 million total to settlement class members, with attorneys' fees and settlement administration cost being paid by LifeLock on top of this $68 million fund.

b.     CBP serves on the Plaintiffs' Steering Committee in *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, l:14-md-02583-TWT (N.D. Ga.), a putative class action brought on behalf of injured financial institutions in the wake of a massive retailer data breach.

c.     CBP served as Counsel for Lead Plaintiff Umpqua Bank in *In re: Target*

1    *Corporation Customer Data Security Breach Litigation*, 0:14-cmd-02522-PAM-JJK (D. Minn.), a

2    recently-settled class of financial institution plaintiffs over injuries suffered from one of the

3    largest data breaches in history.  A settlement, valued at $39.4 million, was granted final approval

4    by the Court on May 12, 2016 and settlement administration is ongoing

5              d.      CBP served as Co-Counsel in *Corona v. Sony Pictures Entertainment, Inc.*,

6    No. CV 14-09600-RGK (Ex) (C.D. Cal.), a case arising out of a breach of Sony's computer

7    networks causing highly-sensitive and personally identifiable information of thousands of Sony

8    employees to be stolen and made public, exposing class members to long-term risk of identity

9    theft and credit fraud. Final approval of a settlement providing for $2 million to compensate

10   employees who had taken preventative measures to protect themselves and providing for an

11   additional two years of identity theft protection services was granted on April 6, 2016.

12             e.      CBP is Co-Lead Counsel *in Daniel, et al. v. Ford Motor Company*, 2: 11-

13   02890 WBS EFB (E.D. Cal.), a class action alleging violations of the Song-Beverly Consumer

14   Warranty Act, the Magnuson-Moss Warranty Act, California's Consumers Legal Remedies Act,

15   and California's Unfair Competition Law arising from an alleged rear suspension defect in Ford

16   Focus model years 2005 through 2011.  The Court has certified the class; CBP successfully

17   opposed Ford's Motion for Summary Judgment; and the class action trial is set for September

18   2017.

19             f.      CBP is Co-Lead Counsel in *Jensen, et al. v Cablevision Systems*

20   *Corporation*, 2:17-cv-00100-ADS-AKT (E.D.N.Y.), a putative class action alleging violations of

21   the federal Computer Fraud and Abuse Act, arising from the defendant's practice of providing its

22   residential customers with wireless routers that secretly emit secondary, public Wi-Fi networks

23   over which the individual consumer had no control.

24             g.      CBP is Co-Counsel in *Wayne Miner et al. v. Philip Morris USA Inc.*,

25   Circuit Court of Pulaski County, Arkansas, Case No. 60-CV-03-4661, a class action brought on

26   behalf of Arkansas smokers over claims that the defendant misrepresented the safety of its "light"

27   cigarette products, which settled in 2016 for $45 million.

28             h.      CBP is Co-Lead Counsel in *Williams, et al. v. State Farm Mutual*

*Automobile Ins. Co.*, 4:11-cv-00749 KGB (E.D. AR), a class action alleging State Farm violated Arkansas subrogation law by receiving subrogation payments of medical payment and/or personal injury protection coverage from customers' settlements without first obtaining a judicial determination and/or agreement that the customer was made whole.  The Court has certified the class; class notice has been completed; CBP successfully opposed State Farm's Motion for Summary Judgment; and the Court was recently notified that the parties have reached a settlement.

          i.        CBP is Co-Lead Counsel in *Walker, et al. v. Bank of the Ozarks*, CV-11-77 (Ark.), a putative class action alleging violations of the Arkansas Deceptive Trade Practices Act, the duty of good faith and fair dealing resulting from Bank of the Ozarks' unfair and unconscionable assessment and collection of excessive overdraft fees.  On March 17, 2016, the Arkansas Supreme Court affirmed the lower court's denial of Bank of the Ozarks motion to compel arbitration.

          j.        In addition to the above, CBP has successfully litigated several other prominent class actions throughout the nation, a few of which include:

          k.        *In re Bank of America Credit Protection Marketing & Sales Practices Litig.*, United States District Court for the Northern District of California, Case No. 11-md-2269-THE (member of Plaintiffs' Executive Committee; $20 million settlement).

          l.        *In re DQE, Inc. Securities Litigation*, United States District Court, Western District of Pennsylvania, Case No. 01-1851 (Co-Lead Counsel; $12 million settlement).

          m.        *Esslinger v. HSBC Bank Nevada*, United States District Court for the Eastern District of Pennsylvania, Case No.  2:10-cv-03213-BMS (Co-Lead Counsel; $23.5 million settlement).

          n.        *Kardonick v. JPMorganChase*, United States District Court for the Southern District of Florida, Case No. 1:10-cv-23235-WMH (Co-Lead Counsel; $20 million settlement).

          o.        *In re Lernout & Hauspie Securities Litigation*, United States District Court for the District of Massachusetts, No. OO-CV-11589-PBS (Co-Lead Counsel; $115 million

1    settlement).

2         p.    *In re Liberty Refund Anticipation Loan Litig*., United States District Court

3    for the Northern District of Illinois, Case No. 1:12-cv-02949 (Co-Lead Counsel; $5.3 million

4    settlement).

5         q.    *Middlesex County Retirement System v. Semtech Corp. et al*., United States

6    District Court for the Southern District of New York, Case No. 07-cv-7183 (DC) (Co-Lead

7    Counsel; $20 million settlement).

8         r.    *Spinelli v. Capital One Bank (USA), et al*., United States District Court for

9    the Middle District of Florida, Case No.  8:08-cv-132-T-33EAJ (Co-Lead Counsel; more than

10   $100 million settlement).

11        s.    *In re Sterling Financial Corporation Securities Class Action*, United States

12   District Court of the Southern District of New York, Case No. CV 07-217l (Co-Lead Counsel;

13   $10.25 million settlement).

14        t.    *Nelson v.  Wal-Mart Stores, Inc.*, Eastern District of Arkansas, Case No.

15   04- 00171, (Co-Lead Counsel; $17.5 million in recovery, as well as significant changes to Wal-

16   Mart's hiring policies and four years of court supervision of the settlement terms).

17        u.    *The Quapaw Tribe of Oklahoma v. Blue Tee Corp*., United States District

18   Court for the Northern District of Oklahoma, Case No.03-cv-0846-CVE-PJC (Co-Lead Counsel;

19   $11.5 million settlement).

20   **V.    RECOMMENDATION OF CLASS COUNSEL**

21        22.    Class Counsel had a wealth of information at their disposal before entering into

22   settlement negotiations, which allowed Class Counsel to adequately assess the strengths and

23   weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further

24   litigation.  The parties conducted extensive discovery.  For example, Class Counsel served and

25   reviewed responses to dozens of written discovery requests; reviewed tens of thousands of

26   documents and millions of lines of source code.  Further, the parties took some 18 depositions.

27

28

23.     Against this backdrop, Class Counsel have weighed the benefits of the Settlement against the inherent risks and expense of continued litigation, and believe that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Class.

24.     Facebook has vigorously denied Plaintiffs' allegations of wrongdoing, and, absent settlement, Plaintiffs anticipate Facebook would defend this action aggressively at multiple procedural steps prior to trial, including a motion for summary judgment.  While Plaintiffs strongly believe in the merits of their case, they recognize that the law is in relative infancy in the context of ECPA's and CIPA's application to email communications, and this uncertainty presents at least some element of risk at multiple, critical junctures in this Action.

25.     The outcome of continued litigation, including trial and likely appeals, is far from certain, could add years to this litigation, and would entail significant expense. In contrast, the Settlement provides significant, immediate benefits to the Settlement Class.

26.     Accordingly, Class Counsel believe the Settlement to be fair, adequate, and reasonable.

## VI.     CONCLUSION

27.     In sum, the settlement negotiations in this Action were conducted at arm's length by informed and experienced counsel for both parties, spanned seven months, and included numerous mediation sessions before reputable mediators who had an integral part in the settlement negotiations.  Further, the Settlement provides a significant benefit to the Class now, without the inherent risk, expense, delay, and uncertainty of continued litigation.

28.     Consequently, Class Counsel believe the proposed Settlement is fair, reasonable, and adequate, and should be preliminarily approved by the Court.

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 1st day of March, 2017.


San Francisco, California               */s/ Michael W. Sobol*_____
                                        Michael W. Sobol, Esq.
                                        Lieff Cabraser Heimann & Bernstein, LLP

1

Little Rock, Arkansas

*/s/ Hank Bates*

2

Hank Bates, Esq.
Carney Bates & Pulliam, PLLC

3

4

**ATTESTATION**

5

I, Michael W. Sobol, am the ECF user whose identification and password are being used

6

to file this Joint Declaration.  I hereby attest that Hank Bates has concurred in this filing.

7

8

 */s/ Michael W. Sobol*

Michael W. Sobol, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT DECLARATION OF CLASS COUNSEL ISO MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4:13-CV-05996-PJH