Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
David T. Rudolph (State Bar No. 233457)
drudolph@lchb.com
Melissa Gardner (State Bar No. 289096)
mgardner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman
rgeman@lchb.com
Nicholas Diamand
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Hank Bates (State Bar No. 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th Street
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW CAMPBELL, MICHAEL HURLEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No.  4:13-cv-05996-PJH <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date:   August 9, 2017 <br> Time:    9:00am <br> Judge: Hon. Phyllis J. Hamilton <br> Place: Courtroom 3, 3rd Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ........................................................................................... 1

    A.    Plaintiffs' Claims and Facebook's Motion to Dismiss .......................... 1

    B.    Discovery and Class Certification.......................................................... 2

    C.    Settlement Negotiations and the Settlement Agreement........................ 3

III.  THE SETTLEMENT ..................................................................................... 4

    A.    The Settlement Terms ............................................................................ 4

        1.    Cessation of the Three URL Uses Relevant to this Class Action .............. 4

        2.    The Release ................................................................................. 5

        3.    Attorneys' Fees .......................................................................... 6

    B.    Notice .................................................................................................... 6

IV.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AS FAIR, REASONABLE AND ADEQUATE................................................. 6

    A.    The Strength of Plaintiffs' Case Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation ......................... 7

    B.    The Risk of Maintaining Class Action Status Throughout Trial ........... 8

    C.    The Benefits Offered in Settlement....................................................... 9

    D.    Extent of Discovery and Stage of Proceedings ..................................... 9

    E.    The Experience and View of Counsel................................................... 10

    F.    The Presence of a Governmental Participant ....................................... 10

    G.    Lack of Collusion Between the Parties ................................................. 10

V.   CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................................ 9

*Ching v. Siemens Indus., Inc.*,
   No. 11-4838-MEJ, 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27, 2014) ..................... 10

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .............................................................................................. 6

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................................ 10

*Gen. Tel. Co. of Sw v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................................ 8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1997) ............................................................................................. 7

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................................................... 11

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................................... 11

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................................. 10

*In re Yahoo Mail Litig.*,
   No. 13-CV-4980-LHK, 2016 U.S. Dist. LEXIS 115056 (N.D. Cal. Aug. 25, 2016) ............ 8

*Martin v. Global Tel*Link Corp.*,
   2017 U.S. Dist. LEXIS 53899 (C.D. Cal. Apr. 7, 2017) ....................................................... 9

*Moore v. PetSmart, Inc.*,
   2015 U.S. Dist. LEXIS 102804 (N.D. Cal. Aug. 4, 2015) ................................................. 7, 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................... 8

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................ 8, 9, 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................. 6, 7

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................ 8, 10

*Satchell v. Federal Express Corp.*,
   No. C 03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ..................... 11

*Shadpour v. Facebook, Inc.*,
   Case No. 5:14-cv-00307-PSG (N.D. Cal.) .......................................................................... 1

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................................... 7

**TABLE OF AUTHORITIES**
(continued)

Page

**Rules**

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 2

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 2

Fed. R. Civ. P. 23(e) ................................................................................................ 1

Fed. R. Civ. P. 41(a) ............................................................................................... 2

**Treatises**

4 Alba Conte & Herbert B. Newberg on Class Actions §11.50 (4th ed. 2002) .............................. 8

4 Newberg § 11.41 ................................................................................................... 11

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on August 9, 2017, at 9:00 a.m., in the Courtroom of the Honorable Phyllis J. Hamilton (Courtroom 3), United States District Judge for the Northern District of California, Courtroom 3, 1301 Clay Street, Oakland, California, 94612, Plaintiffs and Class Counsel[1] in the above-captioned matter will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order granting final approval of the Class Action Settlement Agreement ("Settlement") and entering final Judgment in this matter.

Plaintiffs' motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Class Counsel filed herewith, the papers filed in support of Plaintiffs' motion for preliminary settlement approval, the papers filed in support of Class Counsel's application for attorneys' fees, the record in this case, and any additional argument and evidence the Court may consider.

Dated: May 26, 2017
By: ___/s/ Hank Bates_____

CARNEY BATES & PULLIAM, PLLC
Hank Bates (CA #167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

---

[1] "Class Counsel" are the firms appointed as Class Counsel pursuant to the Court's order preliminarily approving the proposed Settlement (the "Preliminary Approval Order"): Lieff Cabraser Heimann & Bernstein LLP and Carney Bates & Pulliam, PLLC. (*See* Dkt. 235 at 5).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael W. Sobol (CA #194857)
msobol@lchb.com
David T. Rudolph
drudolph@lchb.com
Melissa Gardner
mgardner@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman
rgeman@lchb.com
Nicholas Diamond
ndiamond@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Class Counsel*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP") and the Court's Preliminary Approval Order, Plaintiffs Matthew Campbell and Michael Hurley ("Plaintiffs") respectfully request that the Court grant final approval of the settlement (the "Settlement") reached between Plaintiffs and Defendant Facebook, Inc.

At the preliminary approval stage, this Court reviewed the parties' Settlement and found that certification of the Settlement Class was appropriate for settlement purposes and "the Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Settlement Class." *See* Dkt. 235 at 3.  As demonstrated herein, consideration of the appropriate factors strongly weighs in favor of final approval of the Settlement. Consequently, the Court should grant Plaintiffs' Motion for Final Approval.

**II.      BACKGROUND**

**A.      Plaintiffs' Claims and Facebook's Motion to Dismiss**

Plaintiffs, on behalf of themselves and those similarly situated, commenced this action (the "Action") on December 30, 2013.  In their initial complaint, Plaintiffs asserted claims for violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*. ("ECPA"); the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq*. ("CIPA"); and California's Unfair Competition Law California Business and Profession Code §§ 17200 *et seq*. ("UCL"). Plaintiffs alleged that Facebook, as a routine policy and business practice, captured and reads URL Content in its users' personal, private Facebook messages without their consent for purposes including, but not limited to, data mining, user profiling and generating 'Likes' for web pages.

On January 21, 2014, David Shadpour filed a related action (referred to collectively with this Action as the "Related Actions"), which alleged similar facts and averred identical causes of action against Facebook (*see Shadpour v. Facebook, Inc.*, No. 5:14-cv-00307-PSG (N.D. Cal.), Dkt. 1).

On April 15, 2014, the Court entered an order granting Plaintiffs' Motion to Consolidate the Related Actions and consolidating the Related Actions for all purposes.  (*See* Dkt. 24).

1   Following entry of the Court's consolidation order, the Class Representatives filed a Consolidated

2   Amended Complaint on April 25, 2014, asserting ECPA, CIPA, and UCL claims on behalf of

3   themselves and a proposed class of "[a]ll natural-person Facebook users located within the United

4   States who have sent or received private messages that included URLs in their content, from

5   within two years before the filing of this action up through and including the date when Facebook

6   ceased its practice."  (*See* Dkt. 25).[1]

7       On June 17, 2014, Facebook filed a Motion to Dismiss Plaintiffs' Consolidated Amended

8   Complaint.  (*See* Dkt. 29).  Plaintiffs filed an opposition (*see* Dkt. 31), and Facebook, in turn,

9   filed a reply brief (*see* Dkt. 35).  On December 23, 2014, the Court issued an order granting in

10  part and denying in part Facebook's Motion to Dismiss Plaintiffs' Consolidated Amended

11  Complaint, dismissing the claims under CIPA § 632 and the UCL, but denying dismissal of the

12  claims under ECPA and CIPA § 631.  (*See* Dkt. 43).

13      **B.**     **Discovery and Class Certification**

14      Following entry of the Court's order granting in part and denying in part Facebook's

15  motion to dismiss the Consolidated Amended Complaint, the parties engaged in almost two years

16  of extensive discovery, including the production of tens of thousands of pages of documents, fact

17  and expert depositions of 18 witnesses (spanning 19 days of testimony), informal conferences and

18  discussions, hundreds of hours reviewing detailed technical documentation, substantial discovery

19  motion practice and the exchange of hundreds of pages of written discovery requests and

20  responses.

21      During the discovery phase, Plaintiffs filed a Motion for Class Certification.  (*See* Dkt.

22  138).  Defendants filed an opposition (*see* Dkt. 147-4), and Plaintiffs, in turn, filed a reply brief

23  (*see* Dkt. 167).  On May 18, 2016, the Court issued on order granting in part and denying in part

24  Plaintiffs' Motion for Class Certification, denying certification as to a damages class under

25  Federal Rule of Civil Procedure 23(b)(3), but granting certification of an injunctive-relief class

26  under Federal Rule of Civil Procedure 23(b)(2).  (*See* Dkt. 192).  Specifically, the Court certified

27

28
_____

[1] On October 2, 2015, David Shadpour voluntarily dismissed his claims, with prejudice, pursuant to Federal Rule of Civil Procedure 41(a). (*See* Dkt. 123).

1    for class treatment three specific alleged uses by Facebook of URLs included in private messages:

2    (1) Facebook's cataloging URLs shared in private messages and counting them as a "like" on the

3    relevant third-party website, (2) Facebook's use of data regarding URLs shared in private

4    messages to generate recommendations for Facebook users, and (3) Facebook's sharing of data

5    regarding URLs in messages (and attendant demographic data about the messages' participants)

6    with third parties. (Dkt. 192 at 3-5).  In addition, the Court directed the Plaintiffs to file a Second

7    Amended Complaint "(1) revising the class definition to reflect the definition set forth in the class

8    certification motion, and (2) adding allegations regarding the sharing of data with third parties."

9    (*Id.* at 6).  In accord therewith, the Plaintiffs filed their Second Amended Complaint on June 7,

10   2016.  (Dkt. 196.)

11          Subsequent to the filing of Plaintiffs' Second Amended Complaint, discovery in this

12   Action continued.

13          **C.      Settlement Negotiations and the Settlement Agreement**

14          The parties' first mediation occurred on August 19, 2015, which involved a full-day

15   mediation before Cathy Yanni of JAMS. While the parties made strides at this mediation, they

16   were unable to reach an agreement to resolve this Action.

17          Following entry of the Court's Class Certification Order, the parties revisited the

18   possibility of settlement, agreeing to a second mediation.  As such, the parties attended a second

19   mediation session before Cathy Yanni of JAMS on July 21, 2016.  While not yielding a resolution

20   to the Action, the parties agreed to come back for a third mediation session, which occurred on

21   July 28, 2016.  Although this third mediation was also unsuccessful, the parties made significant

22   progress and narrowed the issues of dispute.  For months following the parties' third mediation

23   session, as discovery continued, the parties also continued to negotiate informally.  Eventually, on

24   November 22, 2016, just eight days from the close of fact discovery, the parties notified the Court

25   that they had agreed to attend a fourth mediation, which took place on December 7, 2016 before

26   Randall Wulff.

27          As a result of these cumulative efforts, the parties were able to reach an agreement-in-

28   principle to resolve this Action, and on December 23, 2016, the parties filed a Joint Status Report,

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:13-CV-05996-PJH

advising the Court that they had reached a settlement-in-principle. (*See* Dkt. 222). Thereafter,

the parties worked diligently to memorialize the terms of the settlement in a comprehensive

Settlement Agreement, which was executed by all parties on March 1, 2017 and filed with the

Court on that same date. (*See* Dkt. 227-3.)

## III.     THE SETTLEMENT

### A.     The Settlement Terms

As originally detailed in Plaintiffs' Motion for Preliminary Approval of Class Action

Settlement (Dkt. 227), the Settlement achieves significant changes to Facebook's practices related

to the use of URLs in private messages that address each of the three practices certified for class

treatment by the Court and challenged in the Second Amended Complaint:

#### 1.     Cessation of the Three URL Uses Relevant to this Class Action

The Settlement Agreement confirms that Facebook has ceased the following uses of data

from EntShares created from URLs sent in Facebook private messages:

- **"Like" Count Increment.** From the beginning of the Class Period until on or about December 19, 2012, Facebook source code was engineered so that when an anonymous, aggregate count was displayed next to a "Like" button on a third-party web page, that count often included, *inter alia*, the number of times a URL related to that particular website had been shared by Facebook users in Facebook Messages and resulted in creation of an EntShare. On or about December 19, 2012, Facebook changed its source code such that the external count no longer included the number of shares, by users, of URLs in private messages that resulted in creation of EntShares. (Settlement Agreement at ¶ 40(a)(i));

- **Sharing of URL Data with Third Parties.** Facebook makes its "Insights" user interface and related API available to owners of third-party websites that choose to include Facebook tools or features, for purposes of providing anonymous, aggregate data about interaction with and traffic to their websites. During certain periods of time during the Class Period, this information included anonymous, aggregate statistics and demographic information about users who shared links to those sites across the Facebook platform. From the beginning of the Class Period until on or about October 11, 2012, these statistics and demographic information included information about users who shared URLs in Facebook Messages that resulted in creation of EntShares. On or about October 11, 2012, Facebook changed its source code such that it ceased including information about URL shares in Facebook Messages that resulted in creation of EntShares (and attendant statistics and demographic information) within Insights and its related API. (Settlement Agreement ¶ 40(a)(ii));

- **Use of URL Data to Generate Recommendations.** Facebook's Recommendations Feed was a social plugin offered to developers that displayed a list of URLs representing the most recommended webpages on that developer's site. Over time, two different units of Facebook source code determined the list of

URLs that would appear in the Recommendations Feed for a given webpage at a given time. One of those units of Facebook source code was the "PHP backend." Although, during the Class Period, the PHP backend was not the primary system determining the list of URLs that would appear in the Recommendations Feed, the PHP backend served as a backup system if the primary system failed. The PHP backend considered, *inter alia*, an anonymous, aggregate count of, *inter alia*, the number of times a URL had been shared in a Facebook Message and resulted in creation of an EntShare. On or about July 9, 2014, Facebook changed its code such that it ceased utilizing the PHP backend as the backup system for its Recommendations Feed. (Settlement Agreement ¶ 40(a)(iii));

- **Use of EntShares created from URLs in Messages.** In addition, Facebook confirms that, as of the date of execution of the Settlement Agreement, it is not using any data from EntShares created from URL attachments sent by users in Facebook Messages for: 1) targeted advertising; 2) sharing personally identifying user information with third parties; 3) use in any public counters in the "link_stats" and Graph APIs; and 4) displaying lists of URLs representing the most recommended webpages on a particular web site. (Settlement Agreement ¶ 40(b));

- **Disclosure Changes.** Facebook implemented enhanced disclosures after the filing of this Action that benefited the Class. Specific to the private message function, in January 2015, Facebook revised its Data Policy to disclose that Facebook collects the "content and other information" that people provide when they "message or communicate with others," and to further explain the ways in which Facebook may use that content. (Settlement Agreement ¶ 40(c)). Facebook has taken the position that these changes—implemented during the course of this litigation—were significant and transparent enough to establish consent to the practices complained of in this action (or at minimum neutralize any further suggestion that Facebook users were not aware of the practices complained of in this action).

Moreover, as part of the Settlement, Facebook shall also display the following additional language, without material variation, on its United States website for Help Center materials concerning messages within 30 days of the Effective Date: "We use tools to identify and store links shared in messages, including a count of the number of times links are shared." This additional language shall be available on its United States website for a period of one year from the date it is posted, provided however that Facebook may update the disclosures to ensure accuracy with ongoing product changes.  (Settlement Agreement ¶ 40(d)).

## 2.    The Release

In exchange for the foregoing consideration, Plaintiffs and the Settlement Class Members will release all claims which have been or could have been asserted against Facebook in this Action, with the express caveat that the release extends solely to claims for declaratory, injunctive, and non-monetary equitable relief.  Thus, no member of the Settlement Class, with the exception

of the Plaintiffs, will be releasing his or her claim for monetary damages or relief under CIPA, ECPA or any other cause of action. (Settlement Agreement ¶¶ 44-55).

### 3. Attorneys' Fees

Facebook has agreed not to take a position on an application by Class Counsel for an award of $3,890,000 in attorneys' fees and expenses (which represents a negative lodestar multiplier), and for service awards in the amount of $5,000 to each of the Plaintiffs serving as a Class Representative.  (Settlement Agreement ¶¶ 57 and 60).

### B. Notice

In accord with the Settlement Agreement and the Preliminary Approval Order, Facebook served notice of the Settlement, in a form and manner that comports with the requirements of 28 U.S.C. § 1715, on appropriate federal and state officials.  (Settlement Agreement ¶ 56).  In addition, consistent with this Court's Order, notice of the settlement was posted on Class Counsels' websites[2] on May 3, 2017.  This notice included the Court's Order, the Settlement Agreement, and Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Screen shots of Class Counsel's respective websites are attached as Exhibits 1 and 2 to Declaration of Class Counsel.  Additionally, and consistent with the Court's Order, Class Counsel will also post Plaintiffs' Motion for Attorneys' Fees and Incentive Awards and any opposition or reply papers related to any of the motions contemplated in the Court's Order, as such documents are filed.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AS FAIR, REASONABLE AND ADEQUATE

The law favors the compromise and settlement of class actions.  *See, e.g., Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.").

Evaluating a class-action settlement proposal at the final approval stage requires the District Court to determine whether the proposed settlement, taken as a whole, is fair, reasonable,

---

[2] Respectively, www.cbplaw.com and www.lieffcabraser.com.

1   and adequate.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Hanlon v. Chrysler*

2   *Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1997)).  To do so, a court should balance the following

3   factors:  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

4   duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4)

5   the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the

6   proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

7   participant; and (8) the reaction of the class members to the proposed settlement.  *Hanlon*, 150

8   F.3d at 1026.

9         Application of these factors in this Action demonstrates that the Settlement is fair,

10   reasonable, and adequate.  Consequently, the Settlement should be finally approved.

11         **A.    The Strength of Plaintiffs' Case Balanced Against the Risk, Expense,**
            **Complexity, and Likely Duration of Further Litigation**

12

13         "In determining the probability and likelihood of a plaintiff's success on the merits of a

14   class action litigation, 'the district court's determination is [often] nothing more than an amalgam

15   of delicate balancing, gross approximations and rough justice.'"  *Moore v. PetSmart, Inc.*, 2015

16   U.S. Dist. LEXIS 102804, at *19 (N.D. Cal. Aug. 4, 2015) (quoting *Officers for Justice v. Civil*

17   *Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  "There is no

18   particular formula by which that outcome must be tested." *PetSmart*, 2015 U.S. Dist. LEXIS

19   102804, at *19.

20         Here, as detailed in Section II.B above, the Second Amended Complaint, consistent with

21   this Court's order certifying an injunction-only class, seeks classwide declaratory, injunctive, and

22   non-monetary equitable relief under the ECPA and CIPA related to three specific uses by

23   Facebook of URLs in private messages.  The proposed Settlement achieves meaningful relief

24   targeted to each of the three URL uses alleged, as well as significant additions to Facebook's

25   public disclosures regarding it use of Private Message content.  Thus, in Plaintiffs' and Class

26   Counsel's views, the Settlement brings Facebook's practices relevant to this Action into

27   compliance with ECPA and CIPA.

28

1    In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued

2    litigation, trial and likely appeals is uncertain and could add years to this litigation.  For example,

3    Facebook could file a motion to decertify the Class, a motion for summary judgment, and motions

4    in limine.  While Plaintiffs strongly believe in the merits of their case, they recognize that in the

5    context of ECPA's application to electronic messages, there is uncertainty in the law that presents

6    increased risks surrounding such issues as the interpretation of the terms "in transit" and

7    "storage," and that similar uncertainties present themselves in the context of CIPA's application

8    to the practices at bar.  Further, had the parties reached the trial stage, this case would have

9    presented a costly, expert-intensive and technically complicated jury trial that would have

10   spanned weeks and necessitated extensive and costly trial preparation.  Then, following trial,

11   there would undoubtedly have been appeals, meaning further delay and more costs.

12       Thus, the benefits of Settlement balanced against the length, expense, and uncertainty

13   surrounding future litigation weighs in favor of final approval.  *See Rodriguez v. West Publ'g*

14   *Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016

15   U.S. Dist. LEXIS 115056, at *20-22 (N.D. Cal. Aug. 25, 2016); *Nat'l Rural Telecomms. Coop. v.*

16   *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of

17   litigation and compare the significance of immediate recovery by way of the compromise to the

18   mere possibility of relief in the future, after protracted and expensive litigation.") (citation

19   omitted); 4 Alba Conte & Herbert B. Newberg on Class Actions §11.50 (4th ed. 2002) ("In most

20   situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable

21   to lengthy and expensive litigation with uncertain results.").

22       **B.    The Risk of Maintaining Class Action Status Throughout Trial**

23       It is well-recognized that "[a] district court may decertify a class at any time." *Rodriguez*,

24   563 F.3d at 968 (9th Cir. 2009) (citing *Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 160 (1982)).

25   Here, Facebook vigorously opposed Plaintiffs' Motion for Class Certification, as its opposition

26   brief shows (*see* Dkt. 147-4). In keeping with Facebook's position and vigor, Plaintiffs believe

27   that Facebook may have pursued a motion for decertification in this Action prior to trial.

28   Although Plaintiffs are confident that a motion to decertify the class would not be successful, they

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:13-cv-05996-PJH

1   also recognize that maintaining the Class through trial is far from guaranteed in this Action.

2   Consequently, although deemed relatively low, the risk of losing class certification in this Action

3   still weighs in favor of the Settlement. *PetSmart, Inc*., 2015 U.S. Dist. LEXIS 102804, at *19

4   ("the notion that a district court could decertify a class at any time is an inescapable and weighty

5   risk that weighs in favor of settlement.").

6                     **C.    The Benefits Offered in Settlement**

7         As set forth above, the Settlement provides meaningful, non-monetary policy changes that

8   will benefit Facebook users going forward and, in Plaintiffs' and Class Counsel's views, ensures

9   Facebook's compliance with the ECPA and CIPA as to each of the three challenged practices in

10  the Second Amended Complaint. At the same time, the release granted to Facebook in this Action

11  is adequately tailored so that no Settlement Class Member will release his or her claim to

12  monetary damages or relief.  As such, the release "adequately balances fairness to absent class

13  members and recovery for plaintiffs with defendants' business interest in ending th[e] litigation

14  with finality." *Martin v. Global Tel*Link Corp*., 2017 U.S. Dist. LEXIS 53899 (C.D. Cal. Apr. 7,

15  2017) (internal quotations and citation omitted).

16                    **D.    Extent of Discovery and Stage of Proceedings**

17        For the parties "to have brokered a fair settlement, they must have been armed with

18  sufficient information about the case to have been able to reasonably assess its strengths and

19  value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007).  "A settlement

20  following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l*

21  *Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

22        Here, the settlement was negotiated on a developed record at an advanced stage of

23  litigation – near the close of factual discovery after this Court had certified a class for injunctive

24  and declaratory relief.  The parties have engaged in extensive discovery and motions practice

25  providing all parties with the information necessary to make an informed evaluation of the case.

26  Specifically, the parties engaged in almost two years of discovery, including the production of

27  tens of thousands of pages of documents, fact and expert depositions of 18 witnesses (spanning

28  19 days of testimony), informal conferences and discussions, hundreds of hours reviewing

- 9 -

detailed technical documentation, substantial discovery motion practice and the exchange of hundreds of pages of written discovery requests and responses.  Hence, both sides were able to negotiate the Settlement on a fully informed basis and with a thorough understanding of the merits and value of the parties' respective claims and defenses.  Accordingly, the extent of discovery completed and the stage of the proceedings weigh strongly in favor of final approval of the Settlement.  *DIRECTV, Inc*., 221 F.R.D. at 528 ("the proposed settlement was reached only after the parties had exhaustively examined the factual and legal bases of the disputed claims" and "[t]his fact strongly militates in favor of the Court's approval of the settlement.").

### E.      The Experience and View of Counsel

The Ninth Circuit has noted that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967; *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (same).  As such, "[a] district court is 'entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate."  *Ching v. Siemens Indus., Inc.*, No. 11-4838-MEJ, 2014 U.S. Dist. LEXIS 89002, at *17 (N.D. Cal. June 27, 2014).

Here, based on their analyses of the risks, burdens, and expense of continued litigation as well as their experience litigating other complex class actions, Class Counsel firmly believe the Settlement is fundamentally fair, adequate and reasonable, and in the best interest of the Class.  In addition, experienced counsel for Facebook has informed the Court of their view that the settlement is fair, reasonable, and adequate.  (*See* Dkt. 230).

### F.      The Presence of a Governmental Participant

While no governmental entity is a party to this litigation, notice has been issued to the appropriate federal and state officials in accordance with the 28 U.S.C. § 1715, and to date no governmental entity has raised objections or concerns about the Settlement.

### G.      Lack of Collusion Between the Parties

The Court "must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) (citations omitted).  Where, as here, a

1    settlement is the product of arm's length negotiations conducted by capable and experienced

2    counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.

3    *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *11-12

4    (C.D. Cal. June 10, 2005).

5            In addition, the participation of two highly-respected and neutral mediators across four in-

6    person mediation sessions with the benefit of mature discovery and motion practice underscores

7    the fact that the proposed Settlement is not the product of collusion.  *In re Immune Response Sec.*

8    *Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (involvement of mediator was "highly

9    indicative of fairness"); *Satchell v. Federal Express Corp.*, No. C 03-2659 SI, 2007 U.S. Dist.

10   LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in

11   the settlement process confirms that the settlement is non-collusive.").

12           Thus, as previously determined by this Court in its Preliminary Approval Order, the

13   Settlement in this Action "(a) is the result of serious, informed, non-collusive arms'-length

14   negotiations, involving experienced counsel familiar with the legal and factual issues of this case

15   and made with the assistance and supervision of a mediator; (b) meets all applicable requirements

16   of law, including Federal Rule of Civil Procedure 23, and the Class Action Fairness Act

17   ("CAFA"), 28 U.S.C. § 1715; and (c) is not a finding or admission of liability by Defendant."

18   (Dkt. 235 at 2.)

19   **V.    <u>CONCLUSION</u>**

20           For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court

21   enter an Order granting final approval of the Settlement.

22

23

24

25

26

27

28

1    Dated: May 26, 2017                    By:   /s/ Hank Bates

2                                           CARNEY BATES & PULLIAM, PLLC
                                            Hank Bates (CA #167688)
3                                           hbates@cbplaw.com
                                            Allen Carney
4                                           acarney@cbplaw.com
                                            David Slade
5                                           dslade@cbplaw.com
                                            519 West 7th St.
6                                           Little Rock, AR 72201
                                            Telephone: (501) 312-8500
7                                           Facsimile: (501) 312-8505

8                                           Michael W. Sobol (CA #194857)
                                            msobol@lchb.com
9                                           David T. Rudolph
                                            drudolph@lchb.com
10                                          Melissa Gardner
                                            mgardner@lchb.com
11                                          LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP
12                                          275 Battery Street, 29th Floor
                                            San Francisco, CA 94111-339
13                                          Telephone:  415.956.1000
                                            Facsimile:  415.956.1008
14
                                            Rachel Geman
15                                          rgeman@lchb.com
                                            Nicholas Diamond
16                                          ndiamond@lchb.com
                                            LIEFF CABRASER HEIMANN &
17                                          BERNSTEIN, LLP
                                            250 Hudson Street, 8th Floor
18                                          New York, NY 10013-1413
                                            Telephone:  212.355.9500
19                                          Facsimile:  212.355.9592

20                                          Class Counsel

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:13-CV-05996-PJH