Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
David T. Rudolph (State Bar No. 233457)
drudolph@lchb.com
Melissa Gardner (State Bar No. 289096)
mgardner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman
rgeman@lchb.com
Nicholas Diamand
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Hank Bates (State Bar No. 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th Street
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW CAMPBELL, MICHAEL HURLEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No.  4:13-cv-05996-PJH <br><br> **PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS** <br><br> Date:    August 9, 2017 <br> Time:    9:00 a.m. <br> Judge: Hon. Phyllis J. Hamilton <br> Place: Courtroom 3, 3rd Floor |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    SUMMARY OF CLASS COUNSEL'S WORK IN THIS LITIGATION ......................... 2

    A.     Case Investigation and Factual Research Prior to Filing (September 2013 to December 2013) ................................................................................. 2

    B.     Consolidation of Actions and Successful Opposition to Facebook's Motion to Dismiss (January 2014 to December 2014) ........................................ 2

    C.     Discovery and Discovery-Related Motions Practice (January 2015 to October 2015) ................................................................................... 3

    D.     Class Certification Briefing and Expert Discovery (November 2015 to March 2016) ...................................................................................... 5

    E.     Post-Certification Discovery and Settlement Negotiations (April 2016 to November 2016) ................................................................................ 6

    F.     Mediation and Settlement Agreement (December 2016 to January 2017) ............. 7

    G.     Work after Execution of Memorandum of Understanding (February 2017 to Present) ....................................................................................... 7

III.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR, REASONABLE, AND APPROPRIATE UNDER THE CIRCUMSTANCES ................. 7

    A.     Class Counsel Obtained an Excellent Result ......................................... 9

    B.     The Fee Amount Was Negotiated at Arms' Length by Skilled and Experienced Counsel ........................................................................ 10

    C.     Application of the Lodestar Method Demonstrates the Reasonableness of the Requested Fee ............................................................................ 11

        1.     The Time Class Counsel Devoted to this Case Was Appropriate .............. 11

        2.     Class Counsel's Hourly Rates Are Reasonable ..................................... 13

    D.     The Requested Fee Represents a Significant Negative Multiplier ...................... 13

    E.     Class Counsel's Litigation Expenses Were Reasonably Incurred in Furtherance of the Prosecution of the Claims, and Should be Awarded .............. 15

    F.     The Requested Service Awards Are Reasonable and Should Be Approved ........ 15

IV.    CONCLUSION ......................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................................................................................ 13

*Chun-Hoon v. Mckee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................................. 14

*Cunningham v. County of Los Angeles*,
    879 F.2d 481 (9th Cir. 1988) .................................................................................. 11

*DirecTV, Inc. v. Yee*,
    2005 U.S. Dist. LEXIS 37277 (N.D. Cal. April 26, 2005) .................................... 9

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ........................................................................... 16

*Faigman v. AT & T Mobility LLC*,
    No. C-06-04622-MHP, 2011 WL 672648 (N.D. Cal. Feb. 16, 2011) ..................... 16

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) .................................................................................... 1

*Gong-Chun v. Aetna*,
    No. 1:09-cv-01995-SKO, 2012 U.S. Dist. LEXIS 96828 (E.D. Cal. Jul. 12, 2012)............. 9, 14

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
    100 F.3d 691 (9th Cir. 1996) .................................................................................. 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................ 13

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...................................................................................... 11

*Hendricks v. Starkist Co.*,
    2016 U.S. Dist. LEXIS 134872 (N.D. Cal. Sept. 29, 2016) ...................................... 8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .......................................................................................... 10, 11

*In re Apple Computer, Inc. Derivative Litig.*,
    No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) .............. 10

*In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*,
    No. 3:08-md-01998-TBR, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ............................. 12

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992)................................ 10

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................... 16

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................................... 15

*In re Sony Gaming Networks & Customer Data Security Breach Litig.*,
    996 F. Supp. 2d 942, No. 3:11-md-02258-AJB-MDD (S.D. Cal. Apr. 30, 2015)................... 12

*In re Toys R Us FACTA Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ...................................................................... 11, 15

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Washington Public Power Supply System Secs. Litig.*,
  19 F.3d 1291 (9th Cir. 1994)............................................................. 14

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975)............................................................... 13

*Ketchum v. Moses*,
  24 Cal.4th 1122, 17 P.3d 735 (Cal. 2001)....................................... 14

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989)............................................................ 11

*Rodriguez v. West Publ. Corp.*,
  602 Fed. Appx. 385 (9th Cir. 2015) ........................................ 1, 11, 15, 16

*Rosado v. Ebay Inc.*,
  No. 5:12-CV-04005-EJD, 2016 U.S. Dist. LEXIS 80760 (N.D. Cal. June 21, 2016).............. 14

*Sadowska v. Volkswagen Group of America, Inc.*,
  2013 U.S. Dist. LEXIS 188582 (C.D. Cal. Sept. 25, 2013)................................. 8, 10

*Serrano v. Unruh*,
  652 P.2d 985 (Cal. 1982) .................................................................... 9

*Shadpour v. Facebook*, Inc.,
  Case No. 5:14-cv-00307-PSG (N.D. Cal.)............................................. 3

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016)............................................................. 14

*Staton v. Boeing*,
  327 F. 3d 938 (9th Cir. 2003)......................................................... 8, 15

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016)........................................................... 14

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................. 16

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)........................................................... 15

*Winterrowd v. American General Annuity Insurance Co.*,
  556 F.3d 815 (9th Cir. 2009)............................................................. 11

**Statutes**

18 U.S.C. §2520(b)(3)............................................................................. 9

Cal. Civ. Proc. Code § 1021.5.............................................................. 9

**Rules**

Fed. R. Civ. P. 23(b)(2).......................................................................... 6

Fed. R. Civ. P. 23(b)(3).......................................................................... 6

Fed. R. Civ. P. 23(h) ............................................................................. 8

MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT X

1

## NOTICE OF MOTION

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3         **PLEASE TAKE NOTICE** that on August 9, 2017, at 9:00 a.m., in the Courtroom of the

4    Honorable Phyllis J. Hamilton (Courtroom 3), United States District Judge for the Northern

5    District of California, Courtroom 3, 1301 Clay Street, Oakland, California, 94612, Plaintiffs

6    Matthew Campbell and Michael Hurley ("Plaintiffs") and Class Counsel[1] in the above-captioned

7    matter will and hereby do move the Court for an award of attorneys' fees and costs, and service

8    awards pursuant to the Class Action Settlement Agreement ("Settlement") entered between

9    Plaintiffs and Defendant Facebook, Inc.

10        Plaintiffs' motion is based on this Notice of Motion and Motion, the Memorandum of

11   Points and Authorities below, the Declaration of Class Counsel filed herewith, the papers filed in

12   support of Plaintiffs' motion for preliminary settlement approval, the papers filed in support of

13   Plaintiffs' motion for final approval, the record in this case, and any additional argument and

14   evidence the Court may consider.

15   Dated: May 26, 2017                    By:   _/s/ Hank Bates_____

16                                          CARNEY BATES & PULLIAM, PLLC
                                            Hank Bates (CA #167688)
17                                          hbates@cbplaw.com
                                            Allen Carney
18                                          acarney@cbplaw.com
                                            David Slade
19                                          dslade@cbplaw.com
                                            519 West 7th St.
20                                          Little Rock, AR 72201
                                            Telephone: (501) 312-8500
21                                          Facsimile: (501) 312-8505

22

23

24

25

26

---

27   [1] "Class Counsel" are the firms appointed as Class Counsel pursuant to the Court's order
     preliminarily approving the proposed Settlement (the "Preliminary Approval Order"): Lieff
28   Cabraser Heimann & Bernstein LLP and Carney Bates & Pulliam, PLLC. (*See* Dkt. 235 at 5.)

Michael W. Sobol (CA #194857)
msobol@lchb.com
David T. Rudolph
drudolph@lchb.com
Melissa Gardner
mgardner@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman
rgeman@lchb.com
Nicholas Diamond
ndiamond@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Class Counsel*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs Matthew Campbell and Michael Hurley ("Plaintiffs" or "Class Representatives") and Class Counsel, pursuant to the settlement (the "Settlement") reached between Plaintiffs and Defendant Facebook, Inc. ("Facebook" or "Defendant") respectfully request the Court approve this application for attorneys' fees and costs and service awards.

Class Counsel seek an attorney's fee award of $3,236,304.69 and a cost award of $653,695.31, which represents a significant negative multiplier. Pursuant to the Settlement Agreement, and after reviewing summaries of Class Counsel's time records, Facebook has agreed to take no position on this request. The requested amount is fair, adequate and reasonable based upon the relief achieved in this action, the substantial effort required to obtain such relief, the complex legal issues and technical matters, and the contingent nature of the representation. The reasonableness of the requested fee is also evidenced by the fact that it represents a significant *negative* multiplier. The Ninth Circuit has ruled that there is a "'strong presumption that the lodestar figure represents a reasonable fee'" and "'although a court can adjust the lodestar upward or downward based on certain factors, adjustments are the exception rather than the rule.'" *Rodriguez v. West Publ. Corp.*, 602 Fed. Appx. 385, 387 (9th Cir. 2015) (quoting *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)). However, to avoid protracted litigation on this issue, Class Counsel agreed to, and hereby seeks, an attorneys' fee award of approximately *fifty percent* of the full lodestar of $6,509,773. In similar contexts, courts within this District have found that a significant negative multiplier "strongly suggests" the reasonableness of a negotiated fee. Moreover, the technical complexity of the case is highlighted by the fact that over sixty percent of the expenses incurred by Class Counsel were for technical experts and consultants. The settlement was the product of intensive negotiations across several months and multiple in-person mediation sessions on a developed record at an advanced stage of litigation – at the close of factual discovery after this Court had certified a class for injunctive and declaratory relief. The settlement achieves the goals of the litigation as articulated in the operative Second Amended Complaint by addressing each of the challenged practices that the

- 1 -

1   Court certified for class treatment, while protecting the interests of any Settlement Class members

2   that may not be remedied through injunctive relief by expressly excluding monetary relief from

3   the class release.

4         Class Counsel further request awards of $5,000 – the amount deemed "presumptively

5   reasonable" in this District – to each of the two Class Representatives in recognition of the risk

6   they undertook in bringing these claims and their significant involvement in this litigation over

7   the past three years, including full-day depositions.  Facebook takes no position on this request.

8   **II.      SUMMARY OF CLASS COUNSEL'S WORK IN THIS LITIGATION**

9         As detailed in the Declaration of Class Counsel, Class Counsel expended a total of

10  11,173.50 hours across three years of litigation against the well-financed technology giant,

11  Facebook, even though recovery was uncertain, performing the following tasks, among others:

12  (1) extensive pre-suit investigation, (2) preparation and filing of multiple complaints,

13  (3) successful opposition to Facebook's motion to dismiss, (4) successfully moving for

14  certification of an injunction class, (5) intensive discovery and prevailing on multiple discovery

15  motions, and (6) participation in four settlement mediation sessions. *See* Declaration of Class

16  Counsel ("Joint Decl.") at ¶¶ 5-23.

17        A chronological summary of Class Counsel's work is provided below.

18  **A.      Case Investigation and Factual Research Prior to Filing (September 2013 to
          December 2013)**

19
20        Class Counsel began work on this action at the beginning of September, 2013, four

21  months prior to filing.  That pre-filing investigation included extensive review of Facebook's

22  messaging function, consultation with multiple experts, review of Facebook's terms of service

23  and privacy policies during the relevant time period and investigation of publicly available

24  information related to the alleged conduct.

25  **B.      Consolidation of Actions and Successful Opposition to Facebook's Motion to
          Dismiss (January 2014 to December 2014)**

26        Plaintiffs, on behalf of themselves and those similarly situated, commenced this action

27  (the "Action") on December 30, 2013.  In their initial complaint, Plaintiffs asserted claims for

28  violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ("ECPA");

the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.* ("CIPA"); and California's

Unfair Competition Law California Business and Profession Code §§ 17200 *et seq.* ("UCL").

Therein, Plaintiffs alleged that Facebook, as a routine policy and business practice, captured and

reads its users' personal, private Facebook messages without their consent for purposes including,

but not limited to, data mining and user profiling, and generating "Likes" for web pages. (Dkt. 1).

On January 21, 2014, David Shadpour filed a related action, which alleged similar facts

and averred identical causes of action against Facebook (*see Shadpour v. Facebook*, Inc., Case

No. 5:14-cv-00307-PSG (N.D. Cal.), Dkt. 1).

Class Counsel conferred with counsel for Shadpour and successfully negotiated an

agreement to seek consolidation of the actions. Joint Decl. at ¶ 10.  On April 15, 2014, the Court

entered an order granting Plaintiffs' Motion to Consolidate the Related Actions (the

"Consolidation Order") and consolidating the related actions for all purposes.  (*See* Dkt. 24.).

Following entry of the Court's Consolidation Order, the Class Representatives filed a

Consolidated Amended Complaint on April 25, 2014, asserting ECPA, CIPA, and UCL claims on

behalf of themselves and a proposed class of "[a]ll natural-person Facebook users located within

the United States who have sent or received private messages that included URLs in their content,

from within two years before the filing of this action up through and including the date when

Facebook ceased its practice."  (*See* Dkt. 25.).[1]

On June 17, 2014, Facebook filed a Motion to Dismiss Plaintiffs' Consolidated Amended

Complaint. (*See* Dkt. 29.)  Plaintiffs filed an opposition (*see* Dkt. 31), and Facebook, in turn, filed

a reply brief (*see* Dkt. 35).  On December 23, 2014, the Court issued an order granting in part and

denying in part Facebook's Motion to Dismiss Plaintiffs' Consolidated Amended Complaint,

dismissing the claims under CIPA § 632 and the UCL, but denying dismissal of the claims under

ECPA and CIPA § 631. (*See* Dkt. 43.)

**C.**    **Discovery and Discovery-Related Motions Practice (January 2015 to October 2015)**

Following entry of the Court's order granting in part and denying in part Facebook's

---

[1] On October 2, 2015, David Shadpour voluntarily dismissed his claims, with prejudice, pursuant to Federal Rule of Civil Procedure 41(a). (*See* Dkt. 123.)

motion to dismiss the Consolidated Amended Complaint, the parties engaged in almost two years of extensive discovery, including the production of hundreds of thousands of pages of documents, fact and expert depositions of 18 witnesses (spanning 19 days of testimony), informal conferences and discussions, hundreds of hours reviewing and analyzing Facebooks source code and detailed technical documentation, substantial discovery motion practice and the exchange of hundreds of pages of written discovery requests and responses. Joint Decl. at ¶ 12.

More specifically, during the ten-month period between the Court's order on Facebook's motion to dismiss and Plaintiffs' filing of their motion for class certification, Plaintiffs propounded three sets of requests for Production (totaling 60 Requests), two sets of Interrogatories (totaling eight Interrogatories), and a Request for Admission.  Plaintiffs also served a third-party subpoena—consisting of three document requests—on one of Facebook's outside PR agencies.  Similarly, during this time period Plaintiffs took five depositions of Facebook witnesses, including multiple 30(b) depositions covering numerous highly technical topics.[2]  Joint Decl. at ¶ 13.

Plaintiffs' review and analysis of Facebook source code was particularly time consuming, given the complexity of Facebook's systems (*see, e.g.,* Dkt. 122 at 3; Dkt. 130 at 8), which Facebook characterized as "complicated and vast" (Dkt. 113 at 5).  Indeed, this extensive source code review and analysis was at the core of discovery in this case. Joint Decl. at ¶ 14.  It ultimately led to the articulation of the additional practices described in Plaintiff's motion for class certification as well as in the Second Amended Complaint, as the Court recognized. *See, e.g.,* Order Granting in Part and Denying in Part Motion for Class Certification (Dkt. 192 at 4, 6).

Facebook propounded commensurate discovery, in the form of two sets of Requests for Production, each, for Plaintiffs Campbell and Hurley (totaling 30 Requests per Plaintiff), one set of Requests for Production for Plaintiff Shadpour (totaling 22 Requests), two sets of Interrogatories, each, to Plaintiffs Campbell and Hurley (totaling 15 Interrogatories for Plaintiff

---

[2] The depositions covered a wide spectrum of technical topics, including the operation of Facebook's source code underlying the architecture related to Private Message functionality, site security, and Facebook's creation and use of data and metadata from the processing of URLs contained within Private Messages.

Campbell and 14 for Plaintiff Hurley), one set of Interrogatories to Plaintiff Shadpour (totaling 11 Interrogatories), and one set of Requests for Admission, each, for Plaintiffs Campbell and Hurley (totaling four Requests per Plaintiff).  Additionally, Plaintiffs defended numerous depositions: all three Plaintiffs were deposed, while four third-party acquaintances of Plaintiffs (with whom Plaintiffs corresponded via Facebook's private message function) were noticed for deposition by Facebook, and of these four individuals, three were ultimately deposed.  Joint Decl. at ¶ 15.

In addition, during this same period the parties engaged in substantial letter briefing before Magistrate Judge Maria-Elena James, on a host of discovery issues ranging, *inter alia*, from incomplete interrogatory responses and document production to 30(b)(6) deposition topics to regulatory filings with EU agencies.  (*See,* Dkt. Nos. 77, 95, 112, 113, 122.).  Moreover, during this same period, the parties engaged in protracted negotiation over the production of Facebook's source code, involving an extensive meet and confer process, contested briefing (*see, e.g.,* Dkt. Nos. 84-85), and ultimately a joint stipulation in which Facebook agreed to produce source code for the time period of September 1, 2009 through December 31, 2012. (Dkt. 90).

During this time period, the parties also engaged in their first mediation session on August 19, 2015, before Cathy Yanni of JAMS. Joint Decl. at ¶ 17.

**D.** **Class Certification Briefing and Expert Discovery (November 2015 to March 2016)**

During the next portion of the discovery phase, Plaintiffs filed a Motion for Class Certification.  (*See* Dkt. 138.)  Defendants filed an opposition (*see* Dkt. 147-4), and Plaintiffs, in turn, filed a reply brief (*see* Dkt. 167).  Over the course of this time period, the parties continued with discovery, with both Plaintiffs and Facebook deposing each others' experts in the class certification briefing, and Plaintiffs taking additional fact witness depositions.  The parties also continued to encounter, negotiate and brief discovery disputes.  (*See, e.g.,* Dkt. Nos. 186,[3] 189 190.).

On May 18, 2016, the Court issued an order granting in part and denying in part Plaintiffs'

---

[3] Requesting a telephonic conference to compel Facebook to provide portions of four separate letter briefs related to (1) Plaintiffs' Requests for Production concerning damages; (2) topics to which produced documents alluded in Facebook's current production; (3) configuration tables; and (4) Facebook's "predictive coding" used in the course of document production.

Motion for Class Certification, denying certification as to a damages class under Federal Rule of Civil Procedure 23(b)(3), but granting certification of an injunctive-relief class under Federal Rule of Civil Procedure 23(b)(2). (*See* Dkt. 192.).  Specifically, the Court certified for class treatment three specific alleged uses by Facebook of URLs included in private messages:  (1) Facebook's cataloging URLs shared in private messages and counting them as a "Like" on the relevant third-party website, (2) Facebook's use of data regarding URLs shared in private messages to generate recommendations for Facebook users, and (3) Facebook's sharing of data regarding URLs in messages (and attendant demographic data about the messages' participants) with third parties.  (Dkt. 192, at pp. 3-5).  In addition, the Court directed the Plaintiffs to file a Second Amended Complaint "(1) revising the class definition to reflect the definition set forth in the class certification motion, and (2) adding allegations regarding the sharing of data with third parties." (*Id.* at p.6).  In accord therewith, the Plaintiffs filed their Second Amended Complaint on June 7, 2016.  (Dkt. 196.).

### E.   Post-Certification Discovery and Settlement Negotiations (April 2016 to November 2016)

Subsequent to the filing of Plaintiffs' Second Amended Complaint, discovery in this Action continued.  Facebook propounded a third set of Interrogatories, each, to Plaintiffs Campbell and Hurley, and Plaintiffs propounded a fourth and fifth set of Requests for Production and third and fourth set of Interrogatories.  Plaintiffs continued with the deposition of additional fact witnesses, as well. Joint Decl. at ¶ 20.  During this time, Plaintiffs filed three motions to compel discovery (Dkt. Nos. 206, 207, 208),[4] which were opposed by Facebook (Dkt. Nos. 214, 215, 216) and which were ultimately denied on October 4, 2016 by the Court, who instead ordered Facebook to provide the alternative discovery described in Facebook's motion papers (Dkt. No. 218).

Parallel to the above-described discovery, the parties also worked diligently on exploring the possibility of settlement, beginning with a second mediation session before Cathy Yanni on July 21, 2016.  While not yielding a resolution to the Action, the parties agreed to come back for

---

[4] Respectively, these motions sought to compel production of source code, configuration tables, and further document searches.

a third mediation session, which occurred on July 28, 2016.  This third mediation was also unsuccessful. For months following the parties' third mediation session, the parties continued to negotiate informally parallel with continued discovery.  Eventually, the parties agreed to attend a fourth mediation, which took place on December 7, 2016 before Randall Wulff. Joint Decl. at ¶ 21.

### F.    Mediation and Settlement Agreement (December 2016 to January 2017)

As a result of these cumulative efforts, the parties were able to reach an agreement-in-principle to resolve this Action at the December 7, 2016 mediation, and on December 23, 2016, the parties filed a Joint Status Report, advising the Court that they had reached a settlement-in-principle. (*See* Dkt. 222). Thereafter, the parties worked diligently to memorialize the terms of the settlement, first in a Memorandum of Understanding executed on February 9, 2017.  Prior to that execution, on February 3, 2017, to facilitate agreement on issues related to the petition for the award of attorney's fees and costs, Class Counsel provided Facebook with the monthly time summaries of Class Counsel's lodestar to date.  Joint Decl. at ¶ 22.

### G.    Work after Execution of Memorandum of Understanding (February 2017 to Present)

Subsequent to the execution of the Memorandum of Understanding, Class Counsel negotiated and drafted the Settlement Agreement executed and filed with this Court on March 1, 2017 (Dkt. 227-3), drafted the Motion for Preliminary Approval of Class Action Settlement and related filings (Dkt. 227), attending the April 12, 2017 hearing on this motion, implemented the notice program ordered by this Court and conferred and coordinated with Facebook on issues related to the settlement. Joint Decl. at ¶ 23.

### III.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR, REASONABLE, AND APPROPRIATE UNDER THE CIRCUMSTANCES

In a class action settlement, a court may award reasonable attorneys' fees and costs that are authorized by law or by the parties' agreement. *See* Fed. R. Civ. P. 23(h); *see also Hendricks v. Starkist Co.*, 2016 U.S. Dist. LEXIS 134872, at *34 (N.D. Cal. Sept. 29, 2016) (stating a court has the power to award reasonable attorneys' fees and costs where "a litigant proceeding in a

1  representative capacity secures a 'substantial benefit' for a class of persons.").

2       After review of monthly summaries of Class Counsel's time records demonstrating an

3  aggregate lodestar of $6,525,168.50 through February 2, 2017, Facebook agreed to take no

4  position on an award of attorneys' fees and costs of up to $3,890,000. SA at ¶ 57.  At that time,

5  Class Counsel approximated that they would seek $3,230,000 in fees – a significant reduction to

6  roughly *fifty percent* of lodestar – and $660,000 in costs; however, it was agreed Class Counsel

7  may apply in different amounts not to exceed $3,890,000.  *Id.*  As detailed below, after further

8  review of time records and expenses, Class Counsel seeks $3,236,304.69 in attorney's fees

9  (roughly 50% of lodestar) and $653,695.31 in expenses.

10       Given that Class Counsel agreed to a significant lodestar reduction to avoid extended

11  litigation and Facebook agreed to take no contrary position, "the court need not inquire into the

12  reasonableness of the fees . . . with precisely the same level of scrutiny as when the fee amount is

13  litigated" as "the parties are compromising precisely to avoid litigation." *Staton v. Boeing*, 327 F.

14  3d 938, 966 (9th Cir. 2003). The Court's role is instead "to ensure that the Parties' agreement on

15  fees and expenses is reasonable and does not reflect a collusive settlement placing the interests of

16  counsel above the interest of the Class." *Sadowska v. Volkswagen Group of America, Inc*., 2013

17  U.S. Dist. LEXIS 188582 (C.D. Cal. Sept. 25, 2013).  However, the Court must still ensure that

18  the attorney's fees and costs awarded are "fundamentally fair, adequate, and reasonable." *See*

19  *Staton*, 327 F.3d at 952.  In this case, the amount Class Counsel agreed to accept in attorney's

20  fees is roughly half their lodestar, making it eminently fair, reasonable, and adequate for the class.

21  *See*, *infra*, case cited at p. 15 (finding that negative multiplier suggests the reasonableness of a

22  negotiated fee).  *Gong-Chun v. Aetna*, No. 1:09-cv-01995-SKO, 2012 U.S. Dist. LEXIS 96828 at

23  *53 (E.D. Cal. Jul. 12, 2012).

24       ECPA provides for an award of reasonable attorneys' fees and costs. *See* 18 U.S.C.

25  §2520(b)(3) (providing appropriate relief includes "a reasonable attorney's fee and other litigation

26  costs reasonably incurred."); *DirecTV, Inc. v. Yee*, 2005 U.S. Dist. LEXIS 37277, at *13 (N.D.

27  Cal. April 26, 2005) ("DirecTV is also entitled to reasonable attorney's fees and costs incurred in

28  prosecuting its claims for violations of the ECPA").  In addition, in light of the CIPA claim, the

1    requested attorney's fees are appropriate in this Action pursuant to California's "private attorney

2    general" statute, which provides for an award of attorney's fees "to a successful party against one

3    or more opposing parties in any action which has resulted in the enforcement of an important

4    right affecting the public interest if . . . a significant benefit, whether pecuniary or nonpecuniary,

5    has been conferred on the general public or a large class of persons." *See* Cal. Civ. Proc. Code

6    § 1021.5; *Serrano v. Unruh*, 652 P.2d 985, 991 (Cal. 1982) (explaining that such an award

7    advances "the policy of encouraging private actions to vindicate important rights affecting the

8    public interest").[5]

9              **A.     Class Counsel Obtained an Excellent Result**

10             As detailed in the concurrently filed Motion for Final Approval of Class Action

11   Settlement, the Settlement before the Court provides significant relief for the Class that is

12   specifically tailored to the harm alleged. As the Settlement reflects, Facebook made substantial

13   changes that bring Facebook's message processing practices in compliance with Class Counsel's

14   view of ECPA and CIPA's requirements.  Specifically, Facebook confirmed that the alleged

15   unlawful uses of URL data challenged in the operative Second Amended Complaint ceased—

16   namely, Facebook confirmed that, as of the respective dates set forth in the Settlement, it ceased

17   utilizing data from URLs within private messages to (1) generate recommendations to its users in

18   its Recommendations Feed; (2) share anonymous, aggregate data with third parties through its

19   Insights feature; and (3) increase "Like" counter numbers on third party websites.  In addition,

20   Facebook confirmed that, as of the date of the Settlement, it was not using any data from

21   EntShares created from URL attachments sent by users in Facebook Messages in any public

22   counters in the "link_stats" and Graph APIs. In addition, during the course of this litigation,

23   Facebook made changes to its operative disclosures to its users, stating that it collects the

24   "content and other information" that people provide when they "message or communicate with

25   others,"—thereby further explaining the ways in which Facebook may use that content.

26   _____
     [5] The Legislature enacted the private attorney general statute so that the costs of enforcing
     important rights in the public interest would be shifted from private plaintiffs to defendants in
27   certain circumstances. *See* Cal. Civ. Proc. Code § 1021.5; *see also Serrano*, 32 Cal. 3d at 632-33
     (holding that "absent facts rendering the award unjust, parties who qualify for a fee should
28   recover for all hours reasonably spent, including those on fee-related matters.").

1    Facebook has also agreed to display additional educational language on its United States website

2    for Help Center materials concerning its processing of URLs shared within messages.  In sum, the

3    Settlement addresses each of the challenged practices that the Court certified for class treatment

4    and achieves the goals of the litigation as articulated in the operative Second Amended

5    Complaint, while protecting the interests of any Settlement Class Members that may not be

6    remedied through injunctive relief by specifically excluded claims for monetary relief from the

7    Settlement Class Members' Released Claims.

8          **B.      The Fee Amount Was Negotiated at Arms' Length by Skilled and
             Experienced Counsel**

9

10        "Ideally, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437

11   (1983).  Thus, a court "should refrain from substituting its own value for a properly bargained-for

12   agreement."  *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S.

13   Dist. LEXIS 108195, at *12 (N.D. Cal. Nov. 5, 2008) (awarding attorneys' fees based on "the

14   terms of the settlement").  Courts therefore apply lessened scrutiny to fee agreements "negotiated

15   at arm's length with sophisticated defendants by the attorneys . . . intimately familiar with the

16   case" and where the fee "neither detracts from nor diminishes the payments and benefits that will

17   flow to Plaintiffs themselves."  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL

18   No. 901, 1992 U.S. Dist. LEXIS 14337, at *12 (C.D. Cal. June 10, 1992) (approving agreed-upon

19   fee of $8 million); *accord Sadowska*, 2013 U.S. Dist. LEXIS 188582, at *25-26.

20        These circumstances characterize the situation here.  The parties here did not reach an

21   agreement on settlement until after (i) extensive discovery had been conducted, (ii) Facebook's

22   motion to dismiss was briefed, litigated and decided, (iii) Plaintiffs' motion for class certification

23   was fully briefed, litigated and decided, (iv) factual discovery was fully mature and substantially

24   completed, and (v) the parties participated in four mediations facilitated by two highly respected

25   mediators.  These circumstances demonstrate that both parties were fully apprised of the strengths

26   and weaknesses of their respective positions.  Further, it was only after reaching an agreement on

27   the Settlement's substantive terms that the parties turned to negotiating the fee.  Further

28   demonstrating that the fee is fair and the product of good-faith negotiations, Facebook reviewed

- 10 -

MOTION FOR AWARD OF ATTORNEYS' FEES
AND COSTS AND SERVICE AWARDS
CASE NO. 4:13-CV-05996-PJH

monthly summaries of Class Counsel's time records prior to agreeing to take no position in opposition to the fee requested in this motion. *See* Settlement Agreement, ¶¶ 57-60 (Dkt. 227-3).

### C.   Application of the Lodestar Method Demonstrates the Reasonableness of the Requested Fee

The Ninth Circuit recently reconfirmed that "[t]here is a strong presumption that the lodestar figure represents a reasonable fee." *Rodriguez v. West Publ. Corp.*, 602 Fed. Appx. at 387.  "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (emphasis omitted).  Lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). As this figure approximates the market value of the legal services, it "'presumptively provides an accurate measure of reasonable attorney's fees.'" *In re Toys R Us FACTA Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014), (quoting *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994)); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996).

The accompanying Declaration of Class Counsel sets forth the hours worked and the billing rates used to calculate Class Counsel's lodestar in this Action, including both a chronological summary of the work performed (¶¶ 5-23) and a tabulation of the hours spent on various categories of activities related to the Action (¶¶ 24-33).  *See Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.") (internal quotations omitted).  In total, Class Counsel and their professional staffs spent 11,173.50 hours working on this case for a lodestar of $6,509,773. Joint Decl. at ¶ 31.

### 1.   The Time Class Counsel Devoted to this Case Was Appropriate

Class Counsel's efforts were necessary to achieving the Settlement and are consistent with the time expended by class counsel in similar litigation.  *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*, No. 3:08-md-01998-TBR, 2010 WL 3341200, at *10

1    (W.D. Ky. Aug. 23, 2010) (11,453 hours in case that settled about one year after filing of

2    complaint); *In re Sony Gaming Networks & Customer Data Security Breach Litig.*, 996 F. Supp.

3    2d 942, No. 3:11-md-02258-AJB-MDD (S.D. Cal. Apr. 30, 2015) (5,580 hours where class

4    certification had not been briefed).

5          As detailed in the Declaration of Class Counsel and Section II above, Class Counsel

6    expended 11,173.50 hours performing the following tasks, among others:  (1) engaged in

7    extensive pre-suit investigation, (2) prepared and filed multiple complaints, (3) successfully

8    opposed Facebook's motion to dismiss, (5) undertook extensive discovery, document review,

9    technical review and depositions, and brought myriad successful discovery motions, (4) moved

10   for and was granted certification of an injunction class, (6) prepared for and participated in four

11   settlement mediations before mediators, and (7) negotiated the terms of the Settlement and the

12   documents related thereto.  *See* Joint Decl. at ¶¶ 5-23, 31.

13         Moreover, in taking this matter on a contingent basis, Class Counsel assumed

14   considerable risk.  Indeed, this Action involves novel issues predicated on claims involving the

15   ECPA's and CIPA's application to electronic messages.  The caselaw in this context is not fully

16   developed, which resulted in the parties advancing conflicting interpretations of certain elements

17   of Plaintiffs' ECPA and CIPA claims during the litigation, including the definition of message

18   "content," the extent to which an interception of an electronic message occurs "in transit," the

19   contours of the affirmative defense of implied consent, and the extent to which an "ordinary

20   course of business" defense applies to an electronic communications service provider's

21   acquisition and/or use of message content.  Moreover, these novel legal issues were disputed in a

22   highly technical context that required Class Counsel, and their retained experts, to review

23   extensive source code and technical documents.  These issues, and other difficult issues

24   implicated by these claims, required Class Counsel to research and devise litigation strategies to

25   move the case through class certification towards trial, without the certainty of ever receiving

26   compensation.  Joint Decl. at ¶¶ 12-14.  Despite facing such risks, Class Counsel effectively

27   prosecuted this case, foregoing other work in the process.  Thus, the time devoted by Class

28   Counsel to this Action on a purely contingent basis supports the requested fee.

**2.**     **Class Counsel's Hourly Rates Are Reasonable**

The accompanying Declaration of Class Counsel sets forth the billing rates used to calculate their lodestars and summarize the experience of the attorney timekeepers who worked on this litigation.  Joint Decl. at ¶¶ 24-33.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).  Courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of compensating for the delay in payment.

Class Counsel here are experienced, highly regarded members of the bar.  They have brought to this case extensive experience in data privacy litigation, consumer class actions and complex litigation, including specific experience litigating and settling cases regarding data privacy.  Joint Decl. at ¶¶ 40-55.; *see also*  Dkt. 227-2 at pp. 6-13.  Class Counsel's customary rates, which were used in calculating the lodestar here, are in line with prevailing rates in this District, have been approved by courts in this District and other courts in comparable markets, and are paid by hourly-paying clients.  Joint Decl. at ¶¶ 27-30.

**D.**     **The Requested Fee Represents a Significant Negative Multiplier**

For the purpose of awarding class counsel a reasonable fee, the lodestar may be adjusted in light of the (1) results obtained, (2) novelty and complexity of the questions presented, (3) skill exhibited by counsel, (4) preclusion of other legal work because of counsel's acceptance and prosecution of the case, and (5) risk of nonpayment.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Ketchum v. Moses*, 24 Cal.4th 1122, 1132, 17 P.3d 735, 741 (Cal. 2001).  The Ninth Circuit recently held that a district court "*must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'  Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016) (italics in original); *see also Stanger v. China Elec. Motor, Inc.*, 812 F.3d

- 13 -

734 (9th Cir. 2016). Each of these three factors is present here – Class Counsel anticipated a risk multiplier upon commencement of this action; the hourly rates utilized in the lodestar calculation include no risk multiplier; and this case posed heightened risks due to the application of novel legal issues in a highly technical context.  Joint Decl. at ¶ 33.

However, to avoid protracted litigation on the fee issue and facilitate settlement, Class Counsel agreed to seek an award that reflects a significant *negative* adjustment of roughly fifty percent on the documented lodestar.  Courts within this District and its sister district have held that a significant negative multiplier "strongly suggests the reasonableness of the negotiated fee." *Rosado v. Ebay Inc.*, No. 5:12-CV-04005-EJD, 2016 U.S. Dist. LEXIS 80760, at *26 (N.D. Cal. June 21, 2016) (negative multiplier of 0.54); *See Gong-Chun v. Aetna*, No. 1:09-CV-01995-SKO, 2012 U.S. Dist. LEXIS 96828, at *53 (E.D. Cal. Jul. 12, 2012) (holding that a negative multiplier of 0.79 suggests that the negotiated fee award is reasonable); *Chun-Hoon v. Mckee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (reasoning that a negative multiplier suggests a reasonable and fair valuation of the services provided by class counsel).  In short, the negative multiplier applied to the presumptively reasonable lodestar confirms the fairness of the requested fee award.

The contingent nature of the fee, alone, would justify a positive multiplier in this case, even though Class Counsel do not seek that.  *See In re Washington Public Power Supply System Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (courts reward successful class counsel in contingency case "by paying them a premium over their normal hourly rates"). The fact that Class Counsel assumed representation here on a purely contingent basis strongly supports the reasonableness of the amount requested.  That is particularly so given the complex and novel nature of the issues involved in this case and the corresponding risks that Class Counsel might receive nothing for their efforts.

1

2

**E.      Class Counsel's Litigation Expenses Were Reasonably Incurred in Furtherance of the Prosecution of the Claims, and Should be Awarded**

3

4

5

6

7

8

9

10

11

12

13

14

15

The Settlement terms and well-settled precedent support Class Counsel's entitlement to recovery of out-of-pocket costs reasonably incurred in investigating, prosecuting, and settling these claims. *See, e.g.*, *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Class Counsel incurred $653,695.31 in unreimbursed out-of-pocket costs over the course of this litigation. Joint Decl. at ¶¶ 34-37. Over sixty percent of those costs were associated with expert and consultant work, including extensive expert analysis of the relevant source code and related technical documents necessary to fully understand and document the architecture related to Facebooks' private messaging function. Joint Decl. at ¶¶ 34-37 and Ex. 2 attached thereto. Other significant costs include mediation fees, deposition transcripts, travel for depositions and hearings, legal research, postage, and other customary litigation expenses. *Id.* Moreover, as detailed in the Declaration of Class Counsel, these costs were reasonably incurred in furtherance of the investigation, prosecution, and Settlement of the Action and should be reimbursed. *Id*; s*ee In re Toys R Us FACTA Litig.*, 295 F.R.D. at 469.

16

**F.      The Requested Service Awards Are Reasonable and Should Be Approved**

17

18

19

20

21

22

23

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.,* 563 F.3d at 958 (service awards "are fairly typical in class action cases"). Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id.*; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995).

24

25

26

27

In this District, service awards in the amount of $5,000 per class representative are "presumptively reasonable." *In re Linkedin User Privacy Litig*., 309 F.R.D. 573, 592 (N.D. Cal. 2015); *Dyer v. Wells Fargo Bank, N.A.,* 303 F.R.D. 326, 335 (N.D. Cal. 2014); *Faigman v. AT & T Mobility LLC*, No. C-06-04622-MHP, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011).

28

1  Here, Class Counsel seek, and Facebook does not oppose, service awards in the amount

2  $5,000 for each of the Plaintiffs serving as Class Representatives.  *See* Settlement Agreement,

3  ¶ 60.  The requested service awards are well justified under the circumstances.  The Class

4  Representatives sat for day-long depositions, produced almost one thousand private message

5  communications in discovery (and reviewed over one thousand messages for responsiveness to

6  Facebook's Requests for Production), collectively responded to 31 interrogatories, answered four

7  requests for admissions, and invested substantial time over the past three years in collaborating

8  and communicating with Class Counsel, monitoring the litigation and reviewing case filings and

9  other pertinent documents.  Joint Decl. at ¶¶ 15, 38-39, and Exhibits 3, 4 attached thereto.  Thus,

10  the requested service awards of $5,000 to each Class Representative are reasonable and justified.

11  **IV.    CONCLUSION**

12  For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) award Class

13  Counsel attorneys' fees of $3,236,304.69 and expenses of $653,695.31, with such amount to be

14  paid by Facebook as forth in the Settlement; and (b) grant service awards in the amounts of

15  $5,000 for each of the Class Representatives.

16  Dated: May 26, 2017                                By:    */s/ Hank Bates*

17                                                         CARNEY BATES & PULLIAM, PLLC
                                                          Hank Bates (CA #167688)
18                                                        hbates@cbplaw.com
                                                          Allen Carney
19                                                        acarney@cbplaw.com
                                                          David Slade
20                                                        dslade@cbplaw.com
                                                          519 West 7th St.
21                                                        Little Rock, AR 72201
                                                          Telephone: (501) 312-8500
22                                                        Facsimile: (501) 312-8505

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael W. Sobol (CA #194857)
msobol@lchb.com
David T. Rudolph
drudolph@lchb.com
Melissa Gardner
mgardner@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman
rgeman@lchb.com
Nicholas Diamond
ndiamond@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Class Counsel*

MOTION FOR AWARD OF ATTORNEYS' FEES
AND COSTS AND SERVICE AWARDS
CASE NO. 4:13-CV-05996-PJH