Theodore H. Frank (SBN 196332)
William I. Chamberlain (SBN 306046)
   (Only admitted in California; practice directly
   supervised by members of the D.C. Bar)
**COMPETITIVE ENTERPRISE INSTITUTE**
   **CENTER FOR CLASS ACTION FAIRNESS**
1310 L Street, NW, 7th Floor
Washington, DC 20005
Voice: (202) 331-2263
Email: ted.frank@cei.org
*Attorneys for Objector Anna St. John*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATTHEW CAMPBELL, MICHAEL
HURLEY, on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

FACEBOOK INC.,

        Defendant.

_____

ANNA ST. JOHN,

        Objector.

_____

Case No. 4:13-cv-5996-PJH

**OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT**

Date:        August 9, 2017
Time:        9:00 a.m.
Courtroom:    3, 3rd Floor
Judge:       Hon. Phyllis J. Hamilton

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF ARGUMENT ............................................................................................ 7

ARGUMENT ........................................................................................................................ 8

    I.  Objector Anna St. John is a member of the class and intends to appear through *pro bono* counsel at the fairness hearing. ................................................................................ 8

    II.  The Court owes a fiduciary duty to unnamed class members. ................................ 10

    III. A settlement that provides no unique consideration to class members for their release but pays millions in attorneys' fees cannot be approved. ....................................... 11

        A.  Alleged injunctive relief provides no relief to class members, so cannot justify the waiver of their claims. ........................................................................................ 12

        B.  In "economic reality," the settlement prioritizes attorneys' fees over class recovery. ........ 16

    IV. The proposed settlement suffers from fatally inadequate representation. .................. 19

    V.  In the alternative, if the Court approves the settlement, it should scrutinize attorneys' fees ... 21

    VI. The notice to the class was constitutionally deficient. ........................................... 24

CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

*In re "Agent Orange" Prods. Liab. Litig.,*
    818 F.2d 216 (2d Cir. 1987) ........................................................................... 14

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ................................................................. 4, 10

*Allen v. Similasan Corp.,* No. 12-cv-00376,
    2017 WL 1346404 (S.D. Cal. Apr. 12, 2017) ........................................... 20

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................. 12

*In re Baby Prods. Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013) ........................................................................5

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ........................................................10, 11, 17

*Boyd v. Avanquest N. Am. Inc.,* No. 12-cv-04391-WHO,
    2015 WL 4396137 (N.D. Cal. Jul. 17, 2015) ............................................9

*Broussard v. Meineke Discount Muffler Shops,*
    155 F.3d 331 (4th Cir. 1998) ................................................................... 12

*Bruno v. Quten Research Inst., LLC,* No. SACV 11-00173 DOC(Ex),
    2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ........................................... 15

*In re Classmates.com Consol. Litig.,* No. 09-cv-0045-RAJ,
    2012 WL 3854501 (W.D. Wash. Jun. 15, 2012) .......................................2

*Crawford v. Equifax Payment Servs., Inc.,*
    201 F.3d 877 (7th Cir. 2000) ................................................................. 8, 12

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
    662 F.3d 913 (7th Cir. 2011) ...............................................................12-13

*In re Critical Path, Inc., Sec. Litig.,* No. C 01-00551 WHA,
    2002 WL 32627559 (N.D. Cal. Jun. 18, 2002) ....................................... 16

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2012) ................................................................. 4, 8

*FB-Stark, LLC v. White,* No. CV-12-0095-PHX-PGR,
    2012 WL 4466532 (D. Ariz. Sept. 26, 2012) ........................................... 15

*Felix v. Northstar Location Servs.,*
    290 F.R.D. 397 (W.D.N.Y. 2013) ........................................................18, 21

*Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-04149,
    2008 WL 8150856 (C.D. Cal. Jul. 21, 2008) ........................................... 20

*In re FPI/Agretech Sec. Litig.*,
105 F.3d 469 (9th Cir. 1997) ........................................................................ 17

*Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-1992 AJB (MDD),
2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ................................................... 15

*In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.* ("GMC Pick-Up"),
55 F.3d 768 (3d. Cir. 1995) ................................................................5, 6, 11

*Grok Lines Inc. v. Paschall Truck Lines, Inc.*, No. 14 C 08033,
2015 WL 5544504 (N.D. Ill. Sept. 18, 2015) ............................................... 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................5

*Hecht v. United Collection Bureau, Inc.*,
691 F.3d 218 (2d Cir. 2012) ......................................................................... 19

*Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG,
2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ............................................. 20

*Hofmann v. Dutch LLC*, No. 3:14-cv-02418-GPC-JLB,
2017 WL 840646 (S.D. Cal. Mar. 2, 2017) ....................................................7

*In re Motor Fuel Temperature Sales Practices Litig.*,
279 F.R.D. 598 (D. Kan. 2012) .................................................................... 19

*In re HP Inkjet Printer Litig.* ("HP Inkjet"),
716 F.3d 1173 (9th Cir. 2013) ................................................................ 4, 10

*Jones v. Flowers*,
547 U.S. 220 (2006) ..................................................................................... 18

*In re Katrina Canal Breaches Litig.*,
628 F.3d 185 (5th Cir. 2010) ....................................................................... 19

*Koby v. ARS Nat'l Servs.*,
846 F.3d 1071 (9th Cir. 2017) ................................................ 4, 6, 8, 9, 12

*Laffitte v. Robert Half Int'l*,
376 P.3d 672 (Cal. 2016) .............................................................................. 17

*Larson v. AT&T Mobility LLC*,
687 F.3d 109 (3d Cir. 2012) ......................................................................... 19

*Lobatz v. U.S. West Cellular of Cal., Inc.*,
222 F.3d 1142 (9th Cir. 2000) ..................................................................... 13

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ................................................................... 13

*Mandujano v. Basic Vegetable Prods., Inc.*,
541 F.2d 832 (9th Cir. 1976) ..................................................................18-19

*Mendoza v. United States,*
   623 F.2d 1338 (9th Cir. 1980) ................................................................ 19

*In re Mercury Interactive Corp. Sec. Litig.,*
   618 F.3d 988 (9th Cir. 2010) ..................................................................4

*Mirfasihi v. Fleet Mortg. Corp.,*
   356 F.3d 781 (7th Cir. 2004) ............................................................ 5, 11

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) ........................................................................ 18, 19

*Murray v. GMAC Mortg. Corp.,*
   434 F.3d 948 (7th Cir. 2006) .................................................................. 13

*Nguyen v. BMW of N. Am. LLC,* No. C 10-02257 SI,
   2012 WL 1380276 (N.D. Cal. Apr. 20, 2012) ........................................ 15

*Otey v. CrowdFlower, Inc.,* No. 12-cv-05524-JST,
   2014 WL 1477630 (N.D. Cal. Apr. 15, 2014) ........................................ 15

*In re Dry Max Pampers Litig.* ("*Pampers*"),
   724 F.3d 713 ...........................................................2, 4, 6, 8, 9, 10, 13-14

*Pearson v. NBTY, Inc.,*
   772 F.3d 778 (7th Cir. 2014) ............................................................. 2, 17

*Polar Int'l Brokerage Corp. v. Reeve,*
   187 F.R.D. 108 (S.D.N.Y. 1999) ..............................................................7

*In re Quaker Oats Labeling Litig.,* No. 10-cv-00502,
   2014 WL 12616764 (N.D. Cal. July 29, 2014) ...................................... 15

*Radcliffe v. Experian Info Solutions,*
   715 F.3d 1157 (9th Cir. 2013) .......................................................... 5, 12

*Redman v. RadioShack Corp.,*
   768 F.3d 622 (7th Cir. 2014) ...................................................................4

*Retta v. Millennium Prods.,* No. CV 15-1801 PSG,
   2016 WL 6520138 (C.D. Cal. Sept. 21, 2016) .................................... 4-5

*Richardson v. L'Oreal USA, Inc.,*
   991 F. Supp. 2d 181 (D.D.C. 2013) .........................................................2

*In re Scotts EZ Seed Litig.,*
   304 F.R.D. 397 (S.D.N.Y. 2015) .............................................................8

*Silber v. Mabon,*
   957 F.2d 697 (9th Cir. 1992) ...................................................................5

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) ............................................................... 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................ 11

*In re High Sulfur Content*,
   517 F.3d 220 (5th Cir. 2008) ................................................................ 16

*True v. Am. Honda Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010) .............................................. 4, 9

*In re Walgreen Co. Stockholder Litig.*,
   832 F.3d 718 (7th Cir. 2016) ............................................................. 12, 13

*In re Washington Pub. Power Supply Sys. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .................................................................. 4

*Weinberger v. Great N. Nekoosa Corp.*,
   925 F.2d 518 (1st Cir. 1991) ................................................................ 11

*Zucker v. Occidental Petroleum Corp.*,
   968 F. Supp. 1396 (C.D. Cal. 1997) ..................................................... 15


**Rules and Regulations**

Rule 23 .................................................................................................... 1, 18

Rule 23(a)(4) ................................................................................................ 12

Rule 23(b)(2) ................................................................................... 17, 18, 19

Rule 23(b)(3) ................................................................................................ 18

Rule 23(c)(2)(B) .......................................................................................... 18

Rule 23(e) ..................................................................................... 5, 16, 18

Rule 23(e)(1) ........................................................................................... 1, 18

Rule 23(h) ....................................................................................... 16, 17, 18

Rule 23(h)(1) ............................................................................................... 18


**Other Authorities**

American Law Institute,
   *Principles of the Law of Aggregate Litigation* § 3.05 ............................... 4

Brunet, Edward, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*,
   2003 U. CHI. LEGAL F. 403 (2003) ......................................................... 3

Brian T. Fitzpatrick, *The End of Objector Blackmail?*,
   62 VAND. L. REV. 1623 (2009) ....................................................................................3

Burdge, Ronald L.,
   *United States Consumer Law Attorney Fee Survey Report* .............................. 15

Federal Judicial Center,
   MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed.)........................... 20

Goode, Lauren, *Messenger and WhatsApp process 60 billion messages a day, three times more than SMS*,
   THE VERGE (Apr. 12, 2016) ......................................................................................1

Karlsgodt, Paul & Raj Chohan,
   *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*,
   BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) ................................3

Lahav, Alexandra, *Fundamental Principles for Class Action Governance*,
   37 IND. L. REV. 65 (2003).......................................................................................... 17

Liptak, Adam, *When Lawyers Cut Their Clients Out of the Deal*,
   N.Y. TIMES (Aug. 13, 2013), at A12 ........................................................................2

Newberg, Herbert & Alba Conte,
   4 NEWBERG ON CLASS ACTIONS § 8:18 (4th ed. 2009) ........................... 18

Newberg, Herbert & Alba Conte,
   4 NEWBERG ON CLASS ACTIONS § 11:42 (4th ed. 2009) ...........................4

Newberg, Herbert & Alba Conte,
   4 NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2009) ...........................5

Yu, Roger, *USA Today, WSJ, NYT are top three papers in circulation*,
   USA TODAY (Oct. 28, 2014)................................................................................... 20

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

### SUMMARY OF ARGUMENT

The proposed settlement provides over $3.8 million to attorneys and 22 words on one of Facebook's help pages for one year to everyone else. The 22-word statement constitutes the only injunctive relief of the proposed settlement; all other purported relief merely describes changes implemented years ago and does not bind Facebook in any way whatsoever.

Class action settlement principles require that class members—not class counsel—be the primary beneficiaries of a settlement, and that the class's representatives (counsel and the named plaintiffs) demonstrate undivided loyalty to the absent class. This settlement violates these principles and should be rejected on three independent grounds.

*First*, the gross disproportion between attorneys' fees and purported class benefit renders the proposed settlement unfair.

*Second*, in affirming a settlement that provides no value to unnamed class members, the named representatives and class counsel have inadequately represented the class.

*Third*, the parties' failure to notify class members of the settlement is constitutionally deficient and unreasonable under Rule 23. The settling parties agreed that no notice should be provided to class members about the settlement, even though Facebook conveys 60 *billion* personal messages per day between its users.[1] Although this Court required class counsel to post settlement documents on its own websites, such method could not have reasonably informed class members of their waiver of injunctive claims against Facebook. When the class members are Facebook users known to Facebook, and when electronic notice can be inexpensively provided, notice to class members should be provided by the most logical and "reasonable" means under Rule 23(e)(1): via Facebook.

---

[1] Lauren Goode, *Messenger and WhatsApp process 60 billion messages a day, three times more than SMS*, THE VERGE (Apr. 12, 2016), available online at: https://www.theverge.com/2016/4/12/11415198/facebook-messenger-whatsapp-number-messages-vs-sms-f8-2016

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

For these reasons, the court should reject final approval of the cynical proposed settlement, which the parties had hoped could be approved under cover of obscurity, with no notice to absent class members.

## ARGUMENT

### I.   Objector Anna St. John is a member of the class and intends to appear through *pro bono* counsel at the fairness hearing.

Objector Anna St. John is a member of the class; she sent and received numerous messages on Facebook that included a URL attachment between December 30, 2011 and March 1, 2017, including messages on or about June 4, 2012, August 5, 2012, November 12, 2012, June 25, 2015, and September 6, 2015. Declaration of Anna St. John ("St. John Decl.") at ¶ 4. St. John, an attorney with Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF"), is a natural person who resides within the United States. *See id.* at ¶ 2-3. She is not a director, officer, agent, or employee of Facebook or its subsidiaries and affiliated companies, nor is she a relation of the Court or its staff. *Id.* at ¶ 5. Her business address is 1310 L Street NW, 7th Floor, Washington, DC 20005.

St. John intends to appear at the August 9, 2017 fairness hearing through one of her pro bono attorneys—either Theodore H. Frank or William I. Chamberlain of CCAF. Frank and Chamberlain are members of the bar of the Northern District of California.

CCAF represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (observing that CCAF "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *In re Dry Max Pampers Litig.* ("*Pampers*"), 724 F.3d 713, 716-17 (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement") (rejecting

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

settlement approval and certification); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling Frank "[t]he leading critic of abusive class-action settlements").

Since its founding in 2009, CCAF has won over $100 million for class members. *See, e.g., In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 WL 3854501, at *9 (W.D. Wash. Jun. 15, 2012) (noting that CCAF's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel … at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second").

Because it has been CCAF's experience that class action attorneys often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are often styled "professional objectors." A "professional objector" is a specific term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees. Some courts presume that such objectors' legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not CCAF's *modus operandi*. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. *See generally* Declaration of Theodore H. Frank.

To avoid doubt about her motives, St. John is willing to stipulate to an injunction prohibiting her from accepting compensation in exchange for the settlement of her objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). St. John brings this objection through CCAF in good faith to protect the interests of the class. St. John Decl. at ¶ 7.

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

At this time, St. John does not intend to call any witnesses at the fairness hearing, but reserves her right to make use of all documents entered on the docket by any settling party, objector, or *amicus*. Objector St. John also reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval.

## II.    The Court owes a fiduciary duty to unnamed class members.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *Pampers*, 724 F.3d at 715. Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations." *Id.* "[T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.*

To guard against this danger, a district court must act as a "fiduciary for the class ... with 'a jealous regard'" for the rights and interests of absent class members. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)). It "must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.* ("*HP Inkjet*"), 716 F.3d 1173, 1178 (9th Cir. 2013) (citation and internal quotation omitted). And it must not "assume the passive role" that is appropriate when confronted with an unopposed motion in ordinary bilateral litigation. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). In particular, settlement valuation "must be examined with great care to eliminate the possibility that it serves only the 'self-interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012). It is error to exalt fictions over "economic reality." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).

There should be no presumption in favor of settlement approval: the proponents of a settlement bear the burden of proving its fairness. *See, e.g.*, *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1079 (9th Cir. 2017) (citing *Pampers*, 724 F.3d at 719); *True v. Am. Honda Co.*, 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010) (citing Herbert Newberg & Alba Conte, 4 NEWBERG ON CLASS ACTIONS § 11:42 (4th ed. 2009); *accord* American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010). Any such presumption would be "inconsistent with [the] probing inquiry" required in this Circuit. *Retta v. Millennium Prods.*, No. CV 15-1801 PSG, 2016 WL 6520138, at *4 (C.D. Cal. Sept. 21, 2016) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. The court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.* ("*GMC Pick-Up*")*,* 55 F.3d 768, 785 (3d. Cir. 1995) (internal quotation and alteration omitted).

Likewise, in determining whether the class can be certified, "[a] trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, 4 NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2009). The Court must "make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013) (quoting *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). More than that, it must protect against "even the appearance of divided loyalties of counsel." *Radcliffe v. Experian Info Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013) (internal quotation marks omitted).

Ultimately, "[b]oth the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992).

## III.    A settlement that provides no unique consideration to class members for their release but pays millions in attorneys' fees cannot be approved.

There is nothing wrong with a relatively small settlement, but Ninth Circuit law forbids class counsel from diverting most the settlement's value to themselves. If the claims are weak, $3.8 million

may be an appropriate valuation of the case. But if that's so, fairness under Rule 23(e) requires that class members—not attorneys—receive proportional benefits. Counsel may not game the system by agreeing to credit illusory injunctive relief while providing royal treatment for attorneys' fees.

### A.   Alleged injunctive relief provides no relief to class members, so cannot justify the waiver of their claims.

The alleged injunctive relief provides no relief to the class, so based upon controlling Ninth Circuit authority cannot be relied upon to approve the settlement. The proponents of a settlement must bear "the burden of demonstrating that class members would benefit from the settlement's injunctive relief." *Koby*, 846 F.3d at 1080; *Pampers*, 724 F.3d at 719 (compiling authorities). "[N]on-cash relief … is recognized as a prime indicator of suspect settlements." *GMC Pick-Up*, 55 F.3d at 803.

The proposed settlement offers only one form of injunctive relief: a milquetoast 22-word disclosure buried in Facebook's online help pages:

> **Additional Explanatory Language.** Facebook shall display the following, additional language, without material variation, on its United States website for Help Center materials concerning messages within 30 days of the Effective Date: "*We use tools to identify and store links shared in messages, including a count of the number of times links are shared.*" Facebook shall make this additional language available on its United States website for a period of one year from the date it is posted, provided however that Facebook may update the disclosures to ensure accuracy with ongoing product changes.

Class Action Settlement Agreement and Release, Dkt. 227-3 ("Settlement") ¶ 40(d) (italics added).

All other provisions of the proposed settlement are not enforced by an injunction at all. Nor were the changes in Facebook's practices "acknowledged" by other provisions brought about by the Settlement. Instead, the Settlement includes recitations for "Acknowledgement regarding the Cessation of Practices" including that (1) until 2012, sending links by private message often increased the "like" count associated with third-party websites, (2) until 2012, owners of third-party websites could obtain aggregate statistics and demographic information about users sharing links in messages, and (3) until July 2014, developers using the "Recommendation Feed" feature would sometimes see page recommendations for their own websites that used a backup "PHP backend" algorithm, which

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

in part considered the number of times a link was shared via private message. *See* Settlement ¶ 40(a). These "acknowledgements" provide exactly what counsel for Facebook provided at the motion to dismiss hearing in 2014—a representation that all of the complained-about practices have ceased, mostly in 2012 before the suit was even filed. *See* Transcript of Oct. 1, 2014 hearing, Dkt. 45 at 5-7. The proposed settlement also acknowledges that Facebook changed its Data Policy in 2015. *See* Settlement ¶ 40(c). It's difficult to imagine how this constitutes any benefit given that plaintiffs cited this same policy as deficient in 2016. *See* Second Amended Complaint, Dkt. 196 ¶ 60. Even if the business practice changes were meaningful at the time, the acknowledgment now is "of no real value" since it "does not obligate [the defendant] to do anything it was not already doing." *Koby*, 846 F.3d at 1080; *see also Hofmann v. Dutch LLC*, No. 3:14-cv-02418-GPC-JLB, 2017 WL 840646, at *7 (S.D. Cal. Mar. 2, 2017) (refusing to credit injunctive relief when the defendant had voluntarily revised its labeling before the settlement); *Polar Int'l Brokerage Corp. v. Reeve,* 187 F.R.D. 108, 114 (S.D.N.Y. 1999) (finding "reassurance" that rights had not been violated to be "virtually worthless").

In fact, the acknowledgements demonstrate that plaintiffs have *not* prevailed on the merits in spite of requesting nearly $3.9 million in fees and costs. While plaintiffs pleaded that any "interception" and "scanning" of messages unneeded for transmission violates the ECPA, Second Amended Complaint, Dkt. 196 at ¶ 79-86, the settlement agreement implicitly endorses Facebook's continued scanning of links sent through private message. Facebook merely "confirms, *as of the date it has executed this agreement below*," that Facebook was not using data "from EntShares created from URL attachments sent by users in Facebook Messages for: 1) targeted advertising; 2) sharing personally identifying user information with third parties; 3) use in any public counters in the 'link_stats' and Graph APIs; and 4) displaying lists of URLs representing the most recommended webpages on a particular web site." Settlement ¶ 40(b) (emphasis added). Read next to the complaint, this disclosure provides astonishingly little assurance. The representation allows that Facebook continues to analyze shared links "for the current or future objective of accumulating and analyzing user data and thereafter refining user profiles." Second Amended Complaint, Dkt. 196 ¶ 46. Facebook also apparently still

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

shares data collected from message URLs with third parties, provided that it is not personally identifiable—otherwise the words "personally identifying" would be unneeded in the above-quoted acknowledgement. Yet plaintiffs specifically complained about the sharing of such demographic data with third parties. *Id.* ¶ 47.

The proposed settlement does not even enjoin Facebook from resuming such practices. Whereas this Court denied defendant's motion to dismiss injunctive relief claims because "plaintiffs have adequately alleged that there is a 'sufficient likelihood' that Facebook could resume the practice," Dkt. 43 at 19, plaintiffs have secured nothing to prevent relapse. No injunction attaches to Facebook's representations and acknowledgements, which apply only as of the date of execution. Under the proposed settlement, Facebook may resume all of the complained about practices immediately, so long as it posts the agreed vague disclosure somewhere in its "Help Center" for one year.[2]

As for the 22-word "explanatory language" required by the Settlement, the parties cannot meet their burden to demonstrate its value to the class. *Koby*, 846 F.3d at 1080. The purported injunctive relief to the class is neither relief, nor is it directed to the class. The settling parties provide only conclusory statements that these the disclosure has value, and this is inadequate to find a settlement fair.

The proposed injunction is much less substantial than the ones found to be lacking in *Pampers*. As here, the settlement in *Pampers* required revisions to defendants' website (except for *two* years), and it further required label changes and the resumption of a refund program that had been voluntarily offered by the defendant. *Pampers*, 724 F.3d at 716. Only equitable claims were surrendered by the *Pampers* class. *Id.* However, the court observed that "'courts must be particularly vigilant' for 'subtle

---

[2] Even if Facebook had agreed to enjoin itself, such injunction would have dubious value. *See Koby*, 846 F.3d at 1080 (Defendant "took that step for its own business reasons (presumably to avoid further litigation risk), not because of any court-or settlement-imposed obligation.") (*citing Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000)); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 408 (S.D.N.Y. 2015) ("[I]t appears the [alleged misrepresentation] has already been removed from EZ Seed's packaging …, and it is not clear what additional injunctive relief plaintiffs seek.").

signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Id.* at 718 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). In *Pampers*, given the meaningless relief and $2.73 million in attorneys' fees, "[t]he signs [were] not particularly subtle." *Id.* The signs are even less subtle here, where plaintiffs secured only website notice as purported justification for nearly $3.9 million in fees and expenses.

As in *Pampers* and *Koby*, class members will not be primary beneficiaries of the purported relief. In *Pampers*, the parties argued that past customers would benefit from new disclosures, and in *Koby*, the parties argued that a class would benefit from the modification of collection practices by the defendant, but in each case the proposed injunction provided no unique benefit to the class. As here, the injunctions in *Pampers* and *Koby* applied to all *future* customers and debtors respectively, whether or not they were class members, which was "an obvious mismatch between the injunctive relief provided and the definition of the proposed class." *Koby*, 846 at 1079. Precisely such a mismatch exists here. The class includes past Facebook users, but the only conceivable beneficiaries are *future* users. Under the proposed settlement all Americans with an internet connection receive the same dubious relief— a statement buried in Facebook's Help Center. Even if this were valuable, and even if class counsel was not the primary beneficiary of the agreement, this "relief" is conferred on *all* future users, regardless of class membership. *Pampers*, 724 F.3d at 720 ("The fairness of the settlement must be evaluated primarily based on how it *compensates class members*—not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans." (emphasis in original) (internal quotation marks omitted)). "[F]uture purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786. "No changes to future advertising by [the defendant] will benefit those who already were misled by [the defendant]'s representations." *True*, 749 F. Supp. 2d at 1077. A court in this district recently echoed this reasoning in denied approval of a settlement that would have required the defendant to alter its in-software help file and online FAQs and marketing materials: "The prospective relief, while of some value to future

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

customers, does not provide relief to class members, who have already suffered injury." *Boyd v. Avanquest N. Am. Inc.*, No. 12-cv-04391-WHO, 2015 WL 4396137, at *4 (N.D. Cal. Jul. 17, 2015).

Even among those who might read Facebook help pages in the future, "the named plaintiffs provided no evidence to suggest that many, if any, members of the proposed class would derive a benefit from obtaining the injunctive relief afforded by the settlement." *Koby*, 846 F.3d at 1080. Class counsel makes no attempt to demonstrate any benefit, and simply mischaracterizes the settlement that injunctive relief constitutes "meaningful relief targeted to each of the three URL uses alleged, as well as significant additions to Facebook's public disclosures regarding it use of Private Message content." Motion for Final Approval, Dkt. 237 at 7. As discussed above, it does nothing of the sort. Regarding the three URL uses, the Settlement merely recites Facebook's past actions—most stopped before the suit was even filed—and nothing more is required of Facebook except to post a 22-word notice for one year. *See* Settlement ¶ 40.

Class counsel do not and cannot articulate any reason that class members benefit from posting 22 words in the Facebook Help Center, and the parties bear the burden of showing such benefit. Even if it were valuable, it provides no particular relief to the class of past Facebook users, so cannot possibly justify nearly $3.9 million in fees and expenses.

## B.  In "economic reality," the settlement prioritizes attorneys' fees over class redress.

This settlement features all three indicia of impermissible self-dealing identified by the Ninth Circuit: (1) a disproportionate distribution of fees to counsel; (2) a "clear sailing agreement" that defendants will not challenge the fee request; and (3) a "kicker" that ensures any reduction in fees will revert to the defendant. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *Allen*, 787 F.3d at 1224.

The most telling sign of self-dealing in this settlement is that "class counsel are amply rewarded" while "the class receives no monetary distribution." *Bluetooth*, 654 F.3d at 947 (quoting *Hanlon*, 150 F.3d at 1021). The benchmark for a reasonable award in the Ninth Circuit in a case alleging

economic injury is 25% of the class benefit. *See, e.g., id.* at 942; *HP Inkjet*, 716 F.3d at 1190. While injunctive relief might confer a valuable benefit that justifies an otherwise disproportionate award, no evidence here proves such benefit and plaintiffs' own complaints suggest otherwise. *Cf. Bluetooth*, 654 F.3d at 945 n.8 ("We note, however, that the value of the injunctive relief is not apparent to us from the face of the complaint, which seeks to recover significant monetary damages for alleged economic injury, nor from the progression of the settlement talks, the last of which occurred after defendants had already voluntarily added new warnings to their websites and product manuals.").

A class action settlement may not confer preferential treatment upon class counsel to the detriment of class members. "Such inequities in treatment make a settlement unfair" for neither class counsel nor the named representatives are entitled to disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Pampers*, 724 F.3d at 718-21 (cleaned up) (reversing settlement approval where class counsel received $2.73 million and absent class members were offered a money-back refund program, prospective labeling changes, and a *cy pres* donation).

Disproportionate fees suggest self-dealing, which infects the entire settlement, not just the fee request. To be lawyer-driven and self-dealing, a settlement need not be collusive. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)). There need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Staton*, 327 F.3d at 964 (quoting *GMC Pick-Up*, 55 F.3d at 819-20); *accord Bluetooth*, 654 F.3d at 949; *Mirfasihi*, 356 F.3d at 785. "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton*, 327 F.3d at 964; *accord Bluetooth*, 654 F.3d at 947.

This is the case here, where the class obtains dubious recovery whereas class counsel negotiated clear-sailing for $3,890,000 in attorney fees and expenses. That is, Facebook agreed in advance not to oppose the fee request by class counsel. *See* Settlement, Dkt. 227-3 ¶ 57. Such a clause, by its "'very existence'" "'increases the likelihood that class counsel will have bargained away something of value to the class.'" *Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). Clear sailing lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees" and "suggest[s], strongly, that the fee request [should] be placed under the microscope of judicial scrutiny." *Weinberger*, 925 F.2d at 524-25.

To complete *Bluetooth*'s unholy troika, the settlement segregates the fee award, such that any any reduction in that request would only benefit Facebook. Settlement ¶ 57. This settlement demonstrates that Facebook is willing to pay at least $3.9 million to make the injunctive part of this case go away. The kicker makes it impossible for this Court to give the class the relief *that Facebook is willing to pay*. "[T]here is no apparent reason the class should not benefit from the excess allotted for fees." *Bluetooth*, 654 F.3d at 949. It would be reversible error to approve a settlement that provides class counsel a disproportionate share of the settlement value. But if the Court instead reduces the fee, it cannot pass that money on to the class; that money reverts to the defendant. The parties have prevented the Court from returning the fees and class relief to their natural equilibrium.

Given the disproportionate, segregated, and unopposed fees that have been negotiated, this settlement must fall. When injunctive relief "may be largely or even entirely worthless" "even a modest award of attorneys' fees … is excessive." *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 721 (7th Cir. 2016). Even if the fees were reduced by 95%, the settlement would still be too lopsided to approve. *See Koby*, 846 F.3d 1071 ($67,500 : $0 ratio untenable); *Crawford v. Equifax Payment Info*, 201 F.3d 877, 882 (7th Cir. 2000) ($78,000 : $0 ratio unsupportable).

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

**IV.    The proposed settlement suffers from fatally inadequate representation.**

Independently, the proposed class should be decertified due to inadequate representation. The class representatives have approved a settlement that provides no benefit to unrepresented class members, but thousands to themselves and millions to their counsel. The class representatives comprehensively failed to guard the interests of absent class members who have their injunctive claims waived for no real benefit.

It is "altogether proper" to inspect the terms of a settlement when evaluating whether adequacy is met. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *accord Radcliffe*, 715 F.3d at 1166 ("[O]ur [23(a)(4)] analysis focuses on the agreement."). Rule 23(a)(4), grounded in the Due Process Clause of the Constitution, conditions class certification upon a demonstration that "the representative parties will fairly and adequately protect the interests of the class." This provision, along with "basic due process," demands that the named representatives and class counsel manifest "undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). This representative duty "does not permit even the appearance of divided loyalties." *Radcliffe*, 715 F.3d at 1167 (internal quotation marks omitted)

Class counsel must "prosecute the case in the interest of the class … rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). When "class counsel agree[s] to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breache[s] their fiduciary duty to the class." *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000). Similarly, the named representatives may not "leverage" "the class device" for their own benefit. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). Here, class counsel and their friends, the named representatives,[3] have signed off on

---

[3] Each of the two named plaintiffs is personal friends with counsel in this case. *See* Facebook's Opposition to Motion for Class Certification, Dkt. 178-2 at 15-16; *see also* Dkt. 180-1 (instant messages between representative Campbell and attorney Slade of Carney Bates & Pulliam, PLLC. Such

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

a settlement that divides the entirety of the $3.9 million in settlement proceeds among themselves, while generating no demonstrable benefit for absent class members. Such representation is simply too self-serving to be adequate under rules 23(a)(4) and (g)(4).

Nor does the purported injunctive relief cure the representatives' inadequacy, because Facebook changed its source code to resolve the issues in this case three years ago—and in some instances, almost five years ago, *before the lawsuit was even filed. See* Settlement, Dkt. 227-3, ¶¶ 40(a). "A class representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain no benefit is not adequately protecting the class members' interests." *Walgreen*, 832 F.3d at 725 (internal quotation marks and alterations omitted). The only novel relief obtained in the settlement is a single sentence added to Facebook's Help Center materials to the effect that Facebook "use[s] tools to identify and store links shared in messages, including a count of the number of times links are shared." Settlement, Dkt. 227-3, ¶ 40(d). $3.9 million in costs and fees—for twenty-two words. That is not enough to render the class representatives adequate.

Federal courts have seen—and rejected—arrangements like this before. In *Pampers*, approximately 50 class representatives signed off on a settlement that granted them "incentive awards" of $1000 each per affected child and afforded class counsel a hefty fee. 724 F.3d at 716. Absent class members, conversely, were left with prospective injunctive relief and the right to participate in a money-back guarantee program that was already available to them before the settlement. *Id.* The Sixth Circuit found that this settlement agreement rendered the class representatives inadequate because "there [was] no overlap between" the deal obtained by the class representatives and that obtained by the class itself. *Id.* at 722. That windfall meant that the class representatives had no remaining "interest in vigorously prosecuting the interests of unnamed class members." *Id.* (cleaned up). This settlement mirrors *Pampers*: the named plaintiffs obtain $5,000 service awards, class counsel obtains a hefty fee, and absent class members receive only injunctive relief that adds nearly nothing to what was already

---

friendships "cast[] doubt on [the representative's] ability to place the interests of the class above that of class counsel." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003).

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

available to them. Also, as in *Pampers*, the named representatives here are binding themselves to a broader release than absent class members, amounting to a side settlement that highlights the leveraging of the class device. *Compare* Settlement ¶ 47 with ¶ 49.

The parties might point to the fact that the class's monetary claims have not been waived to justify their adequacy. That does not help; neither were the monetary claims waived in *Pampers*. *See also Grok Lines Inc. v. Paschall Truck Lines, Inc.*, No. 14 C 08033, 2015 WL 5544504, at *7 (N.D. Ill. Sept. 18, 2015) (rejecting as unacceptable a settlement where class counsel simply "abandoned pursuit of a monetary recovery for the class" in favor of an injunctive relief-only settlement and a lump sum of attorneys' fees). The class is in the best negotiating position when it can assert claims for injunctive relief class-wide—*especially* if it will be challenging to certify a class for the monetary claims. But when the representatives sign off on a settlement like this—releasing the class' injunctive relief claims and pocketing all of the settlement value—the class is left worse off, as any future attempts to litigate on behalf of the class won't have injunctive claims or (b)(2) certification to use as leverage. If the class is strictly worse off after a settlement than they were before it, the representatives did not provide adequate representation.

## V. In the alternative, if the Court approves the settlement, it should scrutinize attorneys' fees.

The proposed settlement's laughable "relief" suggest it should be rejected in its entirety. To the extent it is not, class counsel's proposed lodestar filings are woefully deficient. Class counsel's failure to submit detailed hours prevents class members and the Court from evaluating the reasonableness of those hours, and so should prevent the award of attorneys' fees on the basis of lodestar. *See, e.g., Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2014 WL 1477630, at *9 (N.D. Cal. Apr. 15, 2014) ("The Court is … unable to determine whether the hours spent are reasonable, because Plaintiffs' counsel have provided no evidence or itemized records to support the hours they worked.").

Class counsel's sketchy billing raises two concerns. *First*, the lodestar is distended and unreasonably top-heavy, to the extent that the entire blended hourly rate of the lodestar figure exceeds

$582/hour. Dkt. 239, Ex. 1. These are astonishingly high average rates and they imply senior attorneys performed most activity on the case. *See, e.g.*, *FB-Stark, LLC v. White*, No. CV-12-0095-PHX-PGR, 2012 WL 4466532, at *2 (D. Ariz. Sept. 26, 2012) (criticizing partner who performed tasks "that could have, and should have, been done by the lesser-paid employees who worked on this litigation, such as the two associate attorneys and the paralegal assigned to the case"); *Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396, 1402 (C.D. Cal. 1997) ("[L]egal research [is] a task that most certainly could have been tackled by an associate billing at a lower rate."). The high blended rate also arises from unusually high billing rates. For example, 10 different paralegals and (non-attorney) researchers each billed at a minimum rate of $345/hr. Dkt. 239, Ex. 1. As another example, one contract attorney—that is, a temporary attorney typically billed to clients in the industry at perhaps $50/hour—is billed here at $515/hr for a total of $208,575. *Id.* In the absence of such improper practices, one would expect the blended rate to be closer to typical west-coast rates.[4]

   *Second*, the fee application obscures how the fee award will actually be split between counsel. "Class Counsel shall have the sole and absolute discretion to allocate the Attorneys' Fees and Costs Award amongst Class Counsel and *any other attorney*." Settlement, Dkt. 227-3 at 15 (emphasis added). Class counsel ought to disclose fee agreements, especially here where defendant credibly argued that former plaintiffs' counsel in this case are inadequate. *See* Order Granting in Part Class Certification, Dkt. 192 at 17 ("While Mr. Shadpour's deposition testimony also indicates that he did not review the

---

[4] *See, e.g, In re Quaker Oats Labeling Litig.*, No. 10-cv-00502, 2014 WL 12616764, at *1 (N.D. Cal. July 29, 2014) (blended rate of $437.54 "in line with blended rates approved in other similar cases"); *Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC(Ex), 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) (blended rate was $366.87/hr); *Nguyen v. BMW of N. Am. LLC*, No. C 10-02257 SI, 2012 WL 1380276, at *3 (N.D. Cal. Apr. 20, 2012) (finding reasonable blended rate to be $470/hr); *see also Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-1992 AJB (MDD), 2013 WL 410103, at *9 (S.D. Cal. Feb. 1, 2013) (finding blended rate of $447/hr to be "in line with that of the community" when compared to peers in Los Angeles, Silicon Valley, San Francisco, and San Diego) *see also* Ronald L. Burdge, *United States Consumer Law Attorney Fee Survey Report*, 2015-16, *available at* https://www.nclc.org/images/pdf/litigation/tools/atty-fee-survey-2015-2016.pdf (describing typical consumer law attorney billing rates around the country).

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

consolidated complaint filed in this action, plaintiffs provide a declaration stating that the consolidated complaint was provided to Mr. Shadpour's former counsel, so any failure to review it cannot be attributable to the putative class counsel.").

"In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content*, 517 F.3d 220, 227 (5th Cir. 2008). "[T]he district court must not … delegate that duty to the parties." *Id.* at 228 (internal quotation marks omitted). The appellants in *High Sulfur*, attorneys dissatisfied with their share, complained that the district court had sealed the fee allocation list, such that they could not compare their fee awards to those of other attorneys. The Fifth Circuit agreed: "One cannot … compare apples to oranges without knowing what the oranges are." *Id.* at 232. That court also held that it was impermissible for the district court to defer to the allocation proposed by the attorneys themselves. In a case predating Rule 23(h), the Second Circuit similarly "reject[ed] this authority … to the extent it allows counsel to divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement." *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987). "Such a division overlooks the district court's role as protector of class interests under Fed. R. Civ. P. 23(e)." *Id.* The Second Circuit decreed that "in all future class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated." *Id.* at 226.

In this Circuit, before the adoption of Rule 23(h) in 2003, court oversight of the fee division was a best practice, even though it was not required. *Contrast In re Critical Path, Inc., Sec. Litig.*, No. C 01-00551 WHA, 2002 WL 32627559, at *8 (N.D. Cal. Jun. 18, 2002) ("The attorneys have provided no indication as to how the overall fee would be divided between them. Given the respective work performed by the Berman and Bernstein firms, certain allocations could lead to an unreasonable fee for one firm or the other. The Court believes that the better practice, for future cases, is to disclose the exact allocation proposed between the firms. As this has not been done, given the risk of a disparate award this order will determine a reasonable allocation on its own.") *with Six (6) Mexican*

*Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (not mandatory for trial court to individuate the award). The rule allowed a court to "reject a fee allocation agreement where it finds that the agreement rewards an attorney in disproportion to the benefits that attorney conferred upon the class—even if the allocation in fact has no impact on the class." *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 473 (9th Cir. 1997).

At least two rationales undergirding Rule 23(h)'s preference for court oversight of fee divisions apply here. *First*, if one of the law firms has secretly agreed to accept less than its lodestar or to a smaller multiplier than is being requested from the Court, it is the class that is entitled to that giveback, not the law firm that has secretly extracted a return greater than would be approved by the Court. *Cf. Pearson,* 772 F.3d at 786; *Bluetooth,* 654 F.3d at 949 (givebacks to defendant instead of class is a sign of impermissible self-dealing because "there is no apparent reason the class should not benefit from the excess allotted for fees"). Perhaps one firm is entitled to a larger multiplier of its lodestar than another firm, but those reasons should be tested in court. *Second*, class counsel—which won certification in part by assuring that former counsel would not serve the class, Dkt. 178-3 at 5—should not be able to distribute funds to former counsel. "Public confidence in the fairness of attorney compensation in class actions is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Int'l*, 376 P.3d 672, 688-92 (Cal. 2016) (Liu, J., concurring). Before any fee is awarded, class counsel should produce all agreements concerning the distribution of attorneys' fees.

## VI.   The notice to the class was constitutionally deficient.

The principle of disclosure through notice has been referred to as the "first and perhaps most important principle for class action governance." Alexandra Lahav, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65, 118 (2003). Facebook possesses the contact information of every class member; after all, each Facebook account holder entrusts Facebook with his or her personal information. Nevertheless, class members are not afforded direct notice of the settlement. In fact, the settling parties originally proposed no notice whatsoever, erroneously declaring that because this is a proposed 23(b)(2) class, notice could be dispensed with altogether. Settlement ¶ 56. Although the

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

Court required them to post settlement-related documents on class counsel's public websites, Preliminary Approval Order 3, posting documents on two law firms' websites does not meet the "best notice practicable" standard. It is not "reasonable" notice, and, in fact, it is not formal "notice" at all given that there is no discrete "clear and concise[]"[5] statement of the necessary information in either short or long-form.

Notice is not discretionary under Rule 23: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). *See also* 23(h)(1) (notice of class counsel's fee motion "must be … directed to class members in a reasonable manner"). While the "best notice practicable" is not statutorily prescribed under 23(e)(1) or (h)(1) as it is under (b)(3), notice of settlement is still subject to the constitutional constraints elucidated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).[6] The *Mullane* constitutional imperative is that the settlement notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. A "mere gesture" will not suffice. *Id.* at 315. Nor will "lip service" to class members' right to object. *Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 408 (W.D.N.Y. 2013). Notice must evince a genuine desire to actually inform the absentees. *Jones v. Flowers*, 547 U.S. 220, 229-30 (2006).

Even where the settlement class is to be certified under Rule 23(b)(2) rather than (b)(3), "it is necessary that the notice be given in a form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976) (following *Mullane*); *see also Mendoza v. United States*, 623 F.2d 1338, 1350 n.16 (9th Cir. 1980) (rejecting idea that notice can be dispensed with in a (b)(2) settlement). And that makes perfect sense because any other approach infringes class members' right of objection. *See Mullane*, 339 U.S. at 314

---

[5] Fed. R. Civ. P. 23(c)(2)(B).

[6] *See also* NEWBERG ON CLASS ACTIONS § 8:18 (4th ed. 2002) ("The court's formulation of an adequate notice procedure under Rule 23(e) is limited only by constitutional due process considerations.").

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

("This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."). Notice serves purposes beyond just enabling the right of opt-out. *See In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (notice of mandatory class settlement allows class members "to make a decision whether to object to the settlement").

Under the *Mullane* standard, there can be no dispute that anything less than direct notice is unacceptable when the contact information for class members is housed within the defendants' records. *See, e.g., Mullane*, 339 U.S. at 318; *cf. Larson v. AT&T Mobility LLC*, 687 F.3d 109, 122-31 (3d Cir. 2012) (reversing notice plan that did not require defendants to search through their records for the purpose of providing individual notice). Direct notifications through Facebook's systems should be neither particularly costly nor burdensome given that Facebook routinely communicates with its users in a variety of ways. In any event, "[p]laintiffs' pocketbooks are not a factor—the mandatory notice requirement may not be relaxed based on the high cost of providing notice." *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 617 (D. Kan. 2012). Individual electronic notice is obligatory here.

Even if individual notice were not required, the feeble gesture of posting certain documents on law firm websites is not reasonably calculated to apprise class members of the settlement.[7] "Reasonableness is admittedly a flexible standard, but to hold that this notice satisfied due process would rob the words of the Supreme Court of their meaning." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 225 (2d Cir. 2012) (repudiating one-time USA Today publication settlement notice as inadequate). If one-time publication in a nationwide publication with a daily circulation of more than

---

[7] The settlement webpage on Lieff Cabraser's website cannot directly be accessed from its homepage. As for the page posted on Carney, Bates & Pullman's website, it is hidden from internet searches, as the entire website is, by a restrictive "Disallow: /" command in the site's "robots.txt," file. As a result, a class member attempting to find the Carney, Bates & Pullman settlement page could not do so using Google or any other search engine.

4 million[8] does not comport with *Mullane*'s standard, posting on two firms' websites certainly does not either. One cannot reasonably expect any significant number of class members to look at the website of two plaintiffs' law firms, especially when class members are not even aware of the representation. It is particularly striking that the settlement declines to employ any means of disseminating notice through Facebook, given that other settlements frequently make use of Facebook even where Facebook is not a defendant in the case and Facebook usage is not a prerequisite to class membership as it is here. *See, e.g., Allen v. Similasan Corp.*, No. 12-cv-00376, 2017 WL 1346404, at *2 (S.D. Cal. Apr. 12, 2017) (notice included advertising on Facebook targeted to reach likely class members); *Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *3 (N.D. Cal. Sept. 29, 2016) (publication notice included establishing a Facebook page); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149, 2008 WL 8150856, at *3 n.20 (C.D. Cal. Jul. 21, 2008) (noting that Facebook flyer was viewed 584,000 times).

A settlement website—in this case two webpages within class counsel's websites—is a "useful supplement," but it cannot replace direct or publication notice as the pillar of a notice program. Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed.). The website should "link[] to the notice and other important documents," but not masquerade as the Notice itself. Judge Hamilton's Procedural Guidance for Class Action Settlements, *available at* http://www.cand.uscourts.gov/filelibrary/1408/STANDING.%20class%20action%20settlements1.pdf. In any event, class counsel's settlement webpages (http://www.cbplaw.com/facebook-settlement/; https://www.lieffcabraser.com/privacy/facebook-privacy/) do not comply with the content required of notices under this Court's Procedural Guidance. They do not "clearly state that the date [of the hearing] may change without further notice to the class" nor do they advise class members to check for such scheduling changes. *See id.*

_____

[8] Roger Yu, *USA Today, WSJ, NYT are top three papers in circulation*, USA TODAY (OCT. 28, 2014), available at: https://www.usatoday.com/story/money/business/2014/10/28/aam-circulation-data-september/18057983/.

The incentives are clear: For the settling parties, meager notice means less resistance, and even more importantly, less cost to settlement. But for class members, it means an abridgment of statutory and constitutional rights. This Court should consider the wisdom of the Western District of New York: "If plaintiffs and their attorneys are acting like they have something to hide from the absent class members, perhaps it's because they do." *Felix*, 290 F.R.D. at 408.

## CONCLUSION

Class counsel has negotiated a settlement that provides nearly $3.9 million to them, $10,000 to their personal friends, the class representatives, and a vague 22-word statement buried in Facebook's "Help Center" to the class. Such a disproportionate, poorly-noticed, and unfair settlement cannot be approved, even though "only" the injunctive claims of millions of absent class members are bargained away.

Dated:  June 26, 2017                    Respectfully submitted,


                                         */s/ William I. Chamberlain*

                                         Theodore H. Frank (SBN 196332)
                                         William I. Chamberlain (SBN 306046)
                                            (Only admitted in California; practice directly
                                            supervised by members of the D.C. Bar)
                                         COMPETITIVE ENTERPRISE INSTITUTE
                                            CENTER FOR CLASS ACTION FAIRNESS
                                         1310 L Street, NW, 7th Floor
                                         Washington, DC 20005
                                         Telephone: (202) 331-2263
                                         Email:  ted.frank@cei.org
                                         *Attorneys for Objector Anna St. John*

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT

I, Anna St. John, am the objector. I sign my foregoing written objection pursuant to the Court's Preliminary Approval Order (Dkt. 235) ¶ 9.


_Anna St. John_
Anna St. John


**CERTIFICATE OF SERVICE**

I hereby certify that, on June 26, 2017, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.


_/s/ William I. Chamberlain_
William I. Chamberlain

OBJECTION OF ANNA ST. JOHN TO PROPOSED SETTLEMENT